# EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 25-mj-218-ZMF |
| ███████████ ,███ | |
| Defendant. | |

## ORDER

The government seeks a warrant to arrest ███████████ for an unwitting clerical mistake on an error-laden, confusing form. For the reasons set forth herein, the Court DENIES the government's application to arrest him.

## I.    BACKGROUND

On ███████, Immigration and Customs Enforcement ("ICE") Officers conducted an "enforcement operation."[1] Affidavit in Support of a Criminal Complaint [hereafter "Williams Affidavit"] ¶ 6. During the operation, ICE officers searched their databases for the registration information of a vehicle parked at a residence. *See id.* ¶¶ 6–7. The search revealed that ███

---

[1] These "collateral arrests"—which result from the targeting of a different individual—have become a weapon of choice for ICE. This has led to ICE detaining individuals with no criminal backgrounds, just those "in the wrong place at the wrong time." Luis Ferré-Sadurní & Ashley Cai, *Trump's Immigrant Crackdown in New York: More Arrests, Longer Detention*, New York Times (Aug. 4, 2025), https://perma.cc/UGS6-Z8EP. This is indeed "a perfect storm for trouble" for *all* Americans. LastWeekTonight, *Immigration Enforcement: Last Week Tonight with John Oliver* YouTube (Aug. 11, 2025), https://perma.cc/82QT-ABTJ. But especially so for "anyone who looks Latino," *Noem v. Vasquez Perdomo*, 606 U.S. ___, ___ (2025) (Sotomayor, J., dissenting), as the wave of masked ICE agents detaining U.S. Latinos grows. *See* Nidia Cavazos, *Americans detained during immigration enforcement speak out about treatment by federal agents*, CBS (Sept. 23, 2025), https://perma.cc/VJ9L-MS55.

██████████████ registered the vehicle to an address in Washington, D.C. *Id.* ¶ 7. The officers' query of immigration databases found that the government had allowed ████████ to lawfully enter the United States via parole. *See id.* At that time, ████████ had reported to officers that he would reside at an address in Texas. *See id.*

On May 6, 2025, the government filed a criminal complaint against ████████. *See United States v.* ████████████, No. 1:25-mj-00218, (D.D.C. Sept. 11, 2025) (ECF No. 1). The government alleged a violation of 8 U.S.C. § 1306(b). § 1306(b) penalizes violations of § 1305(a), which mandates that certain noncitizens "shall notify the Attorney General in writing of each change of address and new address within ten days from the date of such change."

The government's affidavit offered an overview of ████████'s processing with Border Patrol Agent ████ at the time of ████████'s lawful entry into the United States. *See* Williams Affidavit ¶¶ 10-13. Agent ████ "had no specific recollections of his interactions with ████████." *Id.* ¶ 12. Agent ████ guessed that he would have "followed standard procedures for all such individuals[,]" *i.e.*, all people ICE paroled into the United States from the southern border. *Id.* According to the government, the "standard procedures" that ICE agents are supposed to follow include reading the contents of parole paperwork to the noncitizens in their native language and providing the noncitizens with a copy of the parole documentation. *See id.* Perplexingly, the "standard procedures" do not include memorializing whether the ICE agent engaged in these actions.

On June 3, 2025, the Court sought additional information to supplement the warrant application. The Court requested the documents that Agent ████ purportedly gave to ████████.

2

The government subsequently responded by providing a 7-page document, with the entirety of the records that ▮▮▮▮▮ received. *See* ICE Records for ▮▮▮▮▮▮▮ [hereafter "ICE Records"].[2] The government explained that Agent ▮▮▮ would have read form PD G-56 to ▮▮▮▮▮ pursuant to standard procedures. But ▮▮▮▮▮ did not sign any forms acknowledging receipt or review of them.

The Court then asked the government to collect additional information about the forms. The Court's questions and government responses are as follows:

**Q:** Were the documents read to him in the dialect of Spanish that he speaks, presumably a Venezuelan dialect?

**A:** Agent ▮▮▮ has no specific recollection of his interaction with ▮▮▮▮▮▮. For All individuals who are granted parole, Agent ▮▮▮ would read the contents of their parole paperwork in their native language and would provide them with a complete copy of the necessary documentations. Agent ▮▮▮ is fluent in Spanish. There is no specific evidence that the documents were read to Defendant in the Venezuelan dialect of Spanish.

**Q:** Is there additional information given at the registration phase about the address update requirement? Did anyone or any other form indicate that failing to notify the change of address was a violation of law? If not, how do you prove willfulness?

**A:** No other documents or information was given to ▮▮▮▮▮ regarding the requirement to update his address

**Q:** What does box 23 on page 1 mean and why is it empty?

**A:** At this time, I have no information to explain why box 23 on the form I-385 is empty.

**Q:** Why are boxes 16-21 on page 1 empty?

**A:** At this time, I have no information to explain why the boxes 16-21 on the form I-385 are empty.

**Q:** Does this signature on page 2 say "NA"? Or something else? Who is this?

**A:** The initials on page 2 of the I-385 belong to Officer ▮▮▮▮▮.

---

[2] Attached as Exhibit A.

3

**Q:** Who is '█' in the officer signature spot on page 4? Is this paper stamped when they come in? What's this stamp? Why is the departure empty? When is this supposed to be filled? What is the meaning of the other blank spaces on this page? What do the two dates in the stamp at the bottom of the page mean?

**A:** I am unable to answer the above question without the complaint affidavit being updated. However, I give a brief response to give a general context to the stamp. The Stamp will be used by Customs and Boarder [sic] Patrol when they parole a person into the US. The stamp will include time, place, and reason for the parole.

**Q:** Why does the form on page 6 say 60 days (3 times) rather than 15 to report to a local ICE office?

**A:** No information to explain why one form says to report to ICE in 60 days and the form G-56 says to report in 15 days

The Court subsequently asked additional follow up questions which the government attempted to answer. Their answers offered no material additional information.

## II.   LEGAL STANDARD

"[N]o warrants shall issue, but upon probable cause." U.S. Const. Amend. IV. Probable cause means that "there is a fair probability" that the named individual committed the named offense. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A probable cause determination is a "practical, common-sense decision" that requires consideration of "the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Id.* The warrant application and attached affidavit "must provide the magistrate [judge] with a substantial basis for determining the existence of probable cause." *Id.* at 239. Instances where the provided affidavit is "wholly conclusory," without evidence to support the conclusions, *Id.*, and instances where the affidavit "contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein," is not enough to support a finding of probable cause. *Aguilar v. Texas*, 378 U.S. 108, 113 (1964). As such, a warrant application must include more than "bare bones" allegations. *Gates*, 462 U.S. at 239.

4

It is crucial for Magistrate Judges to "perform [their] 'neutral and detached' function and not serve merely as a rubber stamp for the police[,]" when approving or denying arrest warrant applications. *United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *Aguilar,* 378 U.S. at 111).

"To determine whether [there is] probable cause to believe [an individual is] violating [the] law, we look to [the] law to identify the elements of each of those offenses." *Wesby v. District of Columbia*, 765 F.3d 13, 19 (D.C. Cir. 2014). "[T]here must be probable cause for all elements of the crime, including *mens rea*." *Williams v. City of Alexander*, 772 F.3d 1307, 1312 (8th Cir. 2014).

The elements of a violation of 8 U.S.C. § 1306(b) (Failure to Notify Change of Address) are: (1) failure to update one's address; and (2) the intent to do so willfully. *See In Re G-Y-R-*, 23 I. & N. Dec. 181, 190 (BIA 2001). In correspondence with the Court, the government conceded that it must establish *both* elements. The willfulness requirement is particularly important given "[t]he ultimate punishment for an alien who fails to provide a notice of a change of address is harsh indeed." *Lahmidi v. I.N.S.*, 149 F.3d 1011, 1017 (9th Cir. 1998).

## III.    DISCUSSION

### A.    Willfulness

"The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is . . . [b]ased on the notion that the law is definite and knowable[.]" *Cheek v. United States*, 498 U.S. 192, 199 (1991). But the statutory requirement for willfulness—which sprung forth from the increasing complexity and proliferation of laws—has carved out an exception to this general rule. *See id.* 199–201 (collecting criminal tax cases considering willfulness element).

According to the Department of Justice, "[a]n act is done 'willfully' if done voluntarily and intentionally and with the specific intent to do something the law forbids." U.S. Dep't of Justice, Crim. Resource Manual § 910. Similarly, the Supreme Court has defined willfulness as the

"voluntary, intentional violation of a known legal duty." *Cheek*, 498 U.S. at 201. Simply put, where willfulness is an element, the government must establish that a person "acted with knowledge that [their] conduct was unlawful," *United States v. Quinn*, 401 F. Supp. 2d 80, 100 (D.D.C. 2005) (quoting *United States v. Homa Int'l Trading Corp.*, 387 F.3d 144, 147 (2d Cir. 2004)).

From this broad principle, three distinct willfulness standards have evolved in federal criminal law.

1. The highest threshold is the *Cheek/Ratzlaf* standard. It requires the "[g]overnment to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek*, 498 U.S. at 201.

2. The intermediate threshold is the *Bryan* standard. It requires only that the defendant possess "knowledge that the conduct is unlawful" without needing to know the specific legal duty violated. *Bryan v. United States*, 524 U.S. 184, 196 (1998).

3. The baseline standard eliminates any knowledge-of-law requirement entirely. It demands only that "the defendant know what he is doing, regardless of their awareness of the law, and it applies where conduct by its nature could not be participated in innocently." *United States v. Danielczyk*, 917 F. Supp. 2d 573, 577 (E.D.V.A. 2013).

Courts decide which of these standards apply based "on the context in which it appears." *Bryan*, 524 U.S. at 191. Specifically, courts examine the complexity of the legal framework and the apparent lawfulness of the conduct.

The baseline standard applies where the "probability of regulation is so great that anyone [involved] . . . must be presumed to be aware of the regulation." *United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 565 (1971) (baseline standard applied where defendant was shipping

noxious waste materials because it should have been apparent that laws govern the shipment of dangerous chemicals). That is, where conduct is so transparently illegal, the baseline standard applies. In contrast, courts have applied the *Bryan* standard to statutes that cover acts that are less clearly criminal. For example, campaign law contribution violations and unlicensed firearm sales involve legal acts layered with an unlawful veneer. *See Bryan*, 524 U.S. at 192 (applying the intermediate standard to violations of unlicensed firearm sales); *United States v. Smukler*, 991 F.3d 472, 487–88 (3d Cir. 2021) (applying intermediate standard to violations of campaign finance laws involving the falsification of campaign committee records).

The *Cheek/Ratzlaf* standard "applies 'where the obscurity or complexity' of a criminal statute 'may prevent individuals from realizing that seemingly innocent acts are, in fact, criminal,' and thus willfulness requires the defendant to have known that he was violating a specific law." *Danielczyk,* 917 F. Supp. 2d at 577 (quoting *United States v. George*, 386 F.3d 383, 390 (2d Cir. 2004)).

The *Cheek/Ratzlaf* standard applies here. A "highly technical statute[] . . . threaten[s] to ensnare [lawfully admitted immigrants] engaged in apparently innocent conduct."[3] *Bryan*, 524 U.S. at 185. First, "[f]ederal governance of immigration and alien status is extensive and complex." *Arizona v. United States*, 567 U.S. 387 (2012). The forms associated with such laws are often confusing and contradictory. *See supra* section I. Second, the conduct the statute regulates— registering a change of address when a person is *lawfully* present in the country—can only be regarded as an "innocent act." *Danielczyk*, 917 F. Supp. 2d at 577.

The government fails to establish willfulness in three ways.

---

[3] Even if the Court applied the *Bryan* standard, the government would still fail to prove willfulness. The same reasons listed below equally demonstrate that ██████████ did not have knowledge of the duty the statute imposed.

1.    *No actual notice*

"[I]f the Government proves actual knowledge of the pertinent legal duty, the prosecution, without more, has satisfied the knowledge component of the willfulness requirement." *Cheek*, 498 U.S. at 202. "But carrying this burden requires" the government to negate a defendant's "good-faith belief that he was not violating any of the provisions of the [immigration] laws." *Id.*

The government could have established actual notice if ICE had informed ████████ of his reporting obligations. But "[t]here is no evidence that [████████████] ever received notice that he must notify [immigration authorities] of his address change [within 10 days]." *Lahmidi*, 149 F.3d at 1017. That is damning.

a.    Forms failed to give notice

"[T]he Constitution . . . promis[es] fair notice of the laws." *City of Grants Pass, Oregon v. Johnson*, 603 U.S. 520, 550 (2024). Generally, courts have "expressed greater tolerance of [vague or inconsistent language] with[in] civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe [in the civil context]." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982). "[T]he requirements of due process are far greater in a criminal case." *United States v. Ward*, No. 00-cr-681, 2001 WL 1160168, at *26 (E.D. Pa. Sept. 5, 2001) (citing *Hoffman Estates*, 455 U.S. at 498 (because the consequences of criminal penalties are severe, the Constitution tolerates less vagueness for such enactments)). Conditioning criminal liability on "confusing and ambiguous [forms]" presents "serious problems of notice," *Colautti v. Franklin*, 439 U.S. 379, 394 (1979). Indeed, "[s]ignificant notice problems arise if we allow criminal liability to turn on the vagaries of . . . [forms] that are . . . opaque." *Sandvig v. Barr*, 451 F. Supp. 3d 73, 87 (D.D.C. 2020) (quoting *U.S. v. Nosal*, 676 F.3d 854, 860 (9th Cir. 2012)) (internal quotation marks omitted).

The government provided forms I-385, I-94, and PD G-56 to ███████ alongside general ICE information forms translated into Spanish. The general information form is the only one that references reporting a change of address. The government hangs its hat on this form: it assumes that Agent ████ gave the form and read the form to ███████. But this form is legally deficient.

The form merely states that a parolee "may not receive important information about [their] case and may be detained and/or deported," if they failed to update their address. ICE Records at 6. There is *no mention* anywhere in the form of a deadline to report a change of address. The authors at ICE failed to cut and paste the deadline to report "ten days from the date of such change[,]" as specified in 8 U.S.C. § 1305, into their form. Liability for failing to act requires a clearly defined timeframe so that a person knows exactly when their inaction becomes a crime. *See Hoffman Estates*, 455 U.S. at 498. Because "[t]he [form] did not provide information about this [10-day] requirement," ███████ had no notice of the deadline, nor corresponding obligation to follow it. *Lahmidi*, 149 F.3d at 1017 (immigrant's failure to report change of address was permissible because order from immigration authorities did not include the requirement, nor did agent explain it to the immigrant). And without notice, there is no willfulness. *See Cheek*, 498 U.S. at 202.

ICE's drafting failures should not be imputed to immigrants. It is "unrealistic to expect an alien to recognize, understand and pursue his statutory [obligations]" without adequate notice. *United States v. Charleswell*, 456 F.3d 347, 357 (3d Cir. 2006) (holding that failure to inform immigrant of his right to take direct appeal of reinstatement order denied him the opportunity for meaningful judicial review). Moreover, a deficient form "lulls the [noncitizen] into a false sense of [] security." *Walters v. Reno*, 145 F.3d 1032, 1043 (9th Cir. 1998). Thus, neither was ███████

█████ under any obligation to do statutory research for the deadline for reporting a change of address, nor would he have any inkling to do so after being lulled by ICE's form into thinking there was none. Ultimately, the government cannot "argue that [████████] should have provided his change of address to the [ICE] office . . . if [ICE] never actually provided [him] with [actual] notice of the address notification requirement, which is what happened here." *Singh v. Gonzales*, 412 F.3d 1117, 1121 (9th Cir. 2005).

    b.    Undocumented verbal warning

The government also asserts that Agent █████ read ████████ the deficient form with the change-of-address requirement. Reading the form does not cure its failure to include the 10-day deadline. The analysis can end there. But the ineptitude of ICE here bears further examination.

Agent █████ "had no specific recollections of his interactions with [████████]." Williams Affidavit ¶ 12. Instead, the government relies on the generic fact that "for all individuals who were granted parole, [Agent █████] would read the contents of their parole paperwork in their native language and would provide them with a complete copy of the necessary documentation." *Id.* This is a manufactured tautology, not reliable evidence. First, it presupposes that Agent █████ is incapable of making mistakes in the course of his duties. It is statistically impossible that Agent █████ gives the required notice to every single person out of the thousands he has seen without any, let alone many, errors. Has he never had an off minute? Second, how do we know his perfect score to be true? For now, all the Court has is Agent █████'s own vote of self-confidence that he has *never* made a mistake. But has there ever been a spot check of any sample size to verify his work? Presumably, the border station is under constant video surveillance. Yet the government has not gone back to see what his error rate was for giving the mandated notice either at the time

of ███████'s entry or more recently. Ultimately, even if Agent ███ gave notice to *some* noncitizens, the Court has insufficient evidence that Agent ███ gave the notice to ███████.[4]

Weak evidence of verbal warnings has negated criminal liability in other contexts. For example, an officer cannot claim that because they read the *Miranda* warnings to "all individuals" they take into custody, they must have done so with a defendant in question. *See Miranda v. Arizona*, 384 U.S. 436, 496 (1966) ("There is no evidence of any warning given prior to the FBI interrogation nor is there any evidence of an articulated waiver of rights after the FBI commenced its interrogation . . . [i]n these circumstances an intelligent waiver of constitutional rights cannot be assumed."). A court "will not presume that a defendant has been effectively apprised of his rights . . . on a record that does not show that any warnings have been given or that any effective alternative has been employed." *Miranda*, 384 U.S. at 498. Courts require proof. *See In Re Fernandez-Urzua*, 2004 WL 2943440, at *1 (BIA Oct. 19, 2004) (government failed to give notice of change of address requirement because the box in form I-830 that indicated that an immigration official had informed the respondent of this obligation "[was] not checked or signed."). "A signed waiver form, though not conclusive, is 'usually strong proof' of a knowing and voluntary waiver." *United States v. Alvarado-Palacio*, 951 F.3d 337 (5th Cir. 2020) (quoting *North Carolina v. Butler*, 442 U.S. 369, 373 (1979)). This is why the government has arrestees sign forms noting that they understand and waive their *Miranda* rights. And why courts require immigration officers to document giving notice about the change of address requirement. *See In Re Fernandez-Urzua*,

---

[4] A simple solution would be for ICE to keep records of the people agents met with and what the agents told them. This level of competency should not be aspirational.

2004 WL 2943440, at *1. Thus, ICE's failure to document the verbal notice purportedly given here precludes a finding of willfulness. *See id.*

> c.    Unsigned incomplete forms

Obtaining an individual's signature on an immigration form is another way to "establish[] a strong presumption that the signer knows its contents and assented to them." *In re A.J. Valdez*, 27 I. & N. Dec. 496, 502 (BIA 2018); *see e.g. Thompson v. Lynch*, 788 F.3d 638, 647 (6th Cir. 2015).

The government imagines that Agent ▮▮▮ would have given ▮▮▮▮▮▮ the opportunity to sign the deficient form, but that ▮▮▮▮▮ refused to sign it. This strains credulity. As the government conceded, there was no place on the form for a parolee to sign. Nor was there any documentation from Agent ▮▮▮ that he gave ▮▮▮▮▮▮ the opportunity to sign the form. Regardless, it is devastating to the government's notice claim if ▮▮▮▮▮ had the opportunity to sign and refused: the refusal to sign a "form casts initial doubt on any claim that [a person] waived his" rights as "[m]ost persons attach considerable significance to the refusal to sign." *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984) (inferring in part from defendant's refusal to sign waiver form that he had not waived his *Miranda* rights).

That the government did not even complete its own forms further diminishes its credibility. Form I-385 is incomplete. Boxes 15-21 and 23 are blank. *See* ICE Records at 1. Among the missing information is: who admitted ▮▮▮▮▮ into the United States, box 16; what date this occurred, box 18; and a fingerprint, box 23. *See id.* The government had no explanation for why these boxes were empty. Additionally, the government was unable to explain why portions of form I-94 are blank, whose initials correspond to the officer's section of the stamp on the form, and

what the purpose of the stamp is.[5] *See id.* at 4. The Court expects more from the government. Given the high stakes, ICE should be acting with the precision of SEAL Team 6; however, their actions here are giving Reno 911.

The throughline here is that "there is nothing in the record . . . to indicate that [█████████ █████████] was informed by [Agent █████]" of the duty to update his address. *In Re Fernandez-Urzua*, 2004 WL 2943440, at *1. This is a repeated problem for ICE. In *In Re Fernandez-Urzua*, the ICE agent failed to complete or sign the form detailing the change of address requirement. *See id.* ("[T]he box in the form I-830, Notice to EOIR, Alien Address, that should be checked and signed by an INS official to indicate that the respondent has been informed of the requirement that he tell the agency of any address changed, is not checked or signed."). The ICE agent's mistake created "reasonable cause" to excuse the immigrant's failure to report his change of address. *Id.* Similarly, in *Urbina–Osejo*, "there was no evidence that the agent . . . informed [the immigrant] of the change-of-address requirement," which foreclosed liability. *Lahmidi*, 149 F.3d at 1017 (citing *Urbina–Osejo v. I.N.S.*, 124 F.3d 1314, 1316 (9th Cir. 1997). ICE's failure to have █████████████ complete and sign the relevant form precludes a finding of willfulness here. *See id.*; *In Re Fernandez-Urzua*, 2004 WL 2943440, at *1.

Ultimately, the government has not carried its burden to negate the defendant's "good-faith belief that he was not violating any of the provisions of the [immigration] laws." *Cheek*, 498 U.S. at 202. Thus, the government cannot establish willfulness via actual knowledge.

---

[5] The technical nature of the forms in question again demonstrates how complex immigration law is. This further confirms why the heightened *Cheek/Ratzlaf* willfulness standard applies.

2.    *Other defects in the forms preclude a finding of willfulness*

The immigration forms provided to ███████████ are incoherent and fail to provide adequate warning of criminal liability. These inadequacies separately negate a finding of willfulness.

a.    Forms provided conflicting reporting requirements

The forms Agent ██████ purportedly gave ███████████ provide conflicting reporting requirements for another obligation. PD G-56 states in one section that an individual must report to their local ICE office in 15 days. ICE Records at 5. But the next page states three times that an individual must report to their local ICE office within 60 days.[6] *Id.* at 6. The Court questioned the government about this inconsistency. The government responded that they had no information to explain it. Again, the Court expects more from the government than a shoulder shrug.

Under the *Cheek/Ratzlaff* standard, the government must demonstrate "that the defendant knew of [his legal] duty." *Cheek*, 498 U.S. at 201. A defendant is not on notice of such duty where the government provides unclear information. *See, e.g.*, *United States v. Safavian*, 528 F.3d 957, 964–65 (D.C. Cir. 2008) ("vague" government guidance documents were insufficient to create a legal duty to disclose under 18 U.S.C. § 1001); *United States v. White Eagle*, 721 F.3d 1108, 1118 (9th Cir. 2013) (reversing a conviction where the information creating a duty to disclose did not "provide specifics on what kind of information should be reported or to whom"). Relatedly, in the statutory ambiguity context, "longstanding principles of lenity . . . demand resolution of ambiguities in [the criminal context] in favor of the defendant." *Hughey v. United*

---

[6] Adding to the confusion, there appears to be a photo of an English version on the form, which states: "You must report to an ICE Field Office within 90 days from receipt of this notice." ICE Records at 6.

*States*, 495 U.S. 411, 422 (1990). That is because the "imposition of criminal liability [based on

ambiguities] would offend due process considerations." *United States v. Crop Growers Corp.*, 954

F. Supp. 335, 345 (D.D.C. 1997) (citing *United States v. Murphy*, 809 F.2d 1427, 1431 (9th Cir.

1987)).[7] The underpinnings of that rule apply equally here.

      For a form to provide sufficient notice of the duty to report a change of address, it must be

clear. But a form with conflicting requirements "produces a high likelihood that aliens receiving

the form[] will be confused." *Walters*, 145 F.3d at 1042 (immigration forms failed "to inform

aliens of their rights and of the consequences of waiving them"). "[T]he combined effect of all [of

the conflicting and incomplete information in] the forms [here] is confusion." *Id.* at (9th Cir. 1998)

(citing *Perkins v. City of West Covina*, 113 F.3d 1004, 1012 (9th Cir. 1997) (explaining what kind

of notice is constitutionally sufficient). When the "'effect of [a] form[] is confusion,' notice to the

immigrant is constitutionally deficient." *United States v. Montero*, No. 12-cr-0095, 2012 WL

13442462, at *4 (N.D. Cal. Sept. 20, 2012) (quoting *Walters*, 145 F.3d at 1043); *see also Rojas v.*

---

[7] In the criminal context, there is no margin for error. Here, that concern is heightened. If arrested on this allegation and subsequently detained by ICE officials, ███████████ would be subject to possible human rights and due process violations either at CECOT in El Salvador, the crudely nicknamed "Alligator Alcatraz" in Florida, or any other ICE detention facility. In CECOT, "prisoners [are] rarely let out of their cells… there [is] no air conditioning despite the hot and humid weather . . . detainees sle[ep] on metal planks arranged like bunkbeds—no mattresses, blankets, or pillows . . . [and] guards routinely beat prisoners with batons." The only way out of this facility, the Salvadoran government has stated, is "inside a coffin." Sergio Martinez-Beltran & Manuel Rueda, *'Hell on Earth': Venezuelans deported to El Salvador mega-prison tell of brutal abuse,* Nat'l. Pub. Radio (Jul. 27, 2025), https://perma.cc/F8ZL-F5BB. At "Alligator Alcatraz," detainees are "barred from meeting attorneys, are being held without any charges and . . . federal immigration court has canceled bond hearings." Mike Schneider, *'Alligator Alcatraz' detainees held without charges, barred from legal access, attorneys say*, PBS News (Jul. 28, 2025), https://perma.cc/UD9A-8WQB  None of this is new. ICE detention facilities have been called "barbaric" for their insufficient care and inhumane conditions for years including negligent medical care, filthy living conditions, racist abuse, and violence against detainees that have contributed to deaths. Tom Dreisbach, *Government's own experts found 'barbaric' and 'negligent' conditions in ICE detention*, Nat'l Pub. Radio, (Aug. 16, 2023), https://perma.cc/68YY-F4RM.

*Johnson*, 305 F. Supp. 3d 1176, 1186 (W.D. Wash. 2018) ("[N]otice which is 'confusing' and 'affirmatively misleading' is not sufficient to satisfy due process."). And without notice, ███████ ███████ did not act willfully. *See Lahmidi*, 149 F.3d at 1017.

          b.      Forms did not include requisite criminal liability warning

"Even in the civil context, fair warning requires that government agencies communicate their interpretation of their own [rules] with 'ascertainable certainty' before subjecting private parties to punishment under that interpretation." *United States v. Harra*, 985 F.3d 196, 213 (3d Cir. 2021) (quoting *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 249, 251 (3d Cir. 2015). This is especially true in the immigration context. For "forms [to] satisfy the notice" requirement there, they must "apprise the alien of the drastic consequences" of noncompliance including deportation and prosecution. *Walters*, 145 F.3d at 1042; *see also* n.9.

The form that ICE purportedly shared with ████████████ failed to give notice that not updating one's address would result in criminal liability.[8] *See* ICE Records at 5. The forms only state that a parolee "may not receive important information about [their] case and *may* be detained and/or deported," if they failed to update their address. *Id.* at 6 (emphasis added). This indicates that potential detention or deportation *could* occur because the noncitizen would not receive important information about their immigration case in the mail.

The related warning for failure to register or report to ICE includes more direct, albeit likely still inadequate, language. That warning states "[f]ailure to report as instructed may result in your being taken into custody and/or a loss of eligibility for any possible relief. Thank you for your

---

[8] The forms also fail to detail how a parolee can update their address. *See* ICE Records at 5.

16

cooperation." ICE Records at 6.[9] Although this statement is not a clear warning of criminal liability, it is at least stronger than the warning for failure to update an address.

Under the *Cheek/Ratzlaf* standard, the government must establish that ██████████ knew his failure to update his address was unlawful. *See Cheek*, 498 U.S. at 201. The only evidence the government has offered to meet this requirement is the form provided by ICE. However, that form was not "only confusing, [it was] affirmatively misleading." *Walters*, 145 F.3d at 1043. Rather than warning of criminal consequences, the form merely states that non-compliance "may" result in missed communications and potential detention or deportation. First, this permissive language—may—instead of mandatory language signals a discretionary punishment. Criminal statutes must use mandatory language that is clearly articulated. *See United States v. Articles of Drug*, 825 F.2d 1238, 1244 (8th Cir. 1987) ("The degree of vagueness tolerated in a law depends in part on the nature of the law. If criminal penalties may be imposed for violation of the law, a stricter standard is applied in reviewing the statute. Greater vagueness is permissible in a civil statute because the 'consequences of imprecision are qualitatively less severe.'") (quoting *Hoffman Estates*, 455 U.S. at 499). Second, the penalties the form lists focus on administrative consequences. Missed correspondence is not a criminal penalty. And detention and deportation are among possible penalties in civil immigration enforcement actions. This vague warning cannot satisfy *Cheek*'s requirement that the defendant knew his conduct violated the law. *See e.g., United States v. Hajavi*, No. 24-10329, 2025 WL 1541283, at *5, 8 (11th Cir. May 30, 2025) (Held that defendant "willfully violated his known legal duties" under the International Emergency Economic

---

[9] The same warning was also written in Spanish on a separate document that ICE gave to ██████ ██████. ICE Records at 5.

17

Powers Act where government engaged in "affirmative efforts" to warn defendant that the law precluded the very actions that underlay his conviction.)

The government could easily make criminal liability clear in the form. For example, by stating: failure to update a change of address within 10 days is a violation of law and will result in criminal prosecution. Without this, "the alien has no reason to know that by [not updating his address], he is [criminally liable]." *Walters*, 145 F.3d at 1043 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, (1950) ("The notice must be of such a nature as reasonably to convey the required information.")).

B.    What Is This All For?

The inconsistencies, confusing forms, and trivial nature of the alleged violation beg the question of why the government is making a federal case out of this. In fact, the government could not recall a prior case in this district involving prosecution of the change-of-address requirement.

The answer is obvious. The administration has been open about their "love[] of deportations." *See* Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 6, 2025, 11:38 AM), https://perma.cc/2692-NJZA (President Trump stated via meme that he "loved the smell of deportations in the morning"). "Some of [President] Trump's advisors have said publicly that the administration's goal is for 3,000 ICE arrests each day. But in recent court filings, immigration officials have denied having a quota." Christie Thompson and Anna Flagg, *ICE Is Deporting Thousands With Minor Offenses — From Traffic Violations to Weed Possession*, The Marshall Project (Aug. 15, 2025), https://perma.cc/64QX-WQ8T. Regardless, the need to gin up numbers has led to ICE "primarily detaining individuals with no criminal convictions of any kind. Also, among those with criminal convictions, they are overwhelmingly not the violent offenses that ICE continuously uses to justify its deportation agenda." David J. Bier, *65 Percent of People Taken by*

*ICE Had No Convictions, 93 Percent No Violent Convictions*, CATO Institute (Jun. 20, 2025), https://perma.cc/2X77-P35Q. The instant complaint is evidence of that. ███████ has no prior criminal convictions. His sin was not understanding a defective, confusing form. Not exactly a rapist or drug dealer.

Because immigration enforcement is largely civil, immigration agents lack desired criminal enforcement tools, like search and seizure authority. But one loophole is to find any criminal charge, no matter how trivial, to obtain such power: [masked] agents can then use that criminal charge as a thinly veiled excuse to enter protected places and forcibly detain immigrants. In the past, the prosecution of the criminal charge was the government's primary goal.

A recent case demonstrates otherwise. *See* Complaint, *United States v. Enrique Carias Torres*, No. 1:25-mj-00146, (D.D.C. Sept. 5, 2025) (ECF No. 1). The government arrested Carias Torres and charged him with assaulting a police officer. *Id.* The government then moved to dismiss the case after ICE moved Carias Torres to an ICE detention facility in Louisiana to begin deportation proceedings.[10] *See* Gov't Mot. to Dismiss, 1, *U.S. v. Enrique Carias Torres*, No. 1:25-mj-00146, (D.D.C. Sept. 5, 2025) (ECF No. 10). In the past 10 years, the government has moved to dismiss a complaint with prejudice less than five times. Yet the government had no hesitation to do so here after it got its desired goal from charging Carias Torres: deportation.

---

[10] The sacrifice of due process in exchange for rapid deportations is part of an alarming, growing pattern of behavior. Weeks ago, five migrants were restrained in straitjackets for 16 hours and put on a U.S. military cargo plane to "a remote, open-air detention facility surrounded by armed military guards" in Ghana. Order Denying Temporary Restraining Order, 2, *D.A. et al. v. Noem et al.*, No. 1:25-cv-03135, (D.D.C. Sept. 15, 2025) (ECF No. 41) [hereafter TRO Denial]. Judge Chutkan described the government's actions as taken in "disregard of or despite its obligations to provide individuals present in the United States with due process and to treat even those who are subject to removal humanely. These actions also appear to be part of a pattern and widespread effort to evade the government's legal obligations by doing indirectly what it cannot do directly." TRO Denial, 4.

It is not hard to imagine a similar fate for ████████████ had the Court approved the instant request for an arrest warrant. However, for now, "court orders and the Constitution" stand in the way of the rush to arrest and deport. *See* Heather Knight and Hamed Aleaziz, *Trump Fired a U.S. Attorney Who Insisted on Following a Court Order*, New York Times (Sept. 26, 2025), https://perma.cc/U2TT-XAAZ.

## IV.    CONCLUSION

The rush to arrest and deport cannot trump the rule of law.

Date: October 2, 2025

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

# Exhibit A

FINS #: ▮▮▮▮▮▮    Subject ID: ▮▮▮▮▮    Event No: ▮▮▮▮▮▮▮

| 1. FAMILY NAME (Capital Letters)    First Name    Middle Name | | 2. Age | 3. Country of Citizenship | |
|---|---|---|---|---|
| ▮▮▮▮▮▮▮▮ | | ▮▮ | ▮▮▮▮▮▮ | |
| 4. Alias | | 5. Date Apprehended ▮▮▮▮▮▮▮ | 6. Office ▮▮▮▮ | |
| 7. Birth Date ▮▮▮▮▮▮ | 8. Birth Place ▮▮▮▮▮▮ | | | |
| 9. Sex ▮▮▮▮▮▮ | 10. OSC/WA Served ▮▮▮▮▮ | | | |
| 11. File Number ▮▮▮▮▮ | 12. Bond        Date Posted $ | | | |
| 13. CINS ▮▮▮▮ | 14 Medical Alert ▮▮▮▮▮▮▮▮ | | | |

| 15. TRANSFER DATE | FROM | TO |
|---|---|---|
| A | | |
| B | | |
| C | | |

| 16. ADMITTED BY: | 19. RELEASED TO: ☐ V/R  ☐ Deport | 22. Rt. Index Print – In | 23. Rt. Index Print - Out |
|---|---|---|---|
| 17. SEARCHED IN BY: | 20. RELEASED BY: | | |
| 18. DATE ADMITTED: | 21. DATE RELEASED: | | |
| 24. Remarks: ▮▮▮▮▮ | | | |

FORM I-385 (08/01/07)              ALIEN BOOKING RECORD
          UNITED STATES DEPARTMENT OF HOMELAND SECURITY

U.S. Department of Homeland Security                Continuation Page for Form                I385

| Alien's Name | File Number | Date |
|---|---|---|
| ███████ | ███████ | ███████ |
| | Event No: ███████ | |

## 24. REMARK
--------------------------

AS A CONDITION OF YOUR PAROLE YOU ARE TO REPORT TO THE IMMIGRATION AND CUSTOMS ENFORCEMENT
(ICE) OFFICE NEAR YOUR FINAL DESTINATION WITHIN 15 DAYS OR FACE REMOVAL FROM THE UNITED
STATES.  VISIT WWW.ICE.GOV/CONTACT/FIELD-OFFICES# FOR ADDRESSES.

MEDICAL ALERT:
--------------------------

DOES THIS FAMU HAVE A TEMPERATURE OF 100.4 OR OVER? ███████

DO THEY HAVE SHORTNESS OF BREATH? ███████

DO THEY HAVE A COUGH? ███████

DO THEY HAVE A SORE THROAT? ███████

HAVE THEY TRAVELED THROUGH A HIGH-RISK COUNTRY THAT HAS BEEN IDENTIFIED BY THE CDC? ███████

ARE THERE ANY PREGNANT FEMALES?  IF SO, HOW MANY MONTHS?  ANY MEDICAL ISSUES? ███████

| Signature | Title |
|---|---|
| ███████ | |

2 of 2 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

| CONTROL | Name (Last, First, Middle) | | | | | | |
|---|---|---|---|---|---|---|---|

| Birthdate | | Age | Marital Status | | File Number | |
|---|---|---|---|---|---|---|

| Sex | Hair | Eyes | Complexion | Height | Weight | Scars or Marks |
|---|---|---|---|---|---|---|

| U.S. Address/Mail | (Number) | (Street) | (City) | (State) | (ZIP CODE) |
|---|---|---|---|---|---|

| Alien's Telephone # | Date of Action | Location Code |
|---|---|---|

| City, Province (State) and Country of Birth | Country of Citizenship |
|---|---|

| Date, Place, Time, and Manner of Last Entry/Attempted Entry | Status at Entry |
|---|---|

| Foreign Address/Residence (Number, Street, City, Province (State), Country) |
|---|

| Method of Location/Apprehension | (At/Near) | Date & Hour |
|---|---|---|

You are required to retain this permit in your possession
and to surrender it to the transportation line at the time of
your departure unless you depart over the land border of
the United States in which case you must surrender it to a
Canadian immigration officer on the Canadian border, or to
a United States Immigration officer of the Mexican
border.

**DEPARTURE RECORD**

Port:

Date:

Manner:

Country of
Destination :

UNITED STATES DEPARTMENT OF HOMELAND SECURITY

Form Approved OMB No. 43-R0496

ARRIVAL - DEPARTURE RECORD

Form I-94 (Rev. 08/01/07)





DEPARTAMENTO DE SEGURIDAD INTERNA
Servicio de Inmigración y Control de Aduanas de los Estados Unidos

**PD G-56**

Número del
Expediente:

Fecha de Nacimiento:

Nombre:                                Fecha:

Domicilio:

**Favor de presentarse con este aviso en la oficina local de ICE cuando sea solicitado**

| UBICACIÓN DE LA OFICINA | Las oficinas locales de ICE están enumeradas en el documento adjunto titulado "Oficinas Locales de ICE". Favor de llamar al 1-888-351-4024 si usted necesita asistencia en localizar o reportarse a su oficina local de ICE. |
|---|---|
| FECHA LÍMITE | Debe presentarse en su oficina local de ICE en los 15 días siguientes de su puesta en libertad. |
| SOLICITUD | Preséntese ante un Oficial de Deportación de ICE para que continúe su tramitación y consideración para su inscripción en un Programa Alternativo a la detención (ATD, por sus siglas en inglés). |
| MOTIVO DE LA CITA | Usted ha sido puesto en libertad a discreción del Servicio de Aduanas y Protección Fronteriza de los Estados Unidos y ahora debe ponerse en contacto con su oficina local para completar la tramitación.

Reportarse con ICE asegurará de que el Departamento de Seguridad Interna (DHS, por sus siglas en inglés) tiene su domicilio e información de contacto actualizados. Una vez que se presente con ICE por primera vez, será evaluado para cumplir con los requisitos de presentación continua que pueden incluir la presentación en persona. El no reportarse a la oficina local de ICE puede resultar en su detención o se le coloque en formas adicionales de supervisión o monitoreo. |
| TRAIGA CON USTED | Documentos de identificación (acta de nacimiento, documentos de identidad emitidos por el gobierno, tales como licencia de conducir o cédula) y todos los documentos de inmigración. |

**Plazo de un Año de la Solicitud de Asilo: Si usted cree que puede reunir los requisitos para el asilo, debe presentar el Formulario I-589**, la Solicitud de Asilo y de Retención de Expulsión. El Formulario I-589, instrucciones, y la información sobre dónde presentar el Formulario se pueden encontrar en                          . Si no presenta el Formulario I-589 en el plazo de un año desde su llegada, no podrá solicitar asilo de acuerdo con el artículo 208(a)(2)(B) de la Ley de Inmigración y Nacionalidad.

**SI NO SE PRESENTA COMO SE LE HA INDICADO, PUEDE SER DETENIDO Y/O PERDER EL DERECHO A CUALQUIER POSIBLE RECURSO. GRACIAS POR SU COOPERACIÓN.**



**U.S. Immigration and Customs Enforcement**

## Presentarse ante ICE Después de la Liberación en los Estados Unidos

El Servicio de Aduanas y Protección Fronteriza de los Estados Unidos (CBP) libera a personas con instrucciones de presentarse ante el Servicio de Inmigración y Control de Aduanas de los Estados Unidos (ICE) para continuar el proceso. Este documento explica el proceso general al que puede encontrar al presentarse ante ICE. No pretende proporcionar asesoramiento legal ni sustituir la información incluida en los formularios a los que se hace referencia a continuación. Usted debe revisar TODA la documentación y entender su obligación de reportarse.

## Paso 1. Leer y Revisar Sus Formularios

**Formulario I-385 Solicitud para Presentarse**

CBP le proporcionó un formulario con sus datos personales, su huella dactilar y su fotografía. En la segunda página de este formulario se le indica que debe presentarse en la oficina de ICE más cercana a su destino en un plazo de 60 días.

**Formulario PD G-56 de DHS "Carta de Llamada"**

El Formulario PD G-56 de DHS, o "Carta de Llamada", indica que está obligado a presentarse ante un funcionario de ICE. Su PD G-56 le indica que debe presentarse en la oficina de ICE local más cercana en un plazo de 60 días a partir de su llegada a los Estados Unidos.

En el reverso de esta hoja hay una lista de oficinas , pero se le recomienda llamar al 1-888-351-4024 para confirmar la ubicación más cercana para que usted se presente.

## Paso 2. Presentarse a la Oficina Local de ICE y al Tribunal de Inmigración

### ¿DÓNDE Y CUÁNDO ME PRESENTO?

**Presentándose con ICE**

**Cita para el Registro.** En la sección central de su Formulario PD G-56 (véase abajo) se ofrece información sobre cómo presentarse con ICE. Puede presentarse en la oficina local de ICE o llamar al siguiente número gratuito para solicitar asistencia: **1-888-351-4024**.

| OFFICE LOCATION | Offices are listed on the attached document entitled "Migrant Protection Protocols (MPP) Processing and Reporting". Please call 1-833-670-1900 if you need assistance with locating or reporting to the local ICE Field Office. |
|---|---|
| DEADLINE | You must report to an ICE Field Office within 60 days from receipt of this notice |
| ASK FOR | Deportation Officer for ATD enrollment. |
| REASON FOR APPOINTMENT | You have been paroled into the United States after initial processing in the Migrant Protection Protocols and are required to attend your immigration court hearings and other official appointments related to your immigration case.<br><br>Reporting to ICE will ensure that DHS has your updated address and contact information. Once you report to ICE for the first time, your will be evaluated for ongoing reporting requirements. Reporting to ICE will help ensure your immigration case moves forward and that you do not miss an immigration court hearing. Failure to report to ICE may result to your being taken into custody or placement on additional forms of supervision or monitoring. |
| BRING WITH YOU | Identification document, birth certificate, government-issued identity documents such as a driver's license or cedula, and all immigration documents. |

**FAILURE TO REPORT AS INSTRUCTED MAY RESULT IN YOUR BEING TAKEN INTO CUSTODY AND/OR A LOSS OF ELIGIBILITY FOR ANY POSSIBLE RELIEF. THANK YOU FOR YOUR COOPERATION.**

ICE revisará su caso y puede requerir que comparezca ante un tribunal de inmigración.

Es posible que reciba una Notificación de Comparecencia (NTA, por sus siglas en ingles) ante un tribunal de inmigración.

**Presentación ante el Tribunal de Inmigración**

**Audiencia en el Tribunal.** Usted puede recibir información del tribunal de inmigración por correo; que incluirá el domicilio del tribunal, el número de la sala, la fecha y la hora de su comparecencia ante un juez de inmigración. Puede llamar a la Oficina Ejecutiva de Revisión Inmigratoria (EOIR, por sus siglas en ingles) al **1-800-898-7180** si no está seguro de su próxima fecha de comparecencia.

Si no se presenta a su audiencia en el tribunal de inmigración, se puede ordenar su expulsión de los Estados Unidos en su ausencia.

## Paso 3. Cumplir con las Condiciones de la Liberación

### DEBE CUMPLIR CON LAS CONDICIONES DE LA LIBERACIÓN

Debe revisar y cumplir todas las condiciones de su puesta en libertad, incluida la de presentarse en la Oficina Local de ICE en un plazo de 60 días.

Para programar su cita de revisión póngase en contacto con la Oficina Local de ICE correspondiente utilizando la información que aparece en el reverso de este folleto.

Es importante notificar a ICE y al tribunal de inmigración cualquier cambio de domicilio. Si ICE y el tribunal de inmigración no tienen su domicilio actual, es posible que no reciba información importante sobre su caso y que sea detenido y/o se ordene su expulsión de los Estados Unidos. Usted debe notificar a Ice y al tribunal de inmigración por separado.

Si no está seguro de cual es la oficina más cercana donde presentarse o tiene problemas en conectarse con la oficina local, incluido la necesidad de asistencia de un intérprete, puede llamar a ICE al número gratuito al
**1-888-351-4024.**

# Oficinas Locales de ICE



## Atlanta
Atlanta Field Office
180 Ted Turner Dr. SW
Atlanta, GA 30303
(404) 893-1210
Atlanta.Outreach@ice.dhs.gov

## Baltimore
Baltimore Field Office
31 Hopkins Plaza, 6th Floor
Baltimore, MD 21201
(410) 637-4000
Baltimore.Outreach@ice.dhs.gov

## Buffalo
Buffalo Field Office
250 Delaware Avenue, Floor 7
Buffalo, NY 14202
(716) 464-5800
Buffalo.Outreach@ice.dhs.gov

## Burlington (Boston)
Boston Field Office
1000 District Avenue
Burlington, MA 01803
(781) 359-7600
Boston.Outreach@ice.dhs.gov

## Centennial (Denver)
Denver Field Office
12445 E. Caley Avenue
Centennial, CO 80111
(720) 873-2899
Denver.Outreach@ice.dhs.gov

## Chicago
Chicago Field Office
101 W Ida B Wells Drive, Suite 4000
Chicago, IL 60605
(312) 347-2400
Chicago.Outreach@ice.dhs.gov

## Dallas
Dallas Field Office
8101 N. Stemmons Frwy
Dallas, TX 75247
(214) 424-7800
Dallas.Outreach@ice.dhs.gov

## Detroit
Detroit Field Office
333 Mt. Elliott St
Detroit, MI 48207
(313) 568-6049
Detroit.Outreach@ice.dhs.gov

## El Paso
El Paso Field Office
8915 Montana Avenue
El Paso, TX 79925
(915) 225-1901/1941
ElPaso.Outreach@ice.dhs.gov

## Fairfax (Washington, DC)
Washington Field Office
2675 Prosperity Avenue, 3rd Floor
Fairfax, VA 20598-5216
(703) 285-6200
Washington.Outreach@ice.dhs.gov

## Fort Snelling (St. Paul)
St Paul Field Office
1 Federal Drive, Suite 1601
Fort Snelling, MN 55111
(612) 843-8600
StPaul.Outreach@ice.dhs.gov

## Houston
Houston Field Office
126 Northpoint Drive
Houston, TX 77060
(281) 774-5964
Houston.Outreach@ice.dhs.gov

## Los Angeles
Los Angeles Field Office
300 North Los Angeles St., Rm 7631
Los Angeles, CA 90012
(213) 830-7911
LosAngeles.Outreach@ice.dhs.gov

## Miami
Miami Field Office
2805 South West 145th Avenue
Miramar, FL 33027
(954) 843-5800
Miami.Outreach@ice.dhs.gov

## New Orleans
New Orleans Field Office
1250 Poydras, Suite 350
New Orleans, LA 70113
(504) 599-7800
NewOrleans.Outreach@ice.dhs.gov

## New York
New York City Field Office
26 Federal Plaza, 9th FL, STE 9-110
New York, NY 10278
(212) 264-4213
NewYork.Outreach@ice.dhs.gov

## Newark
Newark Field Office
970 Broad St. 11th Floor
Newark, NJ 07102
(973) 645-3666
Newark.Outreach@ice.dhs.gov

## Philadelphia
Philadelphia Field Office
114 North 8th Street
Philadelphia, PA 19107
(215) 656-7164
Philadelphia.Outreach@ice.dhs.gov

## Phoenix
Phoenix
2035 N. Central Ave
Phoenix, AZ 85004
Tucson
6431 S. Country Club Rd
Tucson, AZ 85706
(602) 766-7030
Phoenix.Outreach@ice.dhs.gov

## San Antonio
San Antonio
3523 Crosspoint Drive
San Antonio, TX 78217
Harlingen
1717 Zoy Street
Harlingen, TX 78552
SA: (210) 564-3300  H: (956) 389-7800
SanAntonio.Outreach@ice.dhs.gov

## San Diego
San Diego Field Office
880 Front Street, #2242
San Diego, CA 92101
(619) 436-0410
SanDiego.Outreach@ice.dhs.gov

## San Francisco
San Francisco Field Office
630 Sansome Street, Rm 590
San Francisco, CA 94111
(415) 844-5512
SanFrancisco.Outreach@ice.dhs.gov

## Seattle
Seattle Field Office
12500 Tukwila International Blvd 4th Floor
Seattle, WA 98168
(206) 835-0650
Seattle.Outreach@ice.dhs.gov

## West Valley City (Salt Lake City)
Salt Lake City Field Office
2975 Decker Lake Drive, Suite 100
West Valley City, UT 84119-6096
(801) 886-7400
SaltLakeCity.Outreach@ice.dhs.gov