# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMUNITY ECONOMIC DEVELOPMENT CENTER OF SOUTHEASTERN MASSACHUSETTS, NATIONAL PARENTS UNION, NATIONAL KOREAN AMERICAN SERVICE AND EDUCATION CONSORTIUM, & UNDOCUBLACK NETWORK, | |
| Plaintiffs, | Civil Action No. 1:25-cv-12822-IT |
| v. | **Leave to file granted on November 25, 2025** |
| SCOTT BESSENT, Acting Commissioner of the Internal Revenue Service and Secretary of the Treasury; DEPARTMENT OF THE TREASURY; INTERNAL REVENUE SERVICE; FRANK BISIGNANO, Commissioner of the Social Security Administration; SOCIAL SECURITY ADMINISTRATION; KRISTI NOEM, Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | |
| Defendants. | |

## <u>REPLY BRIEF</u>

## TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................................1

II.     PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS. ...................................2

        A.      Each Plaintiff has associational standing. ................................................2

        B.      CEDC also has organizational standing....................................................5

III.    PLAINTIFFS' CLAIMS ARE LIKELY TO SUCCEED ON THE MERITS....................6

        A.      Plaintiffs' APA claims are likely to succeed. ..........................................6

                1.      Defendants' data-sharing arrangements are final agency action. ...............6

                2.      The IRS-ICE data-sharing arrangements are arbitrary, capricious, and contrary to § 6103. ........................................................7

                3.      Defendants fail to rebut evidence of SSA disclosure of information subject to § 6103. ..........................................................9

                4.      There is no other adequate remedy for Plaintiffs' injuries. .........................9

        B.      The First Amendment claim is likely to succeed....................................10

IV.     PLAINTIFFS ARE SUFFERING IRREPARABLE INJURY. .........................................11

V.      PLAINTIFFS' REQUESTED REMEDY IS APPROPRIATELY TAILORED. ..............12

VI.     CONCLUSION.................................................................................................13

3727396

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

A.B.-B. v. Morgan,
  548 F. Supp. 3d 209 (D.D.C. 2020) ................................................................4

AFSCME, AFL-CIO v. SSA,
  778 F. Supp. 3d 685 (D. Md. 2025) ................................................................3

Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,
  570 U.S. 205 (2013) ........................................................................................4

Airbnb, Inc. v. City of New York,
  373 F. Supp. 3d 467 (S.D.N.Y. 2019) ..........................................................11

All. for Retired Ams. v. Bessent,
  770 F. Supp. 3d 79 (D.D.C. 2025) ..................................................................3

Am. Ass'n of Univ. Profs. v. Rubio,
  780 F. Supp. 3d 350 (D. Mass. 2025) ......................................................6, 11

Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.,
  187 F. Supp. 3d 217 (D. Mass. 2016) ...........................................................11

Benisek v. Lamone,
  585 U.S. 155 (2018) ......................................................................................12

Bennett v. Spear,
  520 U.S. 154 (1997) ........................................................................................7

Boy Scouts of Am. v. Dale,
  530 U.S. 640 (2000) ..................................................................................5, 10

Charlesbank Equity Fund II v. Blinds To Go, Inc.,
  370 F.3d 151 (1st Cir. 2004) .........................................................................12

Clapper v. Amnesty Int'l USA,
  568 U.S. 398 (2013) ........................................................................................3

Conservation L. Found., Inc. v. Acad. Express, LLC,
  129 F.4th 78 (1st Cir. 2025) ............................................................................2

Corp. Techs., Inc. v. Harnett,
  943 F. Supp. 2d 233 (D. Mass.), aff'd, 731 F.3d 6 (1st Cir. 2013) .............11

Ctr. for Taxpayer Rts. v. IRS,
    No. 1:25-cv-00457-CKK, 2025 WL 3251044 (D.D.C. Nov. 21, 2025) ........................ *passim*

Doe v. Noem,
    783 F. Supp. 3d 907 (W.D. Va. 2025) ...............................................................................4, 11

Doe v. Stephens,
    851 F.2d 1457 (D.C. Cir. 1988) .............................................................................................10

Doe v. Trump,
    157 F.4th 36 (1st Cir. 2025).....................................................................................................12

Encino Motorcars, LLC v. Navarro,
    579 U.S. 211 (2016) ..................................................................................................................8

F.C.C. v. Fox Television Stations, Inc.,
    556 U.S. 502 (2009)...............................................................................................................7, 8

FDA v. All. for Hippocratic Med.,
    602 U.S. 367 (2024)...............................................................................................................5, 6

Florida v. Dep't of HHS,
    19 F.4th 1271 (11th Cir. 2021) ..............................................................................................13

GRACE, Inc. v. City of Miami,
    674 F. Supp. 3d 1141 (S.D. Fla. 2023) .................................................................................12

Hardaway v. D.C. Hous. Auth.,
    843 F.3d 973 (D.C. Cir. 2016) ................................................................................................4

Havens Realty Corp. v. Coleman,
    455 U.S. 363 (1982)..................................................................................................................5

Hernandez v. Sessions,
    872 F.3d 976 (9th Cir. 2017) .................................................................................................11

Indep. Equip. Dealers Ass'n v. EPA,
    372 F.3d 420 (D.C. Cir. 2004) ................................................................................................6

INS v. Lopez-Mendoza,
    468 U.S. 1032 (1984)..............................................................................................................10

Jeffries v. Volume Servs. Am., Inc.,
    928 F.3d 1059 (D.C. Cir. 2019) ..............................................................................................4

Kirwa v. U.S. Dep't of Def.,
    285 F. Supp. 3d 21 (D.D.C. 2017) .........................................................................................4

3727396

League of Women Voters of N.H. v. Kramer,
2025 WL 919897 (D.N.H. Mar. 26, 2025) ...........................................................6

Massachusetts v. Dep't of HHS,
923 F.3d 209 (1st Cir. 2019) .............................................................................3

Me. Ass'n of Interdependent Neighborhoods v. Petit,
647 F. Supp. 1312 (D. Me. 1986) ..................................................................4, 11

NAACP v. Alabama,
357 U.S. 449 (1958)...........................................................................................13

Nat'l Educ. Ass'n v. U.S. Dep't of Educ.,
779 F. Supp. 3d 149 (D.N.H. 2025)..................................................................11

Nowicki v. Comm'r,
262 F.3d 1162 (11th Cir. 2001) ........................................................................10

NTEU v. U.S. Dep't of Treasury,
838 F. Supp. 631 (D.D.C. 1993) .......................................................................11

Nuclear Regul. Comm'n v. Texas,
605 U.S. 665 (2025)...........................................................................................11

Pharm. Care Mgmt. Ass'n v. Rowe,
429 F.3d 294 (1st Cir. 2005) ...............................................................................2

Radack v. U.S. Dep't of Just.,
402 F. Supp. 2d 99 (D.D.C. 2005) ....................................................................10

S.S. by S.Y. v. City of Springfield,
332 F. Supp. 3d 367 (D. Mass. 2018) ..................................................................2

Seafreeze Shoreside, Inc v. U.S. DOD,
2023 WL 3660689 (D. Mass. May 25, 2023) ....................................................12

Sindicato Puertorriqueno de Trabajadores v. Fortuno,
699 F.3d 1 (1st Cir. 2012)..............................................................................5, 11

TransUnion LLC v. Ramirez,
594 U.S. 413 (2021).............................................................................................3

United States v. Michaelian,
803 F.2d 1042 (9th Cir. 1986) ..........................................................................10

United States v. Orlando,
281 F.3d 586 (6th Cir. 2002) ............................................................................10

3727396

Warth v. Seldin,
    422 U.S. 490 (1975) ............................................................................................5

We the Patriots, Inc. v. Grisham,
    119 F.4th 1253 (10th Cir. 2024) .....................................................................13

**Federal Statutes**

5 U.S.C. § 704 .........................................................................................................10

8 U.S.C. § 1253 ..........................................................................................................7

26 U.S.C. § 6103 .............................................................................................. *passim*

26 U.S.C. § 7213 ........................................................................................................9

26 U.S.C. § 7431 ........................................................................................................9

**State Statutes**

Privacy Act ..............................................................................................................10

**Regulations**

90 Fed. Reg. 10,025, 10,026 (Feb. 20, 2025) ..........................................................9

**Constitutional Provisions**

First Amendment ......................................................................................1, 5, 10, 11

v

## I.    INTRODUCTION[1]

In support of preliminary relief, Plaintiffs have advanced comprehensive evidence of Defendants' unlawful data-sharing and its grave consequences for their members, who credibly fear arrest, detention, and removal as a proximate result of Defendants' actions. Plaintiffs have likewise put forward credible evidence that Defendants' conduct impairs Plaintiffs' core missions, which gives them standing to challenge the data-sharing arrangements on their members' behalf. In response, Defendants ignore all the evidence and act as if no data-sharing has taken place and that Plaintiffs are free to operate as usual. Simultaneously, Defendants pretend any future data-sharing will fully comply with 26 U.S.C. § 6103.

But it is indisputable that Defendants have already illegally shared immigrant taxpayer data and, absent preliminary relief, will continue to do so to further the Administration's stated objective to deport as many immigrants as possible. Doc. No. 28-1 at TD_145–46; Doc. No. 1 ¶ 60. Despite Defendants' protestations, they are doing so in violation of 26 U.S.C. § 6103, which was enacted to protect the confidentiality of taxpayer information and subjects them to strict requirements. But the data-sharing arrangements (or "arrangements") at issue do not abide by § 6103's strict edicts. And despite Defendants' self-serving declaration to the contrary, SSA has already disclosed and is preparing to further disclose taxpayer information in violation of the statute. Doc. No. 39-2 ¶ 4.

Plaintiffs are likely to succeed on their APA claim because the data-sharing arrangements constitute final agency action, and the record clearly shows the arrangements are unlawful. And Plaintiffs' First Amendment claims are likely to succeed because Defendants' actions are suppressing their expressive association. Finally, Plaintiffs' harms are irreparable. Unlawful

---

[1] All internal citations and quotations are omitted and alterations added unless otherwise noted.

disclosure of confidential data can never be fully undone, and once Defendants share Plaintiffs'
members' home addresses, they face the imminent risks of detention and deportation.

Acknowledging many of these facts, on November 21, a court ordered the IRS to cease
sharing return information with ICE. Ctr. for Taxpayer Rts. v. IRS, No. 1:25-cv-00457-CKK,
2025 WL 3251044 (D.D.C. Nov. 21, 2025). Yet because neither ICE nor SSA are parties to that
proceeding, this essential intervention does little for taxpayers whose information was already
transferred—or whose information was or may be transferred by SSA. Plaintiffs respectfully
request that the Court enter the preliminary relief outlined in their motion. Doc. No. 25.

## II.    PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS.

### A.    Each Plaintiff has associational standing.

Defendants effectively concede that Plaintiffs meet the germaneness and individual
participation requirements for associational standing but incorrectly challenge whether Plaintiffs'
members would have concrete and imminent Article III injuries.[2] See Doc. No. 39 at 6;
Conservation L. Found., Inc. v. Acad. Express, LLC, 129 F.4th 78, 86 (1st Cir. 2025) (elements
of associational standing). Plaintiffs have amply satisfied the Article III standard. None of
Defendants' arguments to the contrary hold water.

First, Defendants' assertion that "it is entirely speculative that the data of any of
Plaintiffs' members has been, or will be" shared with ICE is directly belied by the record. Doc.
No. 39 at 6. Defendants have *already shared* data for thousands of taxpayers and have plans to
share even more. Doc. No. 28-1 at TD_145; Doc. No. 1 ¶ 98; Doc. No. 39-2 ¶ 4. ICE requested

---

[2] Defendants waive argument regarding any other elements. At any rate, the economic justice
and equality interests that Plaintiffs seek to protect are germane to each organization's purpose of
protecting and serving immigrants. Doc. No. 35 at 4–5 (collecting citations); S.S. by S.Y. v. City
of Springfield, 332 F. Supp. 3d 367, 375 (D. Mass. 2018) (ending disability discrimination
germane to purpose of bettering education). Plaintiffs' requested equitable relief requires no
member participation. Pharm. Care Mgmt. Ass'n v. Rowe, 429 F.3d 294, 314 (1st Cir. 2005).

the home addresses of all (or nearly all) immigrants with final removal orders, Doc. No. 28-1 at

TD_100-02, 145—which includes Plaintiffs' members, Doc. No. 34 ¶¶ 19, 32; Doc. No. 31 ¶ 50.

Further, Plaintiffs' members have SSNs and final orders, Doc. No. 31 ¶ 50, and one member's

spouse with an SSN and final order reasonably fears that ICE has no record of their departure,

id.; see Doc. No. 29 ¶¶ 22–26 (ICE does not always have departure records), creating an easy

data match, see Doc. No. 28-1 at TD_125–26. Given the amount of data already shared,

Plaintiffs' members have a ***concrete*** and reasonable fear that their data has been shared and that

there is a "substantial risk" that it will be used unlawfully for arrests, detention, or deportation.

Massachusetts v. Dep't of HHS, 923 F.3d 209, 225 (1st Cir. 2019); see also Clapper v. Amnesty

Int'l USA, 568 U.S. 398, 414 n.5 (2013) ("[P]laintiffs [need not] demonstrate that it is literally

certain that the harms they identify will come about.").

Second, Defendants' suggestion that "the mere disclosure of data, even if in violation of a

statute, does not constitute a 'concrete' injury" is wrong as a matter of law. Doc. No. 39 at 6.

Defendants cite for support TransUnion LLC v. Ramirez, 594 U.S. 413, 425–27 (2021), which

held that certain plaintiffs lacked standing to challenge misleading credit alerts that were not

disclosed to creditors (as third parties), rendering their injury speculative because mere violation

of a statute is insufficient to establish Article III injury. Here, the data ***already has been***

***disclosed*** to the party who presumably would use it to the Plaintiffs' detriment. And further, in

TransUnion the Supreme Court recognized that "disclosure of private information[] and intrusion

upon seclusion" were sufficient injuries to confer standing. Id., 594 U.S. at 425. Several courts

have followed this direction to find standing for similar disclosures by the IRS and SSA—even

"internal[]" disclosures within the government. All. for Retired Ams. v. Bessent, 770 F. Supp. 3d

79, 101–05 (D.D.C. 2025); see also AFSCME, AFL-CIO v. SSA, 778 F. Supp. 3d 685, 731–41,

745 (D. Md. 2025) (data sharing analogous to intrusion upon seclusion); <u>Jeffries v. Volume Servs. Am., Inc.</u>, 928 F.3d 1059, 1064 (D.C. Cir. 2019) (data disclosure akin to "common law breach of confidence"). The court in <u>Ctr. for Taxpayer Rts.</u>, 2025 WL 3251044, at *8–17, reached the same conclusion.

Third, Plaintiffs' members are ***currently experiencing*** Article III injuries from Defendants' data-sharing arrangements. Plaintiffs want to file their taxes but are chilled from doing so because they fear the arrangements will cause their unlawful arrest, detention, or deportation. Doc. No. 31 ¶¶ 45–50; Doc. No. 33 ¶¶ 14, 19–20; Doc. No. 34 ¶¶ 15–35. This deprives them of tax credits and refunds to which they are legally entitled and undermines eligibility for future immigration relief. Doc. No. 29 ¶ 43; Doc. No. 31 ¶ 45; Doc. No. 37 ¶ 25. The loss of government benefits is an Article III injury. <u>See</u> <u>Hardaway v. D.C. Hous. Auth.</u>, 843 F.3d 973, 978 (D.C. Cir. 2016); <u>see also</u> <u>Me. Ass'n of Interdependent Neighborhoods v. Petit</u>, 647 F. Supp. 1312, 1315 (D. Me. 1986) (wrongful denial of benefits).[3] And courts have found that fear of deportation itself is an irreparable injury where the government blocks access to legal avenues for avoiding removal. <u>See</u> <u>Kirwa v. U.S. Dep't of Def.</u>, 285 F. Supp. 3d 21, 43 (D.D.C. 2017); <u>Doe v. Noem</u>, 783 F. Supp. 3d 907, 927–28 (W.D. Va. 2025) (irreparable harm where fear of detention and deportation were "far from speculative"); <u>see also</u> <u>A.B.-B. v. Morgan</u>, 548 F. Supp. 3d 209, 222 (D.D.C. 2020) (public has strong "interest in preventing [noncitizens] from being wrongfully removed").

Finally, Defendants again ignore the evidence in making the conclusory assertion that Plaintiffs have "ma[de] no showing of associational standing for their First-Amendment claims"

---

[3] Even where an individual "has no entitlement to [a government] benefit," the government "may not deny [that] benefit to a person on a basis that infringes" constitutional rights. <u>Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.</u>, 570 U.S. 205, 214 (2013).

4

and cannot "plausibly trace a reticence to participate in social programming to the data-sharing[.]" Doc. No. 39 at 6. Plaintiffs' brief and declarations detail how Defendants' data sharing intimidates members and chills them from gathering, promoting shared values, seeking guidance, and filing taxes. See, e.g., Doc. No. 31 ¶¶ 35–41 (fear of data sharing caused loss of faith in group and decline in tax participation, and contributed to sharp decline in attendance at health and education events); see also Boy Scouts of Am. v. Dale, 530 U.S. 640, 650 (2000). Plaintiffs' members, therefore, have standing based on their First Amendment injuries. See Sindicato Puertorriqueno de Trabajadores v. Fortuno, 699 F.3d 1, 11 (1st Cir. 2012).

**B.    CEDC also has organizational standing.**

CEDC also has standing in "its own right[,] to seek judicial relief from injury to itself and to vindicate its own rights," Warth v. Seldin, 422 U.S. 490, 511 (1975), because Defendants' actions have caused "concrete and demonstrable injury to [CEDC's] activities" and a resulting "drain on [its] resources" that is "more than simply a setback to" social interest. Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982). Defendants assert without support that CEDC's "pocketbook injury" is insufficient for standing, again ignoring the facts and law. CEDC's funding is directly tied to the number of returns it files, which dropped by 14 percent. Doc. No. 31 ¶¶ 38–39. That is quintessential economic injury. Moreover, CEDC's standing stems from its need to address members' questions and concerns about data sharing, id. ¶¶ 37–39, not "expending money to gather information [or] advocate against the [D]efendant[s'] action," FDA v. All. for Hippocratic Med., 602 U.S. 367, 394 (2024); see also Ctr. for Taxpayer Rts., 2025 WL 3251044, at *8–11.

Defendants' dismissive assertion that "nothing about inter-agency data-sharing remotely interferes with CEDC's ability to conduct its operations," Doc. No. 39 at 5, ignores CEDC's evidence connecting its members' reluctance to participate to Defendants' data-sharing

arrangements, see, e.g., Doc. No. 31 ¶¶ 38, 44; see also Am. Ass'n of Univ. Profs. v. Rubio, 780 F. Supp. 3d 350, 386 (D. Mass. 2025) (finding standing where targeted immigration enforcement deterred noncitizen members from participating in organization's "core activities"). Further, the data-sharing arrangements directly affect CEDC's ability to carry out its activities: it cannot advise members to not file taxes; yet, as a mission-based organization serving an immigrant population, it also cannot encourage filing, given the risks created by the arrangements. Doc. No. 31 ¶ 36. The arrangements thus "directly affected and interfered with [CEDC]'s core business activities." All. For Hippocratic Med., 602 U.S. at 395; see also League of Women Voters of N.H. v. Kramer, 2025 WL 919897, at *9–10 (D.N.H. Mar. 26, 2025) (standing where actions "perceptibly impaired" organization's core functions).[4]

## III.    PLAINTIFFS' CLAIMS ARE LIKELY TO SUCCEED ON THE MERITS.

### A.    Plaintiffs' APA claims are likely to succeed.

#### 1.    Defendants' data-sharing arrangements are final agency action.

Defendants claim that the arrangements "do not mark the consummation of agency decision-making" but merely summarize "the technical framework" that would support "*future* . . . transfer[s] of data." Doc. No. 39 at 7. For starters, this case is nothing like Indep. Equip. Dealers Ass'n v. EPA, 372 F.3d 420, 428 (D.C. Cir. 2004), in which the court held that an EPA letter was not final agency action because the letter did not "implement, interpret, or prescribe law or policy[,]" but merely "*restat[ed]* EPA's established interpretation of" its regulations.

The data-sharing arrangements at issue here reflect radical *departures* from longstanding agency practices and *new* applications and interpretations of § 6103(i)(2). For example, while on February 21, 2025, the IRS asserted that address-only disclosures were prohibited under

---

[4] To the extent that the Court has additional concerns about standing, Plaintiffs respectfully request an opportunity to supplement the record.

subsection (i)(2), Doc. No. 28-1 at TD_4–5, the August exchange did just that, id. at TD_145–46. As a set of new practices with actual effect on taxpayers' rights, the arrangements constitute final, reviewable agency action. See Ctr. for Taxpayer Rts., 2025 WL 3251044, at *17–20; Bennett v. Spear, 520 U.S. 154, 178 (1997). Moreover, Defendants' assertion that data-sharing is merely a future possibility continues to confound, given the extensive record of data-sharing that has already occurred. Even Defendants concede that data-sharing would be reviewable final agency action. Doc. No. 39, at 7. They merely pretend it has not occurred yet, against all evidence to the contrary. Doc. No. 28-1 at TD_145.

2.    **The IRS-ICE data-sharing arrangements are arbitrary, capricious, and contrary to § 6103.**

Defendants stridently defend their right to share home addresses under § 6103(i)(2). Doc. No. 39 at 9–14. But they do not bother to defend many other aspects of their unlawful data-sharing arrangements. And even if the arrangements were lawful (they are not), Defendants have not addressed their abrupt policy reversal with no reasoned decision-making, contrary to the APA. See F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009).

First, Defendants do not rebut Plaintiffs' evidence that the criminal-investigative rationale for ICE's data requests is only pretextual cover for civil immigration arrest, detention, and deportation. The McShane Declaration acknowledges that such civil enforcement (euphemistically "administrative remedies") is the default; and that criminal prosecution under 8 U.S.C. § 1253 arises only where a noncitizen's acts "have a serious negative impact on our society, members of the public, and agency operations." Doc. No. 39-3 ¶ 8. Belying such "serious negative impact," many people with final removal orders have simultaneous immigration status. Doc. No. 29 ¶¶ 28–34, 46. Still others would fail to meet the requirement for "willfulness" in their failure to depart. Id. ¶¶ 48–51. Yet ICE apparently sought the last known

7

address of *every* noncitizen with a final removal order—including those whose orders were too recent to support prosecution under § 1253(a). Doc. No. 28-1 at TD_145.

Second, McShane does not assert that he is "personally and *directly* engaged" in criminal investigation of the taxpayers whose data was disclosed, as mandated by § 6103(i)(2)(A). Rather, his role is "overseeing and managing the enforcement initiatives related to, and components involved in, carrying out these investigatory steps." Doc. No. 39-3 ¶ 8. This is many layers removed from the "investigating ERO officer" who bears "responsibility for the most important steps in establishing a prosecutable case." Id. ¶ 5. It defies belief that McShane will personally and directly parse the details of 47,000 taxpayers—let alone the 1.2 million initially requested.

Third, Defendants do not assert that ICE has established protections to restrict taxpayers' information to use for criminal investigations and prosecution, as required by the statute. The Implementation Agreement identified several locations where ICE would store taxpayers' information, including databases which have historically been accessible across DHS. Doc. No. 28-1 at TD_52–55; Doc. No. 30 ¶¶ 16-26. Yet Defendants have given no indication that the various information systems have been changed to limit access to the taxpayer information.

Finally, Defendants offer *no* reasoning to support their decision-making, apart from the assertion that the data-sharing arrangements were statutorily required. See Doc. No. 39 at 13–14. Even if the IRS would be required to comply with a hypothetical request from ICE, it does not follow that the flawed, dragnet approach by the two agencies was mandatory—especially given the IRS's repeated and consistent assurances of confidentiality to taxpayers. Even worse, there is no explanation of the changed interpretation of (i)(2), which was long understood to *prohibit* address-only requests. Such unreasoned policymaking is arbitrary and capricious. See F.C.C., 556 U.S. at 515; Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 222, 224 (2016).

### 3.    Defendants fail to rebut evidence of SSA disclosure of information subject to § 6103.

Defendants further mischaracterize Plaintiffs' evidence of SSA-ICE information sharing to avoid complete review of the agencies' actions. Because many of Plaintiffs' members have Social Security Numbers, via DACA or other means, the prospect that SSA is unlawfully sharing their information with ICE is of dire concern. Doc. No. 31 ¶¶ 46, 48–50; Doc. No. 34 ¶¶ 18–20. Notably, Defendants do not deny that SSA gave ICE information for tens of thousands of individuals in early 2025, focusing solely on the August 27, 2025, Letter. Plaintiffs seek immediate protections regarding ICE's possession and use of any return information that was disclosed earlier in the year.

As for the August 27 Letter, Defendants claim that SSA need not comply with § 6103 because it pulls data from numerous systems of records, "many of which do not contain tax-return data." Doc. No. 39 at 13. As an initial matter, the Letter itself does not limit SSA to sharing data only from systems that do not contain tax return data. Doc. No. 1-4. Further, the Systems of Records that SSA indisputably plans to share with ICE are highly likely to contain information *from tax filings*. In particular, the Master Files of Social Security Number (SSN) Holders and SSN Applications, SORN No. 60-0058, includes "changes in the information on the applications the SSN holders submit," which may include SSN holders' current home address. SORN, 90 Fed. Reg. 10,025, 10,026 (Feb. 20, 2025). And contrary to Myers' assertion, the SORN explicitly notes that § 6103 may limit disclosure of data from this file. Id. Plaintiffs' fear of SSA's unlawful disclosure of return information, including home addresses, remains pressing.

### 4.    There is no other adequate remedy for Plaintiffs' injuries.

Contrary to Defendants' assertions, legal damages under 26 U.S.C. § 7431 and criminal punishment under 26 U.S.C. § 7213 do not provide an "adequate remedy" for Plaintiffs' injuries.

See 5 U.S.C. § 704; <u>Ctr. for Taxpayer Rts.</u>, 2025 WL 3251044, at *20 (Internal Revenue Code

inadequate alternative to APA relief). Neither form of backward-looking relief remedies the

unlawful disclosure of protected data, foregone government benefits, or—especially—unlawful

detentions and deportations. Nor does either form of relief prevent additional sharing and use of

the unlawfully obtained data in the future. Other courts have similarly allowed for injunctive

relief under the APA for violations of the Privacy Act, which has analogous damages provisions

to § 6103. <u>See Doe v. Stephens</u>, 851 F.2d 1457, 1463, 1466-67 (D.C. Cir. 1988) (injunctive relief

for Privacy Act violations available under the APA); <u>Radack v. U.S. Dep't of Just.</u>, 402 F. Supp.

2d 99, 104 (D.D.C. 2005) (permitting injunctive relief where Privacy Act money damages did

not provide an "adequate remedy" for plaintiff's harm). Defendants' citations to cases about the

exclusionary rule in the criminal context are inapposite.[5]

### B.    The First Amendment claim is likely to succeed.

Defendants only real counterargument to Plaintiffs' First Amendment claims is that the

data-sharing arrangements themselves do not affect Plaintiffs' expressive association—but once

again, Defendants ignore the record. Plaintiffs' declarations detail how ***the data sharing*** has

intimidated members from gathering, promoting values, seeking advice, and filing taxes, out of

"fear that their information will be shared with immigration enforcement" and because, for

CEDC members, they have lost trust in the group due to Defendants' actions. <u>See, e.g.</u>, Doc. No.

31 ¶ 35–37; 43–44; <u>Boy Scouts</u>, 530 U.S. at 648. Defendants cite no evidence to the contrary.[6]

---

[5] These out-of-circuit cases held that suppression of evidence in a criminal proceeding is not an appropriate remedy for the government's violation of § 6103. <u>United States v. Orlando</u>, 281 F.3d 586, 595–96 (6th Cir. 2002); <u>Nowicki v. Comm'r</u>, 262 F.3d 1162, 1163–64 (11th Cir. 2001); <u>United States v. Michaelian</u>, 803 F.2d 1042, 1048–50 (9th Cir. 1986). These cases have nothing to do with civil cases or APA claims, and here the exclusionary rule is irrelevant for a host of reasons, including that removal proceedings are civil, not criminal. <u>INS v. Lopez-Mendoza</u>, 468 U.S. 1032, 1038 (1984).

[6] Plaintiffs ultra vires claim is also likely to succeed not because Defendants' actions are merely

## IV.    PLAINTIFFS ARE SUFFERING IRREPARABLE INJURY.

Plaintiffs and their members are suffering a litany of irreparable injuries that Defendants simply ignore. Supra Part II; Ctr. for Taxpayer Rts., 2025 WL 3251044, at 32–38. Each Article III injury discussed above is irreparable. See Airbnb, Inc. v. City of New York, 373 F. Supp. 3d 467, 499 (S.D.N.Y. 2019) (wrong disclosure of confidential data is "quintessential" irreparable injury); Corp. Techs., Inc. v. Harnett, 943 F. Supp. 2d 233, 242–43 (D. Mass.), aff'd, 731 F.3d 6 (1st Cir. 2013) (similar[7]); NTEU v. U.S. Dep't of Treasury, 838 F. Supp. 631, 640 (D.D.C. 1993) (Disclosure of "highly personal information . . . to the government . . . cannot be undone."); Doe, 783 F. Supp. 3d at 927 (nonspeculative fear of deportation can be irreparable); Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017) (ICE detention can cause irreparable injury); Petit, 647 F. Supp. at 1315 (wrongful denial of benefits is irreparable, including if it "disrupt[s] . . . the family unit"); Nat'l Educ. Ass'n v. U.S. Dep't of Educ., 779 F. Supp. 3d 149, 200 (D.N.H. 2025) (impairing organization's core activities is irreparable); Rubio, 780 F. Supp. 3d at 386 (same); Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 187 F. Supp. 3d 217, 223 (D. Mass. 2016) (goodwill and reputation injuries are irreparable); Sindicato, 699 F.3d at 15 (First Amendment injury is irreparable). And because Defendants' ***own evidence*** shows they are "currently working to implement" the arrangements to ***share more data***, Doc. No. 39-2 ¶ 4, without any indication that ICE or DHS will ensure confidentiality upon receipt, only preliminary relief can prevent further sharing and unlawful use.

---

unlawful—they are—but because each agency is acting "contrary to [the] specific prohibition[s]" in § 6103 against data sharing unless strict requirements are met—which they are not. 26 U.S.C. § 6103(a), (i)(2); see Nuclear Regul. Comm'n v. Texas, 605 U.S. 665, 681 (2025).

[7] Because "[i]t would be extraordinarily difficult, if not impossible, to quantify" the harm from data disclosure in dollars, money damages are insufficient. Corp. Techs., 943 F. Supp. 2d at 243.

Finally, Plaintiffs did not "inexplicabl[y] delay" filing for preliminary relief. Plaintiffs prepared and filed their complaint soon after SSA's FOIA disclosure. Doc. No. 1-4. While preparing their motion, Plaintiffs learned of the directly relevant impending disclosure of the AR in Center for Taxpayer Rights and filed their motion *days* after its production. Courts only find lack of "reasonable diligence" after *far* longer delays, including in Defendants' own cited case. See Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 163 (1st Cir. 2004) (PI filed a year after complaint and "not attributable to intervening events" was not diligent); see also Benisek v. Lamone, 585 U.S. 155, 159 (2018) (PI filed six years after wrongful act and three years after complaint was not diligent); Seafreeze Shoreside, Inc v. U.S. DOD, 2023 WL 3660689, at *5 (D. Mass. May 25, 2023) (history omitted) (PI filed 16 months after wrongful act and 11 months after complaint was not diligent). It is absurd for Defendants to repeatedly assert that Plaintiffs' factual evidence is too speculative while simultaneously arguing the motion should have been filed earlier, when Plaintiffs had even less access to evidence of Defendants' actions. See GRACE, Inc. v. City of Miami, 674 F. Supp. 3d 1141, 1162 (S.D. Fla. 2023) (history omitted) (PI filed 11 months after wrongful act and two months after complaint was excusable delay because it "arose from caution and a need to ensure that Plaintiffs could satisfy their high evidentiary burden").[8]

## V.    PLAINTIFFS' REQUESTED REMEDY IS APPROPRIATELY TAILORED.

Plaintiffs' requested remedy is appropriately tailored under the APA and recent Supreme Court precedent to provide Plaintiffs the "complete relief" to which they are entitled. Doe v. Trump, 157 F.4th 36, 81-82 (1st Cir. 2025). Plaintiffs seek an order staying the data sharing

---

[8] The balance of equities and public interest favor preliminary relief for all the reasons set forth in Plaintiffs' motion. Defendants' sole counterargument that Plaintiffs are "unlawfully present" fails to cite any evidence and ignores the record support that many individuals with final orders are lawfully present. Doc. No. 29 ¶¶ 28–37; Doc. No. 34 ¶ 32.

arrangements, precluding future sharing between agencies, and prohibiting the inspection, use, or further dissemination of data that has already been disclosed—cessation of the unlawful actions under the APA. Doc. Nos. 27, 35-1. The Court should reject Defendants' suggestion that Plaintiffs submit their membership lists for *in camera* review to secure protection for the specific members listed. As an initial matter, Defendants' proposal arguably violates Plaintiffs' constitutional rights in and of itself. See NAACP v. Alabama, 357 U.S. 449, 460–62 (1958) (compelled disclosure of membership lists infringes freedom of association rights). Moreover, Defendants' proposal would require the Court to conduct the person-by-person determinations required of the agencies under § 6103. Where, as here, the agencies' data-sharing arrangements are unlawful and unconstitutional, the proper remedy is to vacate them.

Finally, Plaintiffs' request is not rendered moot by the order in Ctr. for Taxpayer Rights. First, Plaintiffs seek an order against ICE, DHS, and SSA, who are not parties in that case, and who have persisted in obtaining and sharing addresses, even despite IRS's reluctance. Doc. No. 28-1 at TD_3–5; TD_93; TD_115–18; cf. We the Patriots, Inc. v. Grisham, 119 F.4th 1253, 1258 (10th Cir. 2024) (grant of second preliminary relief must have "real-world effect"). Second, preliminary relief in one court does not render the same issue moot elsewhere where the harm is capable of repetition but evading review, including because preliminary relief can expire. Florida v. Dep't of HHS, 19 F.4th 1271, 1279–81 (11th Cir. 2021) (citing California v. U.S. Dep't of HHS, 941 F.3d 410, 421–23 (9th Cir. 2019)). The "mere possibility" of a permanent injunction is insufficient. Id. Nor is the issue moot where the preliminary relief is likely to be appealed by the government and could be stayed by the Supreme Court. See id. at 1281–84.

## VI.    CONCLUSION

For the foregoing reasons, and those in Plaintiffs' opening brief, Plaintiffs respectfully request that the Court enter the preliminary relief outlined in their motion. Doc. No. 25.

3727396

Respectfully submitted,

GREATER BOSTON LEGAL SERVICES

Dated: November 25, 2025              By:  /s/ Luz Arevalo
                                           Luz Arevalo BBO 564011
                                           larevalo@gbls.org
                                           Angela Divaris (*Admitted Pro Hac Vice*)
                                           adivaris@gbls.org
                                           Gary Klein BBO 560769
                                           gklein@gbls.org
                                           197 Friend Street
                                           Boston, MA 02114
                                           Telephone: (617) 461-4944


                                      KEKER, VAN NEST & PETERS LLP
Dated: November 25, 2025


                                      By:  /s/ Leo L. Lam
                                           Leo L. Lam (*Admitted Pro Hac Vice*)
                                           llam@keker.com
                                           Laurie Carr Mims (*Admitted Pro Hac Vice*)
                                           lmims@keker.com
                                           Sarah Salomon (*Admitted Pro Hac Vice*)
                                           ssalomon@keker.com
                                           Charlotte Kamai (*Admitted Pro Hac Vice*)
                                           ckamai@keker.com
                                           Kelly M. Hernandez (*Admitted Pro Hac Vice*)
                                           khernandez@keker.com
                                           633 Battery Street
                                           San Francisco, CA 94111-1809
                                           Telephone:  (415) 391-5400
                                           Facsimile:  (415) 397-7188


                                      ASIAN LAW CAUCUS


Dated: November 25, 2025         By:  /s/ Joshua Rosenthal
                                      Joshua Rosenthal (*Admitted Pro Hac Vice*)
                                      joshr@asianlawcaucus.org
                                      Dorothy Chang (*Admitted Pro Hac Vice*)
                                      dorothyc@asianlawcaucus.org
                                      55 Columbus Ave
                                      San Francisco, CA 94111
                                      Telephone: (415) 896-1701
                                      Facsimile: (415) 896-1702


                                      *Attorneys for Plaintiffs*

14

CERTIFICATE OF SERVICE

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first-class mail.

/s/ Leo L. Lam
Leo L. Lam

15