# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

COMMUNITY ECONOMIC DEVELOPMENT
CENTER OF SOUTHEASTERN
MASSACHUSETTS *et al.*,

       *Plaintiffs*,

    *v.*

SCOTT BESSENT, in his official capacity as
Acting Commissioner of the Internal Revenue
Service, *et al.*,

       *Defendants*.

No. 1:25-cv-12822-IT

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL EXPEDITED PRODUCTION OF
ADMINISTRATIVE RECORDS**

**INTRODUCTION**

In November 2025, Plaintiffs filed a motion for emergency preliminary relief on their claims that the Social Security Administration (SSA) and Internal Revenue Service (IRS) had unlawfully agreed to share tax information with the Department of Homeland Security (DHS), particularly its sub-agency Immigration and Customs Enforcement (ICE). In January and February 2026, the Court partially agreed that emergency relief was necessary. As to the relationship between IRS and ICE, the Court preliminarily enjoined the implementation of their data-sharing agreement and barred the use of any data that had already been shared. ECF #75 at 42. As to the relationship between SSA and ICE, however, the Court explained that Plaintiffs had failed to make a sufficient showing that the "sharing of tax information between SSA and ICE has or is likely to occur." ECF #72. The Court therefore denied preliminary relief as to the ICE-SSA arrangement. *Id.*

That should have put an end to Plaintiffs' breathless insistence on the need for emergency action. But now, without conferring with Defendants or explaining why an emergency remains, Plaintiffs suddenly seek a different kind of rushed relief: the production of administrative records from three agencies within ten days, without awaiting the resolution of a pending motion to dismiss that could resolve the need to produce some, if not all, of those administrative records.

Simply put, this case is no longer an emergency. Plaintiffs' insistence to the contrary is belied by this Court's settled resolution of the need for emergency relief. Accordingly, the production of any appropriate administrative records should occur in the ordinary course of this litigation going forward, and in all events after the resolution of Defendants' pending motion to dismiss. The Court should deny Plaintiffs' motion.

**ARGUMENT**

**I.    PLAINTIFFS FAILED TO MEET AND CONFER REGARDING THIS MOTION**

As an initial matter, Plaintiffs simply failed to meet and confer with Defendants regarding their motion for the expedited production of administrative records within ten days of an order from this Court.

Local Rule 7.1(a)(2) provides that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."  Plaintiffs purport to satisfy that requirement by "certify[ing] that, on February 5, 2026, counsel for Plaintiffs and counsel for Defendants met and conferred in good faith regarding the resolution of this motion."  ECF #84 at 3; *see also* ECF #86 at 12 (same).  Respectfully, that certification is baseless on its face.  First, Plaintiffs filed their motion over *one month* after the purported meet-and-confer.  Second, the "good faith" effort they describe is based entirely on an email exchange between counsel spanning February 2, 2026, to February 5, 2026, in which no motion to compel expedited production was ever discussed.  *See* ECF #86 at 2 (referring to evidence at ECF #85-1); ECF #85-1 (email exchange between counsel).  On the contrary, the email exchange simply reflects a discussion on whether administrative records should be produced alongside Defendants' motion to dismiss, and ends with Plaintiffs' counsel noting that they would be "happy to discuss a schedule for production further, perhaps … later this month."  ECF #85-1 at 1.  But Plaintiffs never engaged Defendants on that further discussion.  And nothing in the cited email exchange says anything about a motion to compel, much less a motion to compel in an expedited timeframe, much less a motion to compel within 10 days.

Had Plaintiffs met and conferred with Defendants, counsel would have had the opportunity to discuss why expedited production is inappropriate, what kind of time might be needed to

compile an administrative record, and why two of the administrative records sought by Plaintiffs are not appropriate administrative records at all. Instead, Defendants explain below why Plaintiffs' requests are unwarranted and should be denied.

## II.    EXPEDITED PRODUCTION IS UNWARRANTED HERE

Plaintiffs articulate no sound basis on which to require any expedited production in this case. For all their rhetoric, Plaintiffs cite exactly one case from this District in which the court evaluated the circumstances under which expedited production of an administrative record might be appropriate. "To obtain expedited discovery," that court explained, "a party must show good cause." *Roe v. Mayorkas*, No. 22-cv-10808, 2023 WL 3466327, at *18 (D. Mass. May 12, 2023) (citing, *inter alia*, *Momenta Pharms., Inc. v. Teva Pharms. Indus. Ltd.*, 765 F. Supp. 2d 87, 88 (D. Mass. 2011)).[1] "Good cause exists if the request for expedited discovery is reasonable in light of all the surrounding circumstances, including the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity." *Ibid.* (quotation cleaned).

In applying that standard, the Court in *Roe* noted that the plaintiffs had "adequately alleged a risk of serious harm," and that the defendants had been aware for *nearly a year* "that the Court would order production shortly after ruling on the motion to dismiss." *Ibid.* Accordingly, it agreed to order expedited production of the administrative record—but rejected a two-week period as *too* expedited, instead ordering production within 21 days of its order resolving the pending motion to dismiss. *Id.* at 18–19. That cuts against Plaintiffs' motion three times over. First, it reflects that

---

[1] As the *Roe* case reflects, the District of Massachusetts appears to apply the same standard to all motions for expedited production, regardless of whether they concern Rule 26 discovery or the production of administrative records in APA cases.

a ten-day deadline is simply unreasonable, because the *Roe* court rejected even a two-week period in favor of a three-week timeframe. Second, unlike in *Roe*, Defendants in this case have *not* been aware that the Court might imminently require expedited production. Third, and most importantly, the *Roe* court correctly waited until *after* the resolution of the defendants' outstanding motion to dismiss before ordering the production. That, of course, is almost *exactly* what Defendants' counsel suggested to Plaintiffs' counsel in this case. *See* ECF #85-1 at 3 ("we think the focus should be on getting through the motion-to-dismiss stage before proceeding to" the production of administrative records); *ibid.* ("we'd certainly be happy to discuss a schedule for the production of [administrative records] … as soon as the motion to dismiss is resolved").

Awaiting the resolution of Defendants' pending motion to dismiss makes eminent sense here. As that motion explains, Plaintiffs have failed to state a claim against any of the defendants in this case. *See generally* ECF #81–82. And as Defendants' counsel explained to Plaintiffs, the resolution of that motion would obviate the need to produce some, if not all, administrative records altogether, much less on an expedited timeframe. *See* ECF #85-1 at 2. That reflects a high "degree of prematurity" weighing against expedited production in this case. *Roe*, 2023 WL 3466327, at *18.[2]

But more to the point, even if the Court's resolution of Plaintiffs' preliminary-injunction motion were a harbinger of its resolution of Defendants' motion to dismiss, that *still* counsels in favor of resolving the motion to dismiss before proceeding to the production of administrative records. That is because this Court summarily denied—on the merits—Plaintiffs' motion for a

---

[2] Nor should Plaintiffs be heard to complain about any delay in the resolution of the pending motion to dismiss. After all, Plaintiffs themselves waited until after the filing of Defendants' original motion to dismiss before filing their Amended Complaint, *see* ECF #69, 73, and then sought a two-week extension of their deadline to respond to Defendants' new motion to dismiss, *see* ECF #83, 87.

preliminary injunction against SSA or the ICE-SSA data-sharing agreement, explaining that "Plaintiffs have not demonstrated a substantial likelihood of success on the merits" against SSA because "the record is not sufficient to make a finding that sharing of tax information between SSA and ICE has or is likely to occur." ECF #72. Nevertheless, in contradiction of this Court's preliminary-injunction order, Plaintiffs insist that they "are also likely to succeed on their APA claims against SSA" because they "have identified specific instances of data-sharing between SSA and DHS in February and March 2025, with indications that the data contained return information." Br. at 9. But as Defendants' motion-to-dismiss explains, the same fundamental defect identified by the Court at the preliminary-injunction stage continues to persist—not only in the record, but even in the mere allegations of the Amended Complaint itself, which pleads no facts whatsoever reflecting that past data transfers from SSA to ICE actually contained tax information of any kind. *See* ECF #82 at 13–15. Plaintiffs' likelihood of failure weighs heavily against demanding the production of an administrative record from SSA at this stage, much less expedited production thereof.

Next, Plaintiffs' insistence that "the purpose of the discovery sought … supports expedited production" from Defendants cannot persuade. Br. at 6. The reasons Plaintiffs provide all generalize about why the requested administrative records might be relevant to the resolution of this case. *See id.* at 6–8. But Plaintiffs say nothing at all about why *expedited* production is necessary, or about what consequences they might suffer if the Court does not grant them the rushed production they seek.

To that point, the expedited-discovery standard itself makes obvious why "[t]he majority of courts have held … that the fact that there [is] no pending preliminary[-]injunction motion weigh[s] against allowing [a] plaintiff's motion for expedited" production. *Momenta Pharms.*,

765 F. Supp. 2d at *89.  After all, the standards for expedited production and preliminary relief significantly overlap: each relies heavily on such factors as likelihood of success on the merits and the threat of irreparable harm.  *Compare Roe*, 2023 WL 3466327, at *1 (describing expedited-discovery standard) *with Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (describing preliminary-injunction standard).  The absence of a pending motion for emergency relief, in other words, obviates any need for emergency "expedited" production of documentary evidence that might help resolve that motion.  And of course, there is no currently pending motion for preliminary relief against any defendant in this case.

To the contrary, this Court has already enjoined DHS and ICE from engaging in any of the challenged conduct in this case, *see* ECF #75 at 41–42, and another Court has already enjoined Treasury and IRS from engaging in the same, *see id.* at 29–32 (citing *Ctr. for Taxpayer Rights v. IRS*, No. 25-cv-00457, 2025 WL 3251044, at *1–3 (D.D.C. Nov. 21, 2025)).  Accordingly, Plaintiffs have no colorable argument regarding "the ability of the [administrative records] to preclude demonstrated irreparable harm." *Roe v. Mayorkas*, 2023 WL 3466327, at *18.  Plaintiffs' argument that the Court "has already found … irreparable harm" completely misses the point: because all challenged conduct by Treasury, IRS, DHS, and ICE is already enjoined, any remediable irreparable harm has already been cured, leaving no conceivable basis on which to require the rushed production of administrative records.  Any appropriate administrative records can be produced in the ordinary course of this litigation, and in all events after the Court has resolved Defendants' pending motion to dismiss.

III. **IN ANY EVENT, PLAINTIFFS' REQUESTS FOR ADMINISTRATIVE RECORDS FROM IRS AND ICE ARE IMPROPER**

Plaintiffs' request for the expedited production of administrative records suffers from yet another defect: it fails to identify concrete agency action as to IRS or ICE for which either agency

could produce an administrative record.  As to ICE, Plaintiffs seek an administrative record "to shed light on the agency's data requests and its arrangements for storing, disclosing, and using the resulting data."  Br. at 7.  And as to IRS, Plaintiffs seek a "supplement" to the administrative record IRS has already produced, regarding "how and why IRS erroneously disclosed thousands of taxpayers' addresses."  *Id.* at 7–8.  But neither "arrangements for storing, disclosing, and using" data, nor "how and why" IRS made erroneous disclosures, constitutes final agency action for which administrative records could be produced.  The record in this case already contains the IRS-ICE Memorandum and Implementing Agreement, which outline the agencies' agreement on how data would be stored and used.  And the existing IRS administrative record already covers the challenged IRS-ICE data transfer in full, including an accurate reflection of all steps taken by IRS to process ICE's request for information.  Nothing more about IRS's processes regarding any part of the data-transfer would conceivably feature in a "supplement" to the administrative record.  And without more carefully defined agency action as to which Plaintiffs request production, neither IRS nor ICE will be able to produce administrative records regarding that action.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for the expedited production of administrative records.

7

MARCH 17, 2026                    *Respectfully submitted,*

                                 BRETT A. SHUMATE
                                 Assistant Attorney General
                                 Civil Division

                                 ELIZABETH J. SHAPIRO
                                 Deputy Director
                                 Federal Programs Branch

                                 */s/ Cesar Azrak*
                                 CESAR AZRAK
                                 Trial Attorney
                                 United States Department of Justice
                                 Civil Division, Federal Programs Branch
                                 1100 L Street, NW
                                 Washington, DC 20005
                                 Telephone: (202) 538-3491
                                 cesar.e.azrak@usdoj.gov

                                 *Counsel for Defendants*

8

## CERTIFICATE OF SERVICE

I, Cesar Azrak, hereby certify that on March 17, 2026, I electronically filed the foregoing using the Court's CM/ECF system, which automatically serves this document upon all counsel of record, in keeping with Local Rules 5.2 and 5.4.

/s/ Cesar Azrak
CESAR AZRAK

*Counsel for Defendants*