**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| COMMUNITY ECONOMIC DEVELOPMENT CENTER OF SOUTHEASTERN MASSACHUSETTS *et al.*, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> SCOTT BESSENT, in his official capacity as Acting Commissioner of the Internal Revenue Service, *et al.*, <br><br> *Defendants*. | No. 1:25-cv-12822-IT |

**DEFENDANT SOCIAL SECURITY ADMINISTRATION'S SUPPLEMENTAL BRIEF
IN SUPPORT OF MOTION TO DISMISS**

**INTRODUCTION**

This case involves numerous agency defendants and their leaders. But as to the Social Security Administration (SSA) in particular, Plaintiffs' allegations of wrongdoing are thin indeed: simply that, despite the troves of non-tax information in SSA's possession, "[s]ome of the information being shared" by SSA with U.S. Immigration and Customs Enforcement (ICE) "is information that SSA has received from the IRS or from tax filings and therefore is specifically protected by [I.R.C.] § 6103." Am. Compl. ¶ 102. Plaintiffs later repeat that "SSA did not and has not ensured that none of this information came from tax filings." *Id.* ¶ 106. Nowhere, though, do Plaintiffs substantiate this claim with plausibly pled facts or evidence.

SSA's administrative record (AR) confirms that tax information, and therefore § 6103 compliance, was simply unnecessary to SSA's data-sharing with ICE. To be sure, the Court's consideration of SSA's AR would require the Court to convert Defendants' motion to dismiss into one for summary judgment (only as to SSA), then resolve the motion as to that agency. That is the prudent course here. The Court should consider the entire record before it as to SSA, treat the outstanding motion as one for summary judgment as to SSA, and, given Plaintiffs' plain inability to show any § 6103 violation by that agency, dismiss SSA from this case.

**BACKGROUND**

In September 2025, Plaintiffs sued SSA, the Department of Homeland Security (DHS), ICE, the Department of the Treasury, the Internal Revenue Service (IRS), and the top official in charge of each of those agencies, challenging data-sharing arrangements between those agencies pursuant to which SSA and IRS agreed to furnish address information to ICE in aid of ICE's law-enforcement operations. *See generally* Compl. Plaintiffs alleged exactly one problematic feature in those arrangements: that they involved the sharing of federal taxpayer information (FTI) without

1

complying with I.R.C. § 6103. *See generally id.* Roughly one month after filing their Complaint, Plaintiffs sought a preliminary injunction against the data-sharing arrangements and against the use of any data that had theretofore been shared with ICE. *See* ECF #27. The Court granted the preliminary injunction as to ICE's arrangement with IRS, *see* ECF #75, but denied the motion as to ICE's arrangement with SSA, noting that the record was "not sufficient to make a finding that sharing of tax information between SSA and ICE has or is likely to occur," given the existence of "other non-tax information held by SSA" available to satisfy ICE's requests, ECF #72.

After Plaintiffs filed their Amended Complaint, ECF #73, Defendants moved to dismiss for lack of jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively, *see* ECF #81. At the same time, Plaintiffs moved to compel the expedited production of administrative records from ICE, IRS, and SSA. ECF #84. After hearing argument on both motions, *see* ECF #99, the Court denied Defendants' motion to dismiss to the extent it made jurisdictional arguments under Rule 12(b)(1), took Defendants' motion on Rule 12(b)(6) grounds under advisement, denied Plaintiffs' motion to compel as to ICE and IRS, and granted Plaintiffs' motion as to SSA, *see* 5/8/26 Hr'g Tr. at 17:7–8, 22:7–13, 48:13–14; *see also* ECF #100. The Court also ordered SSA to "identify any portions of the AR relevant to" the pending motion to dismiss "in a supplemental filing … filed no later than June 5, 2026." ECF #100 at 2.

On May 29, 2026, SSA timely filed its AR for this case. *See* ECF #103.

## STANDARD

"If, on a motion under Rule 12(b)(6) … matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "Based upon this rule … the decision to convert a motion to dismiss

2

to a motion for summary judgment is well within the purview of the district court's authority" so long as the non-movant has "reasonable notice that a conversion might occur," *Calderón-Amézquita v. Rivera-Cruz*, 156 F.4th 54, 67 (1st Cir. 2025), and all parties have "a reasonable opportunity to present all the material that is pertinent to the motion," Fed. R. Civ. P. 12(d).

## ARGUMENT

As part of the Court's deliberation on Defendants' pending motion to dismiss, the Court invited SSA to present "any portions of the [SSA] AR" for the Court's consideration.  ECF #100 at 2.  In contrast to the IRS AR relevant to this case, the SSA AR has not been incorporated by reference into Plaintiffs' Amended Complaint.  Accordingly, because the SSA AR is "outside the pleadings," the Court must, if it considers the SSA AR in rendering its decision, treat Defendants' pending motion "as one for summary judgment" as applied to SSA.[1]  Fed. R. Civ. P. 12(d).  And on the basis of the record now before the Court, the Court should enter summary judgment in SSA's favor.

At the preliminary-injunction stage, SSA provided the Court with a declaration explaining that its efforts to provide ICE with address information did not require producing any FTI in SSA's possession.  *See* ECF #39-2 (Myers Decl.).  Instead, any data shared with ICE would be sourced from four SSA systems of records: Master Files of Social Security Number (SSN) Holders and SSN Applications, at System of Records Notice (SORN) No. 60-0058; Master Beneficiary Record, at SORN No. 60-0090; Supplemental Security Income Record and Special Veterans Benefits, at SORN No. 60-0103; and Digital Identity File Record System, at SORN No. 60-0373.  Myers Decl. ¶ 5.  Of those systems, "No. 60-0058 contains no federal tax information and the [other three]

---

[1] By contrast, the Court need not treat Defendants' motion to dismiss as to Treasury, IRS, DHS, ICE, or the leaders of those agencies as a motion for summary judgment, because the resolution of the motion as to those defendants does not depend on materials outside the pleadings.

contain primarily non-federal tax information." *Id.* ¶ 6. "To the extent these [systems] contain limited federal tax information, none of the [shared] data … would be coming from data fields containing [such] information." *Ibid.* And SSA's data-sharing arrangement with ICE did not involve "disclos[ing] any records from SSA's Earnings Recording and Self-Employment Income System …, No. 60-0059, which is SSA's primary system for maintenance of tax information." *Id.* ¶ 7; *see also* ECF #51-1 (Peltier Decl.) ¶¶ 7–8 ("SSA authorized and only plans to release to ICE mailing address data from [systems] No[s]. 60-0090 and 60-0103," in which "[t]he address fields … contain no tax information").

The AR SSA has produced in this case confirms what the Myers and Peltier declarations explained months ago—specifically, that FTI was not involved in SSA's transfers of data to ICE.

The relevant inter-agency dialogue began on February 11, 2025, when ICE engaged SSA on the possibility of ICE sharing known SSN information for removable aliens with SSA, at which point SSA would respond with personally identifiable information in its possession to aid ICE in its law-enforcement efforts. SSA AR at 7–8. ICE specifically indicated that it had already compiled "an encrypted excel sheet with" roughly 98,000 entries for SSA to "run." *Id.* at 7. As the agencies discussed how best to proceed, SSA suggested that it might share certain "data elements" depending on whether the removable alien had obtained authorization to work in the United States. *Id.* at 2. If the alien were authorized to work, SSA suggested it would share the alien's name, date of birth, place of birth, and address. *Ibid.* If the alien were not authorized to work, SSA suggested it would provide the same four data elements plus the employer's name and address, along with the amount of earnings. *Ibid.* The employer and earnings information, if shared, would possibly come from tax information—namely, "wage reports that SSA processes on behalf of the [IRS] in the annual wage reporting process." *Ibid.* Whereas the statutory authority

4

for the potential transfer of data for work-authorized aliens was located at 8 U.S.C. § 1360(b), the authority for the potential disclosure of additional types of data for non-work-authorized aliens was located at 8 U.S.C. § 1360(c). *Ibid.* On February 22, 2025, the Acting SSA Commissioner approved ICE's use of SSA data "for all Law Enforcement purposes, consistent with applicable law." *Id.* at 86.

On February 23, 2025, ICE broadened its request for information, explaining that it possessed "a list of approximately 700 thousand criminal illegal aliens who have standing deportation orders" and asking SSA to share various kinds of data in response. *Id.* at 87, 94. Shortly thereafter, the Acting SSA Commissioner again responded to the request with his approval. *Id.* at 87.

Meanwhile, in a separate email thread internal to SSA, an SSA officer coordinated with both the Acting Commissioner and the SSA Office of the General Counsel (OGC) regarding how to obtain the requested data. *Id.* at 92–94. In the morning of February 24, 2025—the day after SSA received the broadened request—the SSA officer wrote: "I confirmed … that DHS is working directly with IRS to get FTI, so none is needed here. Can you confirm there are no outstanding concerns with … sharing with DHS all the data [requested] *except* for FTI?" *Id.* at 92 (emphasis added). The officer also noted that this approach would "satisfy both requests from ICE." *Ibid.* ("Very efficient," the officer observed. *Ibid.*) By that time, no data had yet been transmitted to ICE. *See id.* at 88 (ICE follow-up email to SSA on afternoon of February 24, 2025, asking whether SSA had been "able to have someone retrieve the data"). And in response to the SSA officer's question, SSA OGC promptly approved of the approach by which SSA would provide ICE with the requested data "*except* for FTI." *Id.* at 92 (emphasis added).

The SSA AR reflects, then, that for both the original data request, *see id.* at 7, and the expanded request, *see id.* at 94, SSA would provide ICE only with information *other than* FTI, with the understanding that any tax information sought by ICE would come instead from IRS. *Ibid.* (Indeed, this is confirmed by the allegations at the heart of the rest of this lawsuit—namely, that ICE *did* turn to IRS to obtain FTI.)  And after SSA had already conducted the two instances of data-sharing challenged in this case, the agency memorialized the authority on which it relied in two places: a memorandum approved by the Acting Commissioner, *id.* at 97–102, and the August 2025 Letter, *id.* at 103–04.  Each document discusses the authorities that were, and would be, invoked to effect the challenged transfers.  Consistent with SSA's approach by which it would share data "except for FTI," neither document contemplates that SSA would share FTI with DHS at all.  And notably, neither document reflects SSA's past, present, or future assertion of authority under 8 U.S.C. § 1360(c) to conduct the challenged transfers.  Recall that § 1360(c) is the provision SSA had suggested it *might* invoke to share tax information for aliens not authorized to work in the United States, *see* SSA AR at 2, before SSA determined, after all, that it would leave the disclosure of any FTI to IRS, *id.* at 92; *see also* ECF #82 at 13–14 (SSA "needed not invoke any exception to § 6103 because all SSA information would be shared from non-tax sources").

At bottom, the question for the Court is simple: whether Plaintiffs are correct that "[s]ome of the information being shared is information that SSA has received from the IRS or from tax filings and is therefore specifically protected by § 6103." Am. Compl. ¶ 102.  Plaintiffs have cited no evidence to support that conclusory allegation.  The SSA AR, by contrast, is clear that SSA first considered sharing FTI, then affirmatively decided against it, and relied only on authorities irrelevant to tax information to conduct its data-sharing of non-tax information.  Plaintiffs' effort to impugn SSA's conduct on § 6103 grounds has simply no leg left to stand on.

6

## CONCLUSION

For the foregoing reasons, the Court should dismiss Defendant SSA from this case.


JUNE 5, 2026                                     *Respectfully submitted,*

                                               BRETT A. SHUMATE
                                               Assistant Attorney General
                                               Civil Division

                                               ELIZABETH J. SHAPIRO
                                               Deputy Director
                                               Federal Programs Branch

                                               */s/ Cesar Azrak*
                                               CESAR AZRAK
                                               Trial Attorney
                                               United States Department of Justice
                                               Civil Division, Federal Programs Branch
                                               1100 L Street, NW
                                               Washington, DC 20005
                                               Telephone: (202) 305-0693
                                               Email: cesar.e.azrak@usdoj.gov

                                               *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I, Cesar Azrak, hereby certify that on June 5, 2026, I electronically filed the foregoing

using the Court's CM/ECF system, which automatically serves this document upon all counsel of

record, in keeping with Local Rules 5.2 and 5.4.


/s/ Cesar Azrak
CESAR AZRAK

*Counsel for Defendants*

8