# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMUNITY ECONOMIC DEVELOPMENT CENTER OF SOUTHEASTERN MASSACHUSETTS, NATIONAL PARENTS UNION, NATIONAL KOREAN AMERICAN SERVICE AND EDUCATION CONSORTIUM, & UNDOCUBLACK NETWORK,<br><br>            Plaintiffs,<br><br>    v.<br><br>SCOTT BESSENT, Acting Commissioner of the Internal Revenue Service and Secretary of the Treasury; DEPARTMENT OF THE TREASURY; INTERNAL REVENUE SERVICE; FRANK BISIGNANO, Commissioner of the Social Security Administration; SOCIAL SECURITY ADMINISTRATION; MARKWAYNE MULLIN, Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>            Defendants. | Civil Action No. 1:25-cv-12822-IT |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL FILING AND MOTION TO COMPLETE OR SUPPLEMENT ADMINISTRATIVE RECORD

6222317

## I.    Introduction

The Court's May 11, 2026 Order directed SSA to file "the complete AR underlying the actions and decisions challenged in this case" and required Defendants to identify the "portions of the AR relevant to the Motion to Dismiss." Doc. No. 100. Defendants' supplemental filing does not support granting either Defendants' original motion to dismiss or Defendants' newly requested motion for summary judgment. Doc. Nos. 82, 107. The administrative record ("AR") is also deficient, consisting of only approximately 21 pages of agency correspondence, Doc. No. 103-1 at 1–9, 86–98, and 14 pages of relevant policies, id. at 99–113. The record is riddled with glaring omissions that preclude the meaningful judicial review required under the Administrative Procedure Act ("APA"). The Court should require the SSA to complete, or in the alternative, supplement the AR.

## II.    It is premature to decide Defendants' motion as one for summary judgment.

Though Defendants ask the Court to convert their motion to dismiss into one for summary judgment, that request is premature for at least two reasons. *First*, the Court needs the full AR to address the merits of Plaintiffs' APA claims, but the record is currently incomplete. Infra Part V. "[A] court should not be required to guess at whether or not it has the complete administrative record," and where the complete, certified record has not been filed, the court cannot assess the merits of an APA claim. See Atieh v. Riordan, 727 F.3d 73, 77 (1st Cir. 2013).[1] That is exactly the case here. *Second*, the government may not seek summary judgment as to Plaintiffs' non-APA claims, which are plausibly alleged under Rule 12(b)(6). The government's assertion that this Court should grant summary judgment as to the SSA entirely

---

[1] All internal quotes and citations have been omitted unless otherwise noted.

6222317

ignores the non-APA claims against the agency, which—as the government did not contest at oral argument—are still subject to the motion to dismiss standard. See, e.g., Transcript at 25.

**III.    The Court should deny Defendants' motion on Plaintiffs' contrary-to-law claim.**

The government's filing confirms that this Court should deny Defendants' motion as to Plaintiffs' claim that the SSA-ICE transfers are contrary to § 6103, whether construed as a motion to dismiss or a motion for summary judgment.

*First*, the AR—even in its incomplete state—does not support the government's argument regarding Plaintiffs' contrary-to-law APA claim. As a preliminary matter, it is unclear whether the data sources identified in the AR as the source of SSA's data sharing are the same as those identified by Defendants in their prior declarations. Defendants previously attested to this Court that the sources of SSA data for ICE requests were the Master Files of Social Security Number ("SSN") Holders and SSN Applications (SORN 60-0058), Master Beneficiary Record (SORN 60-0090), Supplemental Security Income Record and Special Veteran Benefits (SORN 60-103), and Digital Identity File Record System (SORN 60-0373). Doc. No. 39-2. Defendants acknowledged that SORNs 60-0058 and 60-0373 have address information from tax filings but pledged to implement a "technical connection" that would prevent the sharing of this protected data. Doc. No. 51-1. The AR affirms that the Master Beneficiary Record is one source of SSA data sharing, but it also names the Numident, the Integrated Client Database, and the Supplemental Security Record, Doc. No. 103-1 at 93, without any explanation as to the relationship between these databases and the systems of records identified to this Court in December. And, the Integrated Client Database contains information from SORN 60-0058,[2] a

---

[2] Privacy Program: A Central Source for Information About SSA's Privacy Compliance Program, Social Security Administration (Sept. 28, 2007), https://www.ssa.gov/privacy/pia/Integrated%20Client%20Data%20Base%20System.updtd%20Sept%2028.htm?utm.

source that SSA acknowledged in December to contain Federal Tax Information ("FTI"), yet the only indication that the agency would not share FTI is from the suggestion of an unnamed employee. Id. at 92. There is nothing in the AR reflecting that SSA actually prevented FTI from being transmitted, let alone how it did so.

*Second*, this Court need not accept SSA's conclusory statements in the AR as true. The email from an unnamed SSA employee seeking approval to disclose non-FTI information—and counsel's approval of that disclosure—fails to establish that SSA actually refrained from disclosing FTI, whether on February 28, Doc. No. 103-1 at 93–94, or on March 3, id. at 96. The evidentiary vacuum is especially striking where there is not a single indication that SSA took *any* measures to prevent the disclosure of FTI as part of this data transfer, besides one unnamed employee's say-so. And because SSA chose to obscure the redacted SSA employee's identity, there is no way to affirm the basis of their knowledge or assumption. This single statement alone is insufficient to confirm there was no tax information in the disclosures. See, e.g., Perez v. Volvo Corp., 247 F.3d 303, 316 (1st Cir. 2001) ("Statements predicated upon undefined discussions with unnamed persons at unspecified times are simply too amorphous to satisfy the requirements of Rule 56(e).").

Moreover, SSA's declarations and purported compliance with the law should be treated with caution. In recent months, the agency made blatant misstatements to another federal court,[3] and it declared that it could not track its own data, it did not know who could access protected data, and it stored private data unsecured on the cloud.[4] The agency also made misleading

---

[3] Notice of Corrections to the Record at 1–3, AFSCME v. Soc. Sec. Admin., No. 1:25-cv-00596, (D. Md. Jan. 16, 2026), ECF No. 197.

[4] Id. at 1–3.

representations in the parallel FOIA action before this Court,[5] where at least through August 11, 2025, SSA represented that there were no "agreements reached during or after February 2025 between [SSA] and Immigration and Customs Enforcement [ICE] (or Department of Homeland Security on behalf of [ICE])," Doc. No. 1-3, yet the AR confirms these agreements existed in February 2025, Doc. No. 103-1 at 86. Indeed, even where Defendants recognized that § 6103 applies and have agreed to comply with their legal obligations, they *still* have violated the statute. See Doc. No. 79-1 (Romo Declaration).[6]

Here, where SSA filed an incomplete AR that fails to explain any basis for its reasoning that its disclosures did not contain tax information, this Court should decline to take the agency's representations at face value.

**IV.    The Court should deny Defendants' motion as to Plaintiffs' remaining claims.**

The government's most recent filing entirely ignores all of Plaintiffs' claims apart from the § 6103 claim, and the arguments from its motion to dismiss remain unconvincing. See Doc. Nos. 82, 107.

*First*, the AR supports the claim that the SSA's data-sharing arrangements with ICE and DHS are arbitrary and capricious and should be set aside as unlawful under the APA. For example, on March 3 the SSA shared the names and address history of nearly 1,000 immigrants who received Title II benefits—a dramatic departure from agency policy that was neither

---

[5] Cmty. Econ. Dev. Ctr. v. I.R.S., No. 25-cv-11949-IT (D. Mass., Aug. 18, 2025).

[6] Of note, this week the plaintiffs-appellees in Ctr. for Taxpayer Rights v. IRS, No. 26-05006 (D.C. Cir. June 9, 2026), filed a Letter Pursuant to FRAP 28(j) to notify the court of a report issued by the Treasury Inspector General for Tax Administration: *The IRS Provided Addresses for Nearly 47,000 Persons to Immigration and Customs Enforcement, Evaluation No. IE25-037*. Doc. No. 2177706 (ECF No. 2177706). This official report found that the IRS processes used in its data-sharing arrangements with ICE were "unable to identify and match the records accurately and consistently," and the Inspector General shared related concerns with the IRS as early as November 2025—long before the hearing on preliminary relief in this case. Id. Attachment A at 7.

4

6222317

"reasonable [nor] reasonably explained." F.C.C. v. Prometheus Radio Project, 592 U.S. 414, 423 (2021); Doc. No. 103-1 at 96. Indeed, not only was there *no* explanation for the SSA's decision to do so, but there is also nothing in the AR to suggest that Defendants considered the lawfulness of the sharing, which databases the information came from, how the data would be secured and protected upon transfer and receipt, or what the impact would be on the SSA programs or immigrants whose data was shared. See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (agency action is arbitrary and capricious where agency "entirely failed to consider" many "important aspect[s] of the problem"). Instead, the AR shows the SSA acted hastily on both the March 3 and February 28, 2025 disclosures, rather than carefully weighing its decision-making as required by law. See Doc. No. 103-1 at 86–91. The then-Acting SSA Commissioner simply granted "permission[] to use SSA data . . . for all Law Enforcement purposes" and stated that a "formal agreement memorializing the outcomes and transfer" would be put "in place . . . at a later date." Id. at 86. But "impermissible *post hoc* rationalizations" for these decisions cannot fill in the gaps in decision-making at the time, Biden v. Texas, 597 U.S. 785, 810 (2022), and it is wholly unprecedented for a *post hoc* agreement to justify the release of sensitive data by the SSA. Moreover, it remains unclear whether such releases are ongoing. Such after-the-fact authorization underscores the arbitrary and capricious nature of SSA's actions.

*Second*, Plaintiffs' non-APA claims are plausibly alleged under Rule 12(b)(6). Each claim survives based on the pleadings alone, as outlined in Plaintiffs' Opposition brief, Doc. No. 90, and at oral argument. And the AR lends additional support to the *Accardi* doctrine claim because it shows the SSA violated its own confidentiality policies, see 20 C.F.R. § 401.105(a)–

(b), especially as to the March 3 disclosure,[7] see Rotinsulu v. Mukasey, 515 F.3d 68, 72 (1st Cir. 2008). The Court should deny the motion as to every claim.

## V.     The administrative record should be completed or supplemented.

While the AR does not support the government's argument as to Plaintiffs' claims, it also remains inadequate for the meaningful judicial review of this case. For that reason, Plaintiffs respectfully request that the Court order completion and supplementation of the AR.

Courts may mandate additions to an inadequate AR initially produced by an agency on several bases. First, a court may order an agency to ***complete*** the AR if the agency omitted materials that were considered in the decision-making process. See Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n, 345 F. Supp. 3d 1, 7 (D.D.C. 2018); New York v. McMahon, No. 25-10601, 2026 WL 622484, at *3 (D. Mass. Feb. 11, 2026) (same). The agency should be required to complete the record where the plaintiff provides "reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record." McMahon, 2026 WL 622484, at *3. Second, a court may order an agency to ***supplement*** the AR, including "to facilitate [the court's] comprehension of the record or the agency's decision" such as "when [the court is] faced with a failure to explain administrative action as to frustrate effective judicial review." Housatonic River Initiative v. E.P.A., 75 F.4th 248, 279 (1st Cir. 2023).

Completion of the record is warranted here. But even if the Court were to conclude that the record is sufficiently "complete," for current purposes, supplementation is independently warranted because the AR is riddled with gaps, including the absence of evidence demonstrating

---

[7] The government is wrong that the SSA's AR is not incorporated by reference into the Amended Complaint. At any rate, Plaintiffs' non-APA claims are plausibly alleged, and should this Court find otherwise, Plaintiffs would respectfully seek leave to amend these claims to include the information in the AR.

whether SSA disclosed tax information and the omission of materials that appear to have informed the agency's decision-making process.

*First*, records concerning what the SSA disclosed to ICE are missing from the AR, making it impossible for the Court or Plaintiffs to determine whether the SSA disclosed any tax information protected under 26 U.S.C. § 6103. In fact, the AR does not contain *any* spreadsheets or records for the underlying disclosed data. For example, the AR omits a document titled "Matches.xlsx" despite being attached to a parent email SSA included in the AR. Doc. No. 103-1 at 96. The SSA also included emails discussing the February transfer in the AR, id. at 86–95, with no documentation of what data was transferred, or if it was the same data as what the SSA transferred on March 3. The absence of the underlying data files is significant because SSA personnel sought assurances that no FTI was "needed here," raising the question of whether any FTI was in fact included in the disclosed data. Id. at 92. The SSA should not be allowed to withhold the spreadsheets and data fields themselves, preventing Plaintiffs and the Court from determining what information was disclosed, where it came from, what the identifying columns were, and whether FTI was involved.

*Second*, the AR is devoid of any documents reflecting discussions regarding SSA data storage or data transfer. In an email thread concerning ICE's initial 98,000-person data request, the SSA Associate Commissioner stated that, if ICE "agree[s] with receiving the data we have outlined here, the next step will be for SSA to facilitate technical discussions so we may begin determining the potential cost and how the agency can build the file." Id. at 3. Yet, documents concerning those "technical discussions" that SSA itself identified as necessary before data could be transferred are absent from the AR. See id. In the same email thread, an SSA employee notes that they would "float a memo to see if [SSA] need[s] to charge" ICE for the requested data. Id.

7

6222317

at 1–2. Yet, the AR contains no memo or other documentation in the AR of consideration or resolution of that issue. The then-Acting SSA Commissioner approved a data transfer and noted the SSA would "work to put in place the formal agreement memorializing the outcomes and transfer at a later date." Id. at 86. And while the August 27, 2025 SSA-ICE agreement is part of the AR, id. at 103–104, the correspondence and "work to put in place" this agreement are entirely missing, id. at 86. These omissions are particularly concerning because the AR likewise contains little to no discussion of the safeguards that SSA implemented before transmitting sensitive personal information to ICE. Similarly, and critically, there are no analyses as to whether the identified databases—the "Numident, Person Information (aka Integrated Client Database), Master Beneficiary Record, and Supplemental Security Record database[s]"—contain any FTI. Id. at 93.

*Third*, the AR omits correspondence between SSA and ICE or DOGE, which is highly relevant to the data sharing arrangements at issue in this case. For example, in an email thread regarding the 700,000-person disclosure with the email subject, "DOGE ICE Info Sharing request," see id. at 92–94, the SSA General Counsel refers to correspondence not included in the AR. She states, "[c]an you please touch base with [redacted] since is [sic] working directly with ICE on our agreement. He and his team are actively working on this . . . I want to make sure we're all coordinating so there is no duplication of effort or confusion." Id. at 92. Beyond this reference, there is no other correspondence with DOGE, no explanation of DOGE's role in the data sharing arrangements, no discussion of how to protect § 6103 data from DOGE's sharing, and no analysis of whether DOGE could properly protect this confidential information.[8] See id. at 92–94.

---

[8] This, too, is particularly concerning given SSA's previous admissions about data confidentiality issues with transfers to DOGE, Notice of Corrections to the Record at 1-3, AFSCME v. Soc. Sec.

6222317

*Finally*, the AR is replete with unnecessary redactions, including the names and emails for nearly every SSA employee involved in the agency action. This is inconsistent with the AR produced by the government for the IRS, Doc. No. 28-1, which contained limited redactions of names and email addresses as "PII" (personal identifying information), and provided reasons for the redactions, id. at 5. Redactions of PII from the AR are proper only where the information was not considered by the agency during the challenged actions, and the "desire to protect the confidentiality of witnesses" is not an appropriate reason to redact this information if it "compromises th[e] Court's ability to adequately review the administrative record," including where there is no "agreement from the parties" on the matter. Borowski v. U.S. Customs & Border Prot., 771 F. Supp. 3d 223, 240 (W.D.N.Y. 2025) (citing Int'l Longshoremen's Ass'n, AFL-CIO v. Nat'l Mediation Bd., 2006 WL 197461, at *4 n.4 (D.D.C. Jan. 25, 2006)). Here, not only did Defendants fail to provide any reason for their redactions, but the redactions themselves are also inappropriate. To "adequately review" the AR, this Court and Plaintiffs need to know, for example, *who* chose the underlying four databases as the sources for data provided to ICE. Id. at 93. Knowing who made this decision would allow Plaintiffs and this Court to assess whether there was a reasoned basis for the decision, the individual's familiarity with the databases, whether they knew these sources may contain tax information, how that information was protected, and how the data was ultimately shared.[9]

---

Admin., No. 1:25-cv-00596 (D. Md. Jan. 16, 2026) ECF No. 197, and a recent whistleblower complaint regarding SSA and DOGE sharing of immigrant information, *infra* n.13.

[9] This is particularly urgent in light of a recent whistleblower report that SSA worked with DHS to manipulate the Numident database—the same database at issue in this case—to remove immigrants' information and "lead to the deportation of 2.7 million people." Bracken, Matt, Democrats push SSA on reported DOGE plan to 'kill off' living individuals in database, FedScoop (June 8, 2026), https://fedscoop.com/social-security-whistleblower-doge-death-master-file/.

This information and these categories of documents go to the heart of Plaintiffs' claims, and these omissions cast serious doubt on the completeness of the AR. Even if the Court accepts SSA's assertion that the AR is "true, correct, and complete," id. at 1, supplementation is nonetheless warranted because the AR, as initially produced, is insufficient to permit effective judicial review. Accordingly, the Court should order the SSA to complete, or in the alternative, supplement the record by producing all materials considered by the agency in reaching its decision.[10] See e.g., McMahon, 2026 WL 622484, at *6 (granting supplementation of the AR to where plaintiffs pointed to several documents "that, if produced, would address the gaps in the record and help the court review the reasoning behind the agency's decision.").

## VI.    Conclusion

For those reasons, the Court should require the SSA to complete the AR, or in the alternative to supplement the AR. The Court should also deny Defendants' motion to dismiss and proposed motion for summary judgment.

---

[10] Plaintiffs reserve the right to seek extra-record discovery requests. Consistent with Dep't of Commerce v. New York, Plaintiffs request that this Court first order the Defendants to complete and supplement the AR and, once any such production has been made, Plaintiffs may move for extra-record discovery. See 588 U.S. 752, 782 (2019).

6222317

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated: June 12, 2026

By:  */s/ Sarah Salomon*
Leo L. Lam (*Admitted Pro Hac Vice*)
llam@keker.com
Laurie Carr Mims (*Admitted Pro Hac Vice*)
lmims@keker.com
Sarah Salomon (*Admitted Pro Hac Vice*)
ssalomon@keker.com
Charlotte Kamai (*Admitted Pro Hac Vice*)
ckamai@keker.com
Kelly M. Hernandez (*Admitted Pro Hac Vice*)
khernandez@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

ASIAN LAW CAUCUS
Joshua Rosenthal (*Admitted Pro Hac Vice*)
joshr@asianlawcaucus.org
Dorothy Chang (*Admitted Pro Hac Vice*)
dorothyc@asianlawcaucus.org
55 Columbus Avenue
San Francisco, CA 94111
Telephone: (415) 896-1701
Facsimile: (415) 896-1702

GREATER BOSTON LEGAL SERVICES
Luz Arevalo BBO 564011
larevalo@gbls.org
Angela Divaris (*Admitted Pro Hac Vice*)
adivaris@gbls.org
Gary Klein BBO 560769
gklein@gbls.org
197 Friend Street
Boston, MA 02114
Telephone: (617) 461-4944

*Attorneys for Plaintiffs*

11

6222317

**CERTIFICATE OF SERVICE**

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail.


Dated:  June 12, 2026                                   /s/ Sarah Salomon
                                                                     SARAH SALOMON


12

6222317