**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

COMMUNITY ECONOMIC DEVELOPMENT
CENTER OF SOUTHEASTERN
MASSACHUSETTS *et al.*,

       *Plaintiffs*,

      *v.*

SCOTT BESSENT, in his official capacity as
Acting Commissioner of the Internal Revenue
Service, *et al.*,

      *Defendants*.

No. 1:25-cv-12822-IT

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL COMPLETION OR SUPPLEMENTATION OF
SOCIAL SECURITY ADMINISTRATION'S ADMINISTRATIVE RECORD**

**INTRODUCTION**

From the start, Plaintiffs' allegations against the Social Security Administration (SSA) have been paper-thin.  Other than the threadbare allegation that "[s]ome of the information being shared" by SSA with U.S. Immigration and Customs Enforcement (ICE) "is information that SSA has received from the IRS or from tax filings," Plaintiffs have provided nothing to substantiate that hunch.  Am. Compl. ¶ 102.  Even pleading supporting facts has proved too tall a task.

Faced with an administrative record (AR) that belies their Complaint, Plaintiffs heave a Hail Mary pass: an apparent motion to compel the completion or supplementation of the AR.  They assume the AR must be incomplete, because it does not support their conjecture.  They insist that the AR be supplemented with various irrelevant materials, which they baselessly claim are necessary for the Court to rule.  And for the second time, despite having been warned before, they flout this Court's rules rather than engage with their opposing counsel on the materials they say they need produced.

Simply for violating the rules (yet again), the Court should deny their motion.  But in any event, supplementation of an administrative record is a rare exception, not the rule.  And none of the materials they seek has anything to do with the issue being litigated in this case: whether SSA chose to use tax information to satisfy ICE's requests for addresses.  The Court should reject Plaintiffs' pleas for additional materials and finally dismiss SSA from this case.

**ARGUMENT**

I.    **PLAINTIFFS FAIL, FOR THE SECOND TIME, TO MEET AND CONFER WITH DEFENDANTS REGARDING THEIR MOTION**

This is now the second time that Plaintiffs have flouted this Court's meet-and-confer rules governing motion practice.  The first time, Plaintiffs certified that they met and conferred with Defendants' counsel prior to filing their motion to compel expedited production of ARs, despite

1

not having actually done so. *See* ECF #84 at 3 (citing email exchange one month earlier having nothing to do with motion for expedited production). Defendants highlighted the point in their response brief, explaining that Plaintiffs' meet-and-confer certification did not accurately reflect discussions between counsel. *See* ECF #88 at 2. Apparently undeterred, and despite having been reminded of the rule, Plaintiffs have now again violated this Court's rules.

As the Court knows, Local Rule 7.1(a)(2) provides that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." But here, Plaintiffs have buried a motion to compel completion or supplementation of the SSA AR in their court-ordered "supplemental filing" purporting to "identify any portions of the AR relevant to" the pending motion to dismiss. ECF #100 at 2. They never attempted to meet and confer with Defendants about the motion. It contains no certification that Plaintiffs "attempted in good faith to resolve or narrow the issue." L.R. 7.1(a)(2). And indeed, the "motion" does not even appear as such on the Court's docket. *See generally* ECF #108 ("Response by [Plaintiffs] to … Memorandum in Support of Motion, … Notice (Other)"). Simply put, that is not how motion practice works in this District. On the basis of that (repeated) procedural violation alone, the Court should deny Plaintiffs' "motion."

## II.    THE SSA AR NEEDS NEITHER COMPLETION NOR SUPPLEMENTATION

On the merits, Plaintiff's motion also fails. They articulate no sound basis on which to require completion of the SSA AR, because they have neither specifically identified purportedly missing but relevant documents, nor overcome the presumption of regularity that attaches to SSA's compilation of the record. Nor is the supplementation they seek appropriate, because none of the additional materials they raise is relevant to the resolution of this case.

### A.      Plaintiffs Fail to Demonstrate That the SSA AR Is Incomplete

As an initial matter, Plaintiffs make no more than a cursory suggestion that the Court order SSA to complete its AR.  *See* ECF #108 at 6, 10.  Other than their conclusory statement that certain "omissions cast serious doubt on the completeness of the AR," Plaintiffs offer nothing to support their motion for completion.  *Id.* at 10.  The Court should deny such relief for that reason alone— not to mention the especially high bar required of a movant for that relief.  After all, "'[t]he designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity.'"  *Diaz-Valdez v. Garland*, 122 F.4th 436, 441 n.3 (1st Cir. 2024) (quoting *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019)).  "This means that the court must assume the agency properly designated the Administrative Record absent clear evidence to the contrary."  *New York v. McMahon*, No. 25-cv-10601, 2026 WL 622484, at *2 (D. Mass. Feb. 11, 2026) (quotation cleaned).  That "clear evidence" standard requires the movant to "do more than simply allege that the record is incomplete": they must "identify the pertinent omitted materials with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are likely to exist as a result of other documents that are included in the administrative record."  *Roe v. Mayorkas*, No. 22-cv-10808, 2024 WL 5198705, at *7 (D. Mass. Oct. 2, 2024) (quotation cleaned).   Once the movant has specifically identified those documents, courts must examine "factors such as (1) when the documents were presented to the agency; (2) to whom; and (3) under what context."  *McMahon*, 2026 WL 622484, at *3.  And of course, the materials must have been actually "directly or indirectly considered by the agency decision-makers" to be rightfully a part of the AR in the first place.  *Id.* at 2.

But here, Plaintiffs identify no specifically missing documents relevant to the adjudication of the agency action challenged in this case. The address lists themselves have little to do with the

issue before the Court—namely, whether SSA pulled those addresses from tax or non-tax sources in its possession. Instead, the SSA has certified that the record before the Court contains the materials—*i.e.*, the incoming requests; the approvals; the relevant law and policy; implementing memoranda detailing the applicable authorities; the August 27, 2025, SSA Letter; and communications reflecting implementation—considered by the agency in its effort to compile addresses for ICE. *See* ECF #103-1 at 1 ("certify[ing] … that the … Administrative Record is true, correct, and complete of the documents that were directly or indirectly considered in connection with SSA's decision to provide records to" ICE). Those materials reflect that SSA did not, in fact, use tax information to satisfy ICE's data requests. And Plaintiffs point to no evidence suggesting that SSA is withholding documents that it considered when compiling the requested address information. *Cf. Sierra Club v. U.S. Army Corps of Eng'rs.*, No. 2:20-cv-00396, 2023 WL 4350730, at *2 (D. Me. July 5, 2023) (movant must "identify reasonable … grounds" for "belief that [certain] documents were considered … [but] not included in the record"). Accordingly, Plaintiffs have not substantiated their claim that the AR is incomplete, and their motion to compel should be denied.

**B.      Plaintiffs' Requested Supplementations Are Neither Relevant Nor Necessary to Resolve This Case**

An order requiring supplementation of the AR is likewise unwarranted in this case. It is black-letter law that on an APA claim, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Housatonic River Initiative v. EPA*, 75 F.4th 248, 278 (1st Cir. 2023). "Supplementation on judicial review 'is therefore the exception, not the rule, and is discretionary with the reviewing court.'" *Seafreeze Shoreside, Inc. v. U.S. Dep't of Interior*, No. 1:22-cv-11091, 2023 WL 6218159, at *10 (D. Mass. Sept. 25, 2023) (Talwani, J.) (quoting *Town of Winthrop v. FAA*, 535

4

F.3d 1, 14 (1st Cir. 2008)).  More specifically, "[t]he First Circuit has established only two limited exceptions to the rule against supplementation."  *Ibid.*  First, "supplementation is permissible where there is a strong showing of bad faith or improper behavior by the agency."  *Housatonic River*, 75 F.4th at 278 (quotation cleaned).  Second, supplementation may be permissible "to facilitate [the Court's] comprehension of the record or the agency's decision, particularly when highly technical, environmental matters are at issue or when the agency has failed to explain administrative action as to frustrate effective judicial review."  *Id.* at 279 (quotation cleaned).[1] And "[t]o the extent supplemental materials are permitted in judicial review, those materials 'should be explanatory of the decisionmakers' action at the time it occurred.'"  *Collins v. Esper*, No. 16-cv-11702, 2018 WL 1399299, at *7 (D. Mass. Mar. 20, 2018) (Talwani, J.) (quoting *Sierra Club v. Marsh*, 976 F.2d 763, 772 (1st Cir. 1992)).

Plaintiffs come nowhere close to satisfying either exception.  As to the first, Plaintiffs cannot make—nor do they even try to make—a showing, much less a "strong showing," of "bad faith or improper behavior" by SSA.  *Housatonic River*, 75 F.4th at 278.  And as to the second, for the reasons described below, none of the four categories of materials raised by Plaintiffs would meaningfully facilitate judicial review in this case.

*First*, Plaintiffs complain that "records concerning what the SSA disclosed to ICE are missing from the AR, making it impossible for the Court or Plaintiffs to determine whether the SSA disclosed any tax information protected under [I.R.C.] § 6103."  ECF #108 at 7.  But it is

---

[1] "Although the First Circuit has acknowledged that other exceptions may exist, it has declined to recognize any."  *Seafreeze Shoreside*, 2023 WL 6218159, at *10.  For instance, the First Circuit has "noted that the Ninth Circuit allows record supplementation when necessary to determine whether the agency considered all relevant factors in making its decision or when the agency has relied on extra-record materials."  *Housatonic River*, 75 F.4th at 278 (quotation cleaned).  The First Circuit has not, however, gone so far as to adopt that exception in this circuit.

unclear why lists of addresses would be helpful to Plaintiffs—after all, it is impossible to tell, from the face of any address, whether it was lifted from a tax or non-tax source.  Nevertheless, Plaintiffs insist that "[t]he absence of the underlying data files is significant because SSA personnel sought assurances that no FTI was 'needed here,' raising the question of whether any FTI was in fact included in the disclosed data." *Ibid.* (quoting SSA AR at 92).  Yet the AR before the Court reflects that SSA personnel not only "sought" assurances, but *received* assurances, that no FTI should be shared in responding to ICE's data requests.  *See* SSA AR at 92.  As previously explained in Defendants' supplemental brief in support of dismissal, the AR reflects that while SSA personnel considered including tax information in its disclosures, the agency ultimately decided that tax information would not be included, given ICE's separate data-sharing arrangement with the IRS itself.  *See* ECF #107 at 4–6.

Second, Plaintiffs complain that "the AR is devoid of any documents reflecting discussions regarding SSA data storage or data transfer."  ECF #108 at 7.  But this case has nothing to do with SSA's data-storage practices.  Nor does it have anything to do with SSA's data-transfer mechanisms, except to the extent SSA was transferring tax information, which it was not.  *See* ECF #107 at 5–6.  The other materials sought in this category are similarly irrelevant.  "Technical discussions" regarding how to actually transfer data from SSA to ICE have nothing to do with whether SSA chose to transfer tax information.  ECF #108 at 7.  Even further afield is any discussion between the agencies about whether SSA would need to make ICE pay a fee for the trouble of compiling the data.  *Id.* at 7–8.  And to the extent Plaintiffs challenge the August 27, 2025, SSA Letter, it is unclear what else Plaintiffs need to obtain effective judicial review of whether the contents of the Letter are lawful—other than the Letter itself, which is, of course, in the record already.

*Third*, Plaintiffs complain about the absence of correspondence involving DOGE: "[T]here is … no explanation of DOGE's role in the data sharing agreements," "no discussion of how to protect § 6103 data from DOGE's sharing [sic], and no analysis of whether DOGE could properly protect this confidential information." *Id.* at 8. But the challenged data-sharing arrangement is between SSA and ICE, not SSA and DOGE, nor ICE and DOGE. And in any event, it is hard to fathom how such materials would be relevant to the issue of whether SSA satisfied ICE's requests using tax or non-tax sources in its possession.

*Fourth*, Plaintiffs complain that "the AR is replete with unnecessary redactions, including the names and emails for nearly every SSA employee involved in the agency action." *Id.* at 9. What SSA should have done, Plaintiffs contend, is to follow the example of "the AR produced by the government for the IRS … which contained limited redactions of names and email addresses." *Ibid.* But that is *precisely* what SSA did. Other than a single document about which the Parties previously reached agreement, *see* SSA AR at 96; ECF #104–06, the SSA AR contains no substantive redactions at all. In fact, the names of many SSA personnel remain unredacted throughout the record. And where SSA did redact personally identifiable information, it did so only to protect the privacy of low-level and non-decision-making government employees. With respect to email addresses in particular, SSA redacted only the parts of those addresses that would reveal the names of employees, specifically taking care *not* to redact domain names so that Plaintiffs and the Court could understand which agencies were communicating with one another. Nothing about shielding the names of lower-level federal civil servants compromises the Court's "ability to review" the SSA AR. ECF #108 at 9. Nor does it make any sense to suggest that those names might have been "considered by the agency during the challenged actions." *Ibid.* Nor is it

remotely plausible that the knowledge of those names would "allow Plaintiffs and this Court to assess whether there was a reasoned basis" for the source of the information shared with ICE. *Ibid.*

In short, none of the materials Plaintiffs seek bears on whether SSA shared tax information when it provided addresses to ICE. The existing record already makes clear that SSA did not. Accordingly, the Court should deny Plaintiffs' request for supplementation of the record.

## CONCLUSION

The Court should deny Plaintiffs' motion to compel the completion or supplementation of SSA's AR. And given the conclusory nature of the allegations against SSA, for the reasons discussed in Defendants' dispositive-motion briefing to date, the Court should dismiss all non-APA claims against the agency. Finally, for the reasons discussed in Defendants' supplemental brief, the Court should enter summary judgment in SSA's favor on the APA claims, then dismiss SSA from this case altogether.

JUNE 26, 2026                          *Respectfully submitted,*

                                       BRETT A. SHUMATE
                                       Assistant Attorney General
                                       Civil Division

                                       ELIZABETH J. SHAPIRO
                                       Deputy Director
                                       Federal Programs Branch

                                       */s/ Cesar Azrak*
                                       CESAR AZRAK
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street, NW
                                       Washington, DC 20005
                                       Telephone: (202) 538-3491
                                       cesar.e.azrak@usdoj.gov

                                       *Counsel for Defendants*

9

**CERTIFICATE OF SERVICE**

I, Cesar Azrak, hereby certify that on June 26, 2026, I electronically filed the foregoing using the Court's CM/ECF system, which automatically serves this document upon all counsel of record, in keeping with Local Rules 5.2 and 5.4.

/s/ Cesar Azrak
CESAR AZRAK

*Counsel for Defendants*