UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| COMMUNITY ECONOMIC DEVELOPMENT CENTER OF SOUTHEASTERN MASSACHUSETTS; NATIONAL PARENTS UNION; NATIONAL KOREAN AMERICAN SERVICE AND EDUCATION CONSORTIUM; UNDOCUBLACK NETWORK, INC., | * | |
| Plaintiffs, | * | |
| v. | * | |
| SCOTT BESSENT, Acting Commissioner of the Internal Revenue Service and Secretary of the Treasury; DEPARTMENT OF THE TREASURY; INTERNAL REVENUE SERVICE; FRANK BISIGNANO, Commissioner of the Social Security Administration; SOCIAL SECURITY ADMINISTRATION; TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, Secretary of Homeland Security; DEPARTMENT OF HOMELAND SECURITY, | * | Civil Action No. 1:25-cv-12822-IT |
| Defendants. | * | |

MEMORANDUM & ORDER

August 24, 2026

TALWANI, D.J.

In February 2025, the Social Security Administration ("SSA") disclosed records regarding 700,000 noncitizens to the Department of Homeland Security ("DHS"). SSA Admin. R. 000094–95 [Doc. No. 103-1]. Then, on August 27, 2025, SSA memorialized an ongoing data sharing arrangement with DHS, in which DHS would, on a monthly basis, share its own

information regarding batches of 50,000 noncitizens and SSA would return identity and location information for known matches. Id. at 000103–04.

Plaintiffs Community Economic Development Center of Southeastern Massachusetts, National Parents Union, National Korean American Service and Education Consortium, and UndocuBlack Network ("Plaintiff Organizations") challenged SSA's disclosure, along with the Internal Revenue Service's ("IRS") data sharing with DHS, as unlawful, alleging that the transfer included information derived from confidential tax documents subject to protection under the Internal Revenue Code. Compl. ¶¶ 95–104 [Doc. No. 1]. On January 30, 2026, Plaintiff Organizations filed an Amended Complaint [Doc. No. 73]. On February 5, 2026, the court granted Plaintiff Organizations' preliminary injunction motion as to ICE, preliminarily enjoining ICE from using confidential federal tax information of noncitizens obtained from IRS. See Cmty. Econ. Dev. Ctr. of Se. Mass. v. Bessent, 818 F. Supp. 3d 228 (D. Mass. 2026), appeal filed, No. 26-1329 (1st Cir. Apr. 6, 2026).

Defendants, including SSA, moved to dismiss the Amended Complaint. Defs.' Mot. to Dismiss [Doc. No. 81]. Following a hearing on the motion, the court ordered SSA to produce the Administrative Record of SSA's decision making regarding "the actions and decisions challenged in this case." Order 2 [Doc. No. 100]. On May 29, 2026, SSA filed a certified Administrative Record, comprised of internal SSA emails, emails and written correspondence between SSA and ICE employees and officials, memoranda of understanding between SSA and DHS, SSA policies, and various statutory and regulatory provisions. SSA Admin. R. [Doc. No. 103-1]. Given the filing of the Administrative Record, Defendant SSA requested that the court convert the Motion to Dismiss [Doc. No. 81] to a motion for summary judgment. Def. SSA's' Supp. Mem. ISO Mot. to Dismiss 1 [Doc. No. 107].

Plaintiff Organizations, in turn, assert several deficiencies with this submission and, in their pending Response to Defendants' Supplemental Filing and Motion to Complete or Supplement the Administrative Record [Doc. No. 108] ("Motion to Complete"), request that the court "order completion and supplementation[1] of the [Administrative Record]." Id. at 6.

The court considers this request and, for the reasons set forth below, GRANTS in part Plaintiff Organizations' Motion to Complete [Doc. No. 108].

## I. Background - SSA's Data Sharing with DHS per the Current Record

The heart of Plaintiff Organizations' claims is that SSA shared confidential taxpayer information with DHS as part of the February 2025 transfer. See Am. Compl. ¶¶ 45–47, 102–12 [Doc. No. 73]. In response, Defendants assert that SSA derived the information from non-tax related sources,[2] Defs.' Mot. to Dismiss 13 [Doc. No. 81], and SSA's authority to respond to DHS's law enforcement requests permitted the transfer of 700,000 noncitizens' data. See id. at 3; 8 U.S.C. § 1360(b).

---

[1] As discussed below, the information at issue is information held by SSA. Mot. to Compel 6–8 [Doc. No. 108]. Accordingly, the court need not consider whether extra-record supplementation is necessary. See City of Dania Beach v. FAA, 628 F.3d 581, 590 (D.C. Cir. 2010) (a plaintiff must "demonstrate unusual circumstances justifying a departure from th[e] general rule" against considering extra-record evidence) (quoting Texas Rural Legal Aid v. Legal Servs. Corp., 940 F.2d 685, 698 (D.C. Cir. 1991). Rather, the court's inquiry is limited to whether completion of the Administrative Record is warranted. See Oceana, Inc. v. Ross, 290 F. Supp. 3d 73, 78 (D.D.C. 2018) ("[T]he administrative record properly consists of the materials before the agency and no more nor less.") (emphasis omitted).

[2] In general, SSA receives information from two sources: "contributors" and "beneficiaries." "Contributors" are covered workers and employers who pay into Social Security through payroll taxes. Paul Davis & Zhe Li, Cong. Rsch. Serv., R47183, The Social Security Statement (2022) (accessible at https://www.congress.gov/crs-product/R47183). As taxpayer information, contributor data is protected by the Internal Revenue Code's confidentiality requirements. 26 U.S.C. § 6103. "Beneficiaries" are individuals who receive monthly cash benefits from SSA, including disabled or retired workers. Paul Davis & Zhe Li, Cong. Rsch. Serv., R47183, The Social Security Statement (2022) (accessible at https://www.congress.gov/crs-product/R47183). While subject to other agency requirements, information SSA receives from beneficiaries is not protected by the Internal Revenue Code because it is not tax data.

The Administrative Record currently includes several email chains from SSA and ICE employees discussing how to implement DHS's multiple data requests. SSA Admin. R. 000001–09; 000092–94 [Doc. No. 103-1]. On or around February 11, 2025, DHS asked SSA for identity and location data for a group 98,000 noncitizens with social security numbers ("SSN") and orders of removal. Id. at 000007. On February 19, 2025, an SSA employee communicated to an ICE employee that SSA would be able to provide, inter alia, confidential tax information (i.e., employer name and address and earnings) if the noncitizen lacked work authorization. Id. at 000002.

Later, on February 23, 2025, DHS expanded its request to include identity and location information for 700,000 noncitizens with orders of removal. Id. at 000094. In its expanded request, DHS again asked SSA for "[k]nown employers' information." Id. On February 24, 2026, an SSA employee stated their understanding that the expanded anticipated transfer would exclude confidential tax information, id. at 000092, and that the data would be sourced from the Numident, Person Information, Master Beneficiary Record, and Supplemental Security Record databases, id. at 000093. On February 28, 2026, DHS confirmed receipt of SSA's information. Id. at 000095.

On August 27, 2025, an SSA official memorialized SSA's commitment to provide identity and location information (excluding employer information) to ICE in response to ICE's monthly submission of roughly 50,000 noncitizen SSN and names. Id. at 000103–04. A November 14, 2025 declaration from a SSA official attested that such information would be derived from SSA's Master File of SSN Holders and SSN Applications, Master Beneficiary Record, Supplemental Security Income Record, and Special Veterans Benefits, and Digital Identity File Record System. Myers Decl. ¶ 5 [Doc. No. 39-2]. The SSA official also attested that

SSA was still implementing the "technical connection" necessary to transfer the information, and thus, no data had been shared pursuant to the August 27, 2025 letter, as of the date of the declaration. Id. ¶ 4.

## II. Standard of Review

"The focal point of APA review is the existing administrative record." Atieh v. Riordan, 727 F.3d 73, 76 (1st Cir. 2013) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973) (per curiam)). Specifically, "[w]hen reviewing an agency's decision under the arbitrary and capricious standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Housatonic River Initiative v. EPA, 75 F.4th 248, 278 (1st Cir. 2023) (quoting City of Taunton v. EPA, 895 F.3d 120, 127 (1st Cir. 2018) (internal quotations omitted)). Generally, "APA review . . . involves neither discovery nor trial." Atieh, 727 F.3d at 76.

An administrative record consists of "all documents and materials directly or indirectly considered by [the] agency decision-makers and includes evidence contrary to the agency's position." Town of Norfolk v. U.S. Army Corps of Eng'rs, 137 F.R.D. 183, 185 (D. Mass. 1991) (internal quotations omitted), aff'd, 968 F.2d 1438 (1st Cir. 1992). An agency's "designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity." Oceana, Inc. v. Ross, 920 F.3d 855, 865 (D.C. Cir. 2019) (internal citations omitted); see USPS v. Gregory, 534 U.S. 1, 10 (2001) ("[A] presumption of regularity attaches to the actions of Government agencies[.]").

To rebut this presumption, courts have required plaintiffs to show "clear evidence" that the record, as designated, is incomplete, Roe v. Mayorkas, 2024 WL 5198705, at *2 (D. Mass. Oct. 2, 2024), that is, "a strong, substantial or prima facie showing that the record is incomplete."

S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs, 611 F. Supp. 3d 136, 142 (D.S.C. 2020) (internal citation omitted); see Vidal v. Duke, 2017 WL 8773110, at *3 (E.D.N.Y. Oct. 17, 2017) ("[T]he presumption that the agency produced the complete administrative record may be rebutted by 'clear evidence' that the record omits relevant materials[.]") (quoting Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993)). Where a plaintiff demonstrates "clear evidence" that the record requires completion, "no showing of bad faith [by the agency] is required[.]" S.C. Coastal Conservation League, 611 F. Supp. 3d at 142.

The "clear evidence" standard may be satisfied when a plaintiff identifies "reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." Ctr. for Food Safety v. Perdue, 2021 WL 8532247, at *4 (N.D. Cal. Nov. 5, 2021); see WildEarth Guardians v. U.S. Forest Serv., 713 F. Supp. 2d 1243, 1253 (D. Colo. 2010) (Plaintiff must show "by clear evidence that the record fails to include documents or materials considered by [defendants] in reaching the challenged decision."); Pac. Shores Subdiv. Cal. Water Dist. v. U.S. Army Corps. of Eng'rs, 448 F. Supp. 2d 1, 6 (D.D.C. 2006) ("[Plaintiff] must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record.").

## III. Discussion

In their Motion to Complete [Doc. No. 108], Plaintiff Organizations assert that SSA wrongfully excluded (1) the underlying records transferred by SSA to DHS from the Administrative Record, id. at 7; (2) the technical discussions regarding data storage and transfer, id. at 7–8; (3) correspondence between SSA and Department of Governmental Efficiency ("DOGE"), id. at 8; and (4) the names and emails of SSA employees on email communications, information that had been redacted by SSA, id. at 9. The court considers each category in turn.

A. *Records*

First, Plaintiff Organizations argue that the Administrative Record lacks the actual data SSA transferred to DHS in February 2025, and that review of the underlying records is necessary to verify SSA's claim that SSA transferred no confidential tax information. Id. at 6–7. Defendants dispute that data review will allow the court to determine whether SSA disclosed § 6103-protected contributor information or beneficiary information. Defs.' Opp'n 5–6 [Doc. No. 109].

The Administrative Record reflects that SSA employees pulled information from four SSA databases and then sent the data to DHS through a "secure data exchange mechanism" established by DHS. Admin R. 000093 [Doc. No. 103-1]. There is no indication that the review of the transferred information will confirm that the data was derived from the four enumerated databases, or rather, from a database containing tax information, such as the Master Earnings File. See Anya Olsen & Russell Hudson, Soc. Sec. Bulletin, Social Security Administration's Master Earnings File: Background Information (2009) (accessible at https://www.ssa.gov/policy/docs/ssb/v69n3/v69n3p29.html). More importantly, the information SSA disclosed is the outcome of SSA's decision to share data with DHS, not material SSA "considered" in making that decision. Town of Norfolk, 137 F.R.D. at 185. Accordingly, Plaintiffs' motion to compel the completion of the Administrative Record with the records transferred by SSA to DHS in February 2025 is DENIED.

B. *Data Transfer and Storage*

Plaintiff Organizations assert that the Administrative Record excludes various conversations between SSA employees internally and across SSA and DHS relevant to the data sharing. Mot. to Complete 7–8 [Doc. No. 108]. The court agrees that the Administrative Record

is remarkably limited with respect to inter- and intra-agency correspondence, comprising only twenty-eight pages of communication. SSA Admin. R. 000001–09, 000086–104 [Doc. No. 103-1] As noted by Plaintiff Organizations, the Record is replete with references by agency employees to excluded discussions regarding DHS's requests and SSA's implementation. Id. at 000001–09, 000086–98. For example, SSA employees refer to "technical discussions" held with DHS as to how to implement the transfer, but the record lacks such correspondence. Id. at 000001–02. An SSA employee writes to SSA General Counsel that they "confirmed with [redacted] that DHS is working directly with IRS to get FTI," but that correspondence is excluded. Id. at 000092.

Defendants assert that such communication is irrelevant to whether SSA shared tax data with DHS. Regardless, the Administrative Record must include all documents and materials considered, either directly or indirectly, by SSA in making its decision to share data with DHS. See Town of Norfolk, 137 F.R.D. at 185. Accordingly, Plaintiff Organizations' motion to compel completion of the Administrative Record is GRANTED as to inter- and intra-agency communication SSA considered, either directly or indirectly, in deciding to share noncitizen data with DHS in 2025.

Additionally, the court notes that SSA initially intended to share the tax information of noncitizens not authorized to work. SSA Admin. R. 000002 [Doc. No. 103-1]. Specifically, SSA planned on disclosing the names and addresses of such noncitizens' employers and income earned by those noncitizens. Id. At some point, SSA decided not to share that information. Id. at 000092. Defendants assert that SSA's decision to exclude employer and income information from its transfer is easily explained given that DHS had entered into its own data sharing arrangement with IRS. Defs.' Opp'n 6 [Doc. No. 109]. The sole two emails included in the

Administrative Record relevant to this issue echo Defendants' explanation. SSA Admin. R. 000092 [Doc. No. 103-1]. However, DHS requested only the taxpayers' addresses from IRS, not employer and income information. Cmty. Econ. Dev. Ctr. of Se. Mass., 818 F. Supp. 3d at 240. Thus, Defendants' proffered account fails to shed light on why SSA decided to exclude employer and income information from its ultimate transfer to DHS in February 2025.

The Administrative Record's exclusion of the materials or conversations that ultimately led to SSA's decision to share noncitizen data with DHS, including changes in the scope of transferred material, comprise a significant gap, frustrating judicial review. See Roe, 2024 WL 5198705, at *2. Therefore, the court orders Defendants to produce the records between SSA employees internally and across SSA and DHS relevant to the data sharing to complete the Administrative Record.

### C. *DOGE Communications*

Plaintiff Organizations argue that the Administrative Record excludes communication between SSA and DOGE. Mot. to Complete 8 [Doc. No. 108]. Defendants assert that DOGE communications are irrelevant where the data sharing occurred between SSA and ICE. Defs.' Opp'n 8 [Doc. No. 109]. However, the email chain commencing DHS's expanded request for 700,000 noncitizens' information is titled "DOGE ICE Info Sharing request." SSA Admin. R. 000092–94 [Doc. No. 103-1]. Clearly, DOGE played a role in at least initiating DHS' request that culminated in the action challenged by Plaintiff Organizations. See Roe, 2024 WL 5198705, at *2.

The Administrative Record's exclusion as to how DOGE participated in SSA's decision making to share the records of 700,000 noncitizens with DHS constitutes another significant gap precluding the court from evaluating Plaintiffs' claims. Charleston Area Med. Ctr. v. Burwell,

216 F. Supp. 3d 18, 23 (D.D.C. 2016) (to prevail on a motion to complete the record, "a plaintiff must put forth concrete evidence and identify reasonable, non-speculative grounds for [the] belief that the documents were considered by the agency and not included in the record" (quotations omitted)). Therefore, the court GRANTS Plaintiff Organizations' motion to compel completion of the Administrative Record with SSA's communications or materials relevant to DOGE's role in the challenged agency action.

D. *Redactions*

Plaintiff Organizations assert that Defendants improperly redacted the names and email addresses of agency employees, whose emails are included in the Administrative Record. Mot. to Complete 8 [Doc. No. 108]. Defendants argue that redactions are appropriate for the personally identifying information ("PII") of low-level agency employees. Defs.' Opp'n 7–8 [Doc. No. 109].

Defendants' redactions of employees' PII does not prevent judicial review where the email correspondence retains email address suffixes, denoting which agency employs the sender or recipient. The court need not review the employees' identities to consider Plaintiff Organizations' claims. Therefore, Plaintiff Organizations' motion to compel the completion of agency employees' PII is DENIED.

## IV. <u>Conclusion</u>

For the reasons stated above, Plaintiff Organizations' <u>Motion to Complete</u> [Doc. No. 108] is GRANTED in part. No later than September 14, 2026, Defendants shall complete the Administrative Record with any agency correspondence and/or materials relevant to (1) all inter- and intra-agency communication SSA considered, either directly or indirectly, in deciding to share noncitizen data with DHS in 2025, inclusive of materials relevant to SSA's decision to

exclude employer and income information from the February 2025 transfer, despite its earlier intention to do so; and (2) DOGE's participation in SSA's data sharing with DHS. The Motion to Complete[Doc. No. 108] is otherwise DENIED.

With regard to Defendants' outstanding Motion to Dismiss / Motion for Summary Judgment [Doc. Nos. 81, 107] as limited to Counts I and II of Plaintiff Organizations' Amended Complaint [Doc. No. 73] against Defendant SSA, no later than August 28, 2026, the parties shall confer and jointly file a proposed schedule for either supplemental briefs or a renewed motion for summary judgment and briefing following completion of the Administrative Record. The court will address Defendants' dispositive motion as to Plaintiff Organizations' APA claims against SSA following the submission of those additional materials. With regard to Plaintiff Organizations' remaining claims against Defendants ICE, IRS, and SSA, Defendants' Motion to Dismiss [Doc. No. 81] remains under advisement and will be addressed by the court without waiting on the completion of the Administrative Record.

IT IS SO ORDERED.

August 24, 2026

/s/ Indira Talwani
United States District Judge