**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

COMMUNITY ECONOMIC DEVELOPMENT CENTER OF SOUTHEASTERN MASSACHUSETTS, NATIONAL PARENTS UNION, NATIONAL KOREAN AMERICAN SERVICE AND EDUCATION CONSORTIUM, & UNDOCUBLACK NETWORK,

Plaintiffs,

v.

SCOTT BESSENT, ACTING COMMISSIONER OF THE INTERNAL REVENUE SERVICE AND SECRETARY OF THE TREASURY; DEPARTMENT OF THE TREASURY; INTERNAL REVENUE SERVICE; FRANK BISIGNANO, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION; SOCIAL SECURITY ADMINISTRATION; MARKWAYNE MULLIN, SECRETARY OF HOMELAND SECURITY; U.S. DEPARTMENT OF HOMELAND SECURITY; DAVID J. VENTURELLA, ACTING DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

Defendants.

Civil Action No. 1:25-cv-12822-IT

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO SEEK COMPLIANCE AND THIRD-PARTY DISCOVERY**

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ....1

II. BACKGROUND ....2

A. ThunderCat ....3

B. Palantir ....3

C. Plaintiffs' effort at informal resolution ....4

III. LEGAL STANDARD ....5

IV. ARGUMENT ....6

A. Discovery is necessary to assess Defendants' compliance with the Order. ....6

B. Plaintiffs face the same irreparable harm that warranted preliminary relief. ....8

C. Plaintiffs are likely to succeed on the merits for the purposes of granting limited discovery. ....9

D. Compliance discovery would not unduly burden Defendants or third parties. ....10

E. Plaintiffs' request is not premature. ....11

V. CONCLUSION ....11

LOCAL RULE 7.1(A)(2) CERTIFICATION ....13

CERTIFICATE OF SERVICE ....14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

AFSCME v. SSA,
No. 1:25-cv-00596 (D. Md. Jan. 16, 2026)....................7

Airbnb, Inc. v. City of New York,
373 F. Supp. 3d 467 (S.D.N.Y. 2019)....................8

Boston Redev. Auth. v. Nat'l Park Serv.,
838 F.3d 42 (1st Cir. 2016)....................5

California v. Dep't of Health & Hum. Servs.,
No. 25-cv-05536-VC (N.D. Cal. July 16, 2026)....................4

Contour Design, Inc. v. Chance Mold Steel Co., Ltd.,
649 F.3d 31 (1st Cir. 2011)....................9

Ctr. for Taxpayer Rights v. Internal Revenue Serv.,
2025 WL 3257096 (D.D.C. Nov. 21, 2025)....................2

Esch v. Yeutter,
876 F.2d 976 (D.C. Cir. 1989)....................5

Four Women Health Servs., LLC v. Abundant Hope Pregnancy Res. Ctr., Inc.,
2024 WL 4425558 (D. Mass. Oct. 4, 2024)....................11

Jimenez v. Nielsen,
326 F.R.D. 357 (D. Mass. 2018)....................8, 9

KPM Analytics N. Am. v. Blue Sun Scientific, LLC,
540 F. Supp. 3d 145 (D. Mass. 2021)....................5

Momenta Pharms., Inc. v. Teva Pharms. Indus. Ltd.,
765 F. Supp. 2d 87 (D. Mass. 2011)....................5, 6, 8

In re New England Compounding Pharmacy, Inc. Prods. Liability Litig.,
No. MDL 13-2419-FDS, 2013 WL 6058483 (D. Mass. Nov. 13, 2013)....................11

NW. Env't Def. Ctr. v. Bonneville Power Admin.,
117 F.3d 1520 (9th Cir. 1997)....................6

Purpose Built Fams. Found., Inc. v. United States,
95 F.4th 1346 (11th Cir. 2024)....................6

R.I State Council of Churches v. Rollins,
158 F.4th 304 (1st Cir. 2025) ........ 5

Save the South Fork Salmon v. U.S. Forest Serv.,
2026 WL 1506788 (D. Idaho May 29, 2026) ........ 5

Strike 3 Holdings, Inc. v. Doe,
678 F. Supp. 3d 201 (D. Mass. 2023) ........ 11

United States v. Fields,
2017 WL 4355973 (D.N.H. Sept. 22, 2017) ........ 9

Wilcox Indus. Corp. v. Hansen,
279 F.R.D. 64 (D.N.H. 2012) ........ 10

Williams v. Poulos,
801 F. Supp. 867 (D. Me. 1992) ........ 8

**Federal Statutes**

26 U.S.C. § 6103 ........ *passim*

**Rules**

Fed. R. Civ. P. 26 ........ 5

**Other Authorities**

Decl. of Alberto V. Briseno, The Medicaid Litigation, No. 25-cv-05536-VC (N.D. Cal. Apr. 4, 2026) ........ 7

Fourth Decl. of Alberto V. Briseno The Medicaid Litigation, No. 25-cv-05536-VC (N.D. Cal. July 8, 2026) ........ 7

IRS, Information Executive Summary for Questionnaire 2428, Aug. 27, 2025 ........ 4

IRS, Information Executive Summary for Questionnaire 2646, Dec. 12, 2025 ........ 4

## I. INTRODUCTION

In recent weeks, Plaintiffs learned of two developments that raise serious questions about whether Immigration and Customs Enforcement ("ICE") and the Department of Homeland Security ("DHS") are complying with the Court's Preliminary Relief Order (the "Order"), which prohibits DHS and ICE "from inspecting, viewing, using, copying, distributing, relying upon, or otherwise acting upon any return information that had been obtained from or disclosed by the IRS Defendants" pursuant to the stayed and preliminarily vacated IRS-ICE Memorandum of Understanding and Implementation Agreement (the "data-sharing arrangements"). Doc. No. 75 at 42. These developments raise concerns that Defendants have accessed protected taxpayer information through third-party contractors or have shared IRS data with third-party companies who retain access to that information.

First, in June 2026, just months after the Court entered its Order in this case, DHS awarded a $10 million contract to ThunderCat Technology, LLC ("ThunderCat"), a government-information contractor and reseller, to purchase Individual Taxpayer Identification Number ("ITIN") data. This identifier is issued by the IRS to permit noncitizens to file their taxes and is the same type of IRS data the Court prohibited Defendants from obtaining, accessing, or using under its Order.

Second, discovery in separate litigation shows that the Centers for Medicare & Medicaid Services ("CMS") unlawfully provided sensitive personal identifying information to ICE, which subsequently shared that information with personnel from Palantir Technologies, Inc. ("Palantir"). Palantir is a third-party data company that contracts with ICE to support the agency's civil immigration enforcement operations. Only after the court in the CMS case granted confirmatory discovery into Defendant DHS's violations of the preliminary injunction did it



6301455

become apparent that ICE disseminated the dataset to Palantir personnel through Microsoft Teams.

While the government represented that the data obtained from ThunderCat is not protected by 26 U.S.C. § 6103, it failed to provide factual support for this assertion, and serious questions remain as to whether third-party contractors have access to any § 6103 information protected by this Court's Order. Plaintiffs therefore seek leave to obtain targeted discovery from ICE and DHS and non-duplicative third-party discovery from Palantir and ThunderCat to determine whether Defendants have complied with or violated the Court's Order.

## II. BACKGROUND

Plaintiffs brought this action and moved for preliminary relief to protect the confidentiality of taxpayer information that IRS, ICE, and DHS, and separately SSA, ICE, and DHS, have unlawfully disclosed, received, and used for civil immigration enforcement. Doc. Nos. 1, 27, 73. On February 5, 2026, this Court entered its Order granting preliminary relief as to DHS, ICE, and the Secretary of DHS, enjoining their use of data protected by § 6103 and provided by IRS. The IRS is separately enjoined from sharing protected taxpayer information by an order issued in Ctr. for Taxpayer Rights v. Internal Revenue Serv., in the District of Columbia. Doc. No. 75 at 41-42; see No. 25-CV-0457 (CKK), 2025 WL 3257096, at *1 (D.D.C. Nov. 21, 2025) (prohibiting IRS from sharing immigrant taxpayer data with ICE or DHS absent strict compliance with § 6103), aff'd, No. 26-5006, slip op. at 32 (D.C. Cir. Sept. 8, 2026).

Since this Court's Order, Plaintiffs learned of two developments that raise concerns about DHS and ICE accessing or using § 6103 protected data through third parties ThunderCat and Palantir.

### A. ThunderCat

In June 2026, four months after the Court's Order, ICE awarded ThunderCat a contract worth nearly $10 million to provide ITIN data and analytics to agents within the Homeland Security Investigations ("HSI") unit of ICE.[1] An ITIN is a tax processing number issued by the IRS to certain individuals, including immigrants, who have a U.S. tax filing or reporting requirement but are not eligible for a Social Security Number. See Doc. No. 31 ¶¶ 26–28. When obtained from IRS records, ITIN information is considered "return information," protected under § 6103. See 26 U.S.C. § 6103(b)(2)–(3).

Publicly available records do not identify ThunderCat's source for the ITIN data supplied to the HSI unit of ICE. But the ITIN contract is not ThunderCat's only data- or systems-related relationship with the federal government. Public contracting records identify ThunderCat as a recurring provider of bulk data acquisition, data integration, analytics, and enterprise systems products to DHS, among other federal agencies.[2] Moreover, as the government's own filings in this case show, HSI—the recipient of ThunderCat's data—has already used immigrant tax data to support its civil immigration enforcement operations, Doc. No. 51-2 ¶ 5; see also Doc. No. 78-1 ¶¶ 4–5, making it highly likely that the recent ThunderCat contract is directed toward immigration enforcement and removal operations.[3]

### B. Palantir

Palantir's work for both IRS and ICE is extensive and overlapping. IRS has contracted with Palantir to create a single interface[4] to access data across numerous IRS databases,

---

[1] Declaration of Leo Lam ("Lam Decl."), Doc. No. 118, Ex. 1.

[2] Lam Decl. Ex. 2; Lam Decl. Ex. 3.

[3] Lam Decl. Ex. 4; Lam Dec. Ex. 5.

[4] Lam Decl. Ex. 6.

containing federal tax information, Social Security numbers, addresses, employment information, and other sensitive taxpayer data.[5] Palantir's technology also undergirds ICE's Investigative Case Management system, the core case-management platform used by HSI, and its immigration-surveillance operations, including ImmigrationOS.[6]

Most recently, in July 2026, Plaintiffs learned that ICE "improperly" shared Medicaid data with Palantir. See Declaration of Anna Rich, California v. Dep't of Health & Hum. Servs., No. 25-cv-05536-VC (N.D. Cal. July 16, 2026) ("Medicaid Litigation"), Doc. No. 182-1. Discovery in that case revealed that ICE obtained confidential Medicaid information from CMS and disclosed that data to Palantir personnel and the Enhanced Leads Identification & Targeting for Enforcement team ("ELITE") via a Microsoft Teams chat. Id. Doc. No. 182-2.[7] ELITE appears to be a Palantir-built immigration-enforcement application to identify and locate people who are targets of ICE's enforcement operations.[8] That disclosure by ICE raises a parallel concern here: whether ICE similarly disseminated IRS return information subject to this Court's Order to Palantir or other third-party contractors.

### C. Plaintiffs' effort at informal resolution

In light of these recent events and the overlapping relationships between DHS, ICE, and third-party data contractors, Plaintiffs reached out to Defendants to negotiate a stipulation to permit limited compliance discovery regarding the data obtained from or shared with third-party

---

[5] IRS, Information Executive Summary for Questionnaire 2646, https://www.irs.gov/pub/irs-pia/ci-lca-cloud-pia.pdf, approval date Dec. 12, 2025; IRS, Information Executive Summary for Questionnaire 2428, https://www.irs.gov/pub/irs-pia/ci-1-gss-pia.pdf, approval date Aug. 27, 2025.

[6] Lam Decl. Ex. 7; see also Lam. Decl. Ex. 8.

[7] Available at https://storage.courtlistener.com/recap/gov.uscourts.cand.452203.

[8] Lam Decl. Ex. 9.

contractors.[9] But the parties are at an impasse. Accordingly, Plaintiffs respectfully request that this Court grant leave to obtain targeted compliance discovery from ICE, DHS, and third parties Palantir and ThunderCat.[10]

## III. LEGAL STANDARD

Courts are "authorized to issue all orders necessary to enforce" their prior rulings. R.I State Council of Churches v. Rollins, 158 F.4th 304, 315 (1st Cir. 2025) (citation omitted). A court may grant a movant's request for leave to obtain compliance discovery when the movant establishes "good cause." Momenta Pharms., Inc. v. Teva Pharms. Indus. Ltd., 765 F. Supp. 2d 87, 88 (D. Mass. 2011); Fed. R. Civ. P. 26(d)(1). Good cause exists if the request is "reasonable[] . . . in light of all of the surrounding circumstances." Id. at 89. "[M]ultiple courts in this [district] have adopted the reasonableness standard from Momenta Pharms." KPM Analytics N. Am. v. Blue Sun Scientific, LLC, 540 F. Supp. 3d 145, 146 (D. Mass. 2021). In determining whether there is good cause for discovery, courts consider "the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity." Momenta, 765 F. Supp. 3d at 89.[11]

---

[9] Lam Decl. Ex. 10.

[10] Lam Decl. Ex. 11.

[11] Because the requested discovery concerns compliance with the Court's preliminary relief Order rather than the merits of agency action, the ordinary administrative record limitation that applies to Administrative Procedure Act cases does not bar the requested discovery. Compare Boston Redev. Auth. v. Nat'l Park Serv., 838 F.3d 42, 48 (1st Cir. 2016) (The "focal point for judicial review" for APA claims is the administrative record.), with Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989) (noting an exception to the administrative-record rule "in cases where relief is at issue, especially at the preliminary injunction stage"); and Save the South Fork Salmon v. U.S. Forest Serv., 2026 WL 1506788 at *2 (D. Idaho May 29, 2026) ("Courts may consider extra-record evidence for non-merits issues, including standing, irreparable harm, balance of equities, public interest, and remedy.") (citing NW. Env't Def. Ctr. v. Bonneville

## IV. ARGUMENT

Plaintiffs have good cause to obtain discovery to determine whether Defendants have complied with the preliminary injunction entered in this case. Each of the five relevant factors weighs in favor of permitting such discovery. And, this Court has already recognized that discovery into Defendants' compliance with the Order would be appropriate. See Hr'g Tr. at 21:8–21, May 8, 2026, Doc. No. 101 (differentiating between discovery requests related to preliminary relief or the administrative record).

### A. Discovery is necessary to assess Defendants' compliance with the Order.

Compliance discovery is critical for the purpose of assessing whether ICE has circumvented the Court's Order by disclosing to or obtaining from third parties protected taxpayer information. This purpose strongly supports granting relief, for three reasons. See Momenta Pharms, 765 F. Supp. 2d at 89.

First, ICE's recent award to ThunderCat to obtain ITIN data raises suspicions that ICE may be sidestepping the Order by obtaining protected § 6103 taxpayer information from third parties. The circumstances surrounding ICE's award to ThunderCat—including the nature of the data sought, the execution of the contract shortly after the Court entered its Order, and the fact that HSI previously provided protected § 6103 data to its Enforcement Removal Operations, Law Enforcement Systems and Analysis team, Doc. No. 51-2 ¶ 5—trigger concerns that ICE may be using third-party channels to obtain information that it could not lawfully obtain directly from the IRS under the Court's Order. Plaintiffs therefore seek targeted discovery on the terms of the

---

Power Admin., 117 F.3d 1520, 1527 (9th Cir. 1997)); see also Purpose Built Fams. Found., Inc. v. United States, 95 F.4th 1346, 1352 (11th Cir. 2024) (The APA "does not bar federal courts from considering developments outside the agency record when policing the exercise of judicial power.").

contract and categories of data shared to determine whether the ITIN data in ThunderCat's possession originated from an IRS or ICE disclosure.

Second, documents in the Medicaid Litigation confirm ICE ***already shared*** immigrants' confidential information that it obtained from another federal agency with Palantir's "ELITE" team to further ICE's immigration enforcement initiatives. See Medicaid Litigation, Doc. No. 182-1. Lam Decl. Ex. 9. Worse, ICE did so in a Microsoft Teams chat rather than through any secure sharing system. Id.[12] As this Court knows, ICE has a history of sharing and receiving protected personal data of immigrants without following basic security measures. See Doc. No. 86 at 4 (citing Notice of Corrections to the Record at 2–3, 6, AFSCME v. SSA, No. 1:25-cv-00596 (D. Md. Jan. 16, 2026), Doc. No. 197 (showing DHS received SSA data on the cloud)). Plaintiffs therefore seek discovery to confirm whether ICE similarly disclosed the IRS data it obtained—and is enjoined from re-sharing by this Court—to third-party companies. If taxpayer information was supplied to Palantir or ThunderCat, discovery will also reveal whether Defendants took appropriate steps to delete or restrict access to that information.[13]

Third, discovery may also show the extent to which federal agency systems are integrated across Palantir infrastructure and whether information stored in one federal agency's database is

---

[12] The government has stated in this case that ICE shared IRS data internally, Doc. No. 51-2 ¶ 5; Doc. No. 78-1 ¶ 5—creating yet another question as to whether the copies of data it deleted linger on systems like Microsoft Teams chats.

[13] The Medicaid Litigation also highlights Plaintiffs' concern that Defendants may not have identified all copies of the IRS data retained by ICE. There, DHS represented to the court in April 2026 that the unlawfully shared Medicaid data file had been deleted and that no derived versions had been retained. Decl. of Alberto V. Briseno, The Medicaid Litigation, No. 25-cv-05536-VC, (N.D. Cal. Apr. 4, 2026) Doc. No. 155-4. After the court authorized compliance discovery, however, ICE identified six additional copies of the Medicaid data. ICE subsequently acknowledged that its searches "cannot capture the existence of all files where file names have changed, and even a single modification to the content of a file will impact ICE's ability to locate it." Fourth Decl. of Alberto V. Briseno ¶ 24, The Medicaid Litigation, 181-1, No. 25-cv-05536-VC (N.D. Cal. July 8, 2026) Doc. No. 181-1.

accessible or searchable across other databases or systems. Defendants' recent actions and their intertwinement with Palantir and ThunderCat warrant compliance discovery.

**B. Plaintiffs face the same irreparable harm that warranted preliminary relief.**

Compliance discovery is necessary to "ward off irreparable injury" to Plaintiffs and their members. See Momenta, 765 F. Supp. 2d at 89; Jimenez v. Nielsen, 326 F.R.D. 357, 361–62 (D. Mass. 2018) (threat of irreparable harm supported expediting discovery).

This Court's Order enjoining ICE from using unlawfully disclosed data shared by IRS, together with the D.C. district court's order prohibiting additional unlawful data disclosures by IRS, currently protect Plaintiffs and their members from the irreparable injuries those disclosures would cause—but only if Defendants comply with the Order. If Defendants circumvent the Order by obtaining or accessing protected return information through third parties or other alternative channels, Plaintiffs and their members will face the same irreparable harms the preliminary relief was entered to prevent.

Continued unlawful access to taxpayer information would expose Plaintiffs and their members to substantial harms that cannot be remedied through monetary damages or a later-issued permanent injunction. First, Plaintiffs will suffer "the disclosure of private, confidential information": a "quintessential type of irreparable harm.'" Airbnb, Inc. v. City of New York, 373 F. Supp. 3d 467, 499 (S.D.N.Y. 2019); Williams v. Poulos, 801 F. Supp. 867, 874 (D. Me. 1992) ("Invasion of privacy, like injury to reputation, inflicts damage which is . . . difficult to quantify[.]"). That irreparable harm from disclosure is acute here because any IRS information shared with third-party data companies may be retained, integrated into their systems, and made available for civil immigration enforcement purposes. Second, from that disclosure, Plaintiffs run the real risk of serious downstream enforcement consequences. As this Court has recognized, incomplete and inaccurate taxpayer information may lead to misidentification, exposing

members and their families to wrongful identification, detention, or deportation. Doc. No. 75 at 39–40. Once confidential information has been disseminated, incorporated into enforcement systems, or relied upon to take enforcement action, those harms cannot readily be undone.

### C. Plaintiffs are likely to succeed on the merits for the purposes of granting limited discovery.

Plaintiffs have already demonstrated that they are likely to succeed on the merits of their claims under the Administrative Procedure Act ("APA") against the IRS Defendants, ICE, and DHS. See Jimenez, 326 F.R.D. at 361. This Court determined that the interagency data sharing constitutes final agency action, the government's actions violated § 6103 and were arbitrary and capricious, and "no other adequate remedy is available." Doc. No. 75 at 26–27, 29–36. IRS's and ICE's most recent violations of § 6103 regarding ICE's handling, use, and storage of taxpayer information further confirm that this Court's analysis was correct and emphasizes the need for compliance discovery based on Defendants' actions after the Order. See Doc. No. 75 at 36. ICE Defendants' current appeal of the injunction does not affect this Court's equitable authority to proceed with the merits of this case, including discovery. See Contour Design, Inc. v. Chance Mold Steel Co., Ltd., 649 F.3d 31, 34 (1st Cir. 2011) ("An appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending . . . ."); United States v. Fields, 2017 WL 4355973, at *1 (D.N.H. Sept. 22, 2017) ("[T]he court retains jurisdiction to enforce its order while the appeal is pending.").

Now there is a real concern that Defendants are carrying out those same unlawful actions through third parties. DHS and ICE have shared confidential identifying information obtained from other federal agencies with third-party contractors. They have tried to use that information to serve the government's civil immigration priorities and may have purchased protected

confidential information from those third-party companies. While the third parties themselves are not subject to § 6103, there is substantial likelihood that Defendants are using their contracts with these third parties to skirt § 6103 requirements. This Court has the authority to confirm Defendants' compliance with its Order.

**D. Compliance discovery would not unduly burden Defendants or third parties.**

Plaintiffs seek tailored discovery from DHS, ICE, and third parties Palantir and ThunderCat to determine whether Defendants have complied with the Court's Order. The discovery sought is not directed to the merits of Plaintiffs' claims; rather, it is limited to information necessary to determine whether ICE shared protected taxpayer information with third-party contractors, whether ICE purchased ITIN data sourced from IRS records, and whether Defendants can access protected taxpayer information from these contractors. See Wilcox Indus. Corp. v. Hansen, 279 F.R.D. 64, 71 (D.N.H. 2012) (no undue burden where the tailored discovery provides "a frame of reference . . . to determine the degree to which it is directed" at discrete issues).

These tailored requests would not unduly burden Defendants or the third parties. From DHS and ICE, Plaintiffs seek documents reflecting the nature and scope of their recent contracts with Palantir and ThunderCat, the data exchanged as a result of those contracts, and any communications related to that data exchange. Plaintiffs seek from Palantir and ThunderCat their unique records concerning the source, receipt, transmission, access, use, storage, retention, deletion of IRS data accessible to DHS or ICE, including information sufficient to identify the source of ThunderCat's ITIN data. Obtaining these records from Palantir and ThunderCat will be expeditious because they concern the third parties' own systems and practices and are held exclusively by each third party. See In re New England Compounding Pharmacy, Inc. Prods. Liability Litig., No. MDL 13-2419-FDS, 2013 WL 6058483, at *7 (D. Mass. Nov. 13, 2013);

Strike 3 Holdings, Inc. v. Doe, 678 F. Supp. 3d 201, 206-07 (D. Mass. 2023) (third-party discovery is appropriate where third-party is the "only realistic means" to obtain information). Third-party compliance discovery is thus appropriate under these circumstances.

### E. Plaintiffs' request is not premature.

Plaintiffs' request for compliance discovery is "not premature." Four Women Health Servs., LLC v. Abundant Hope Pregnancy Res. Ctr., Inc., 2024 WL 4425558, at *3 (D. Mass. Oct. 4, 2024). Several media reports and court filings suggest that ICE is using third-party companies either to obtain protected IRS information or has shared information disclosed pursuant to the IRS-ICE data sharing arrangements with third-party companies. Plaintiffs should not have to wait for further evidence of a violation before seeking tailored discovery to determine whether such a violation is occurring.

## V. CONCLUSION

Plaintiffs respectfully request that this Court grant leave to obtain compliance discovery from DHS, ICE, and third parties Palantir and ThunderCat.

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated: September 10, 2026

By: */s/ Leo Lam*

Leo L. Lam (*Admitted Pro Hac Vice*)
llam@keker.com
Laurie Carr Mims (*Admitted Pro Hac Vice*)
lmims@keker.com
Sarah Salomon (*Admitted Pro Hac Vice*)
ssalomon@keker.com
Charlotte Kamai (*Admitted Pro Hac Vice*)
ckamai@keker.com
Kelly M. Hernandez (*Admitted Pro Hac Vice*)
khernandez@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

ASIAN LAW CAUCUS
Joshua Rosenthal (*Admitted Pro Hac Vice*)
joshr@asianlawcaucus.org
Dorothy Chang (*Admitted Pro Hac Vice*)
dorothyc@asianlawcaucus.org
55 Columbus Avenue
San Francisco, CA 94111
Telephone: (415) 896-1701
Facsimile: (415) 896-1702

GREATER BOSTON LEGAL SERVICES
Luz Arevalo BBO 564011
larevalo@gbls.org
Angela Divaris (*Admitted Pro Hac Vice*)
adivaris@gbls.org
Gary Klein BBO 560769
gklein@gbls.org
197 Friend Street
Boston, MA 02114
Telephone: (617) 461-4944

Attorneys for Plaintiffs COMMUNITY ECONOMIC DEVELOPMENT CENTER OF SOUTHEASTERN MASSACHUSETTS, NATIONAL PARENTS UNION, NATIONAL KOREAN AMERICAN SERVICE AND EDUCATION CONSORTIUM, & UNDOCUBLACK NETWORK

**LOCAL RULE 7.1(a)(2) CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), counsel for Plaintiffs certify that they have sent counsel for all Defendants notice of this motion and they have met and conferred in good faith with Defendants' counsel concerning this motion, in an effort to narrow or resolve the issues before filing.

*/s/ Leo Lam*
LEO LAM

**CERTIFICATE OF SERVICE**

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail.

Dated: September 10, 2026

*/s/ Leo Lam*
LEO LAM