**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

COMMUNITY ECONOMIC DEVELOPMENT CENTER OF SOUTHEASTERN MASSACHUSETTS *et al.*,

*Plaintiffs*,

*v.*

SCOTT BESSENT, in his official capacity as Acting Commissioner of the Internal Revenue Service, *et al.*,

*Defendants*.

No. 1:25-cv-12822-IT

**MOTION FOR EXEMPTION FROM DISCLOSURE**

As ordered by this Court in its most recent Memorandum & Order, *see* ECF No. 113, Defendant Social Security Administration (SSA) has completed its administrative record for this case with over 200 additional documents. In complying with the Court's Order, SSA has identified multiple documents reflecting "inter- and intra-agency communication[s] SSA considered, either directly or indirectly in deciding to share noncitizen data with DHS in 2025." *Id.* at 10. Defendants have determined that those documents are privileged and thus should not be included in the administrative record. As previously ordered by the Court, *see* ECF No. 100 at 2, Defendants met and conferred with Plaintiffs to seek consensus that these documents are not part of the record. Defendants provided a privilege log describing the documents and identifying the relevant privileges that apply. Plaintiffs do not agree that these documents are exempt from disclosure, forcing Defendants to "promptly file a motion for exemption from disclosure," as required by the Court. *Id.* The attached privilege log explains why these emails are privileged and should

therefore be excluded from the administrative record. Defendants can also submit the documents to the Court for its *in camera, ex parte* review.

**BACKGROUND**

This case challenges alleged information sharing between Immigration and Custom Enforcement (ICE) and SSA and the Internal Revenue Service (IRS). *See generally* Am. Compl., ECF No. 73. The Court previously issued a preliminary injunction against ICE and IRS, *see* ECF No. 75 at 42, but denied Plaintiffs' request for a preliminary injunction against SSA, *see* ECF No. 72 (Electronic Order). Defendants subsequently moved to dismiss the Amended Complaint, *see* ECF No. 81, and Plaintiffs moved to compel the expedited production of an administrative record from all Defendants, *see* ECF Nos. 84, 86. The Court granted the latter motion as to SSA on May 11, 2026. *See* ECF No. 100. As part of its Order, the Court instructed Defendants on how to raise privilege issues as to the administrative record:

> If Defendants take the position that any document that would otherwise be part of the AR is subject to a privilege, Defendants shall meet and confer with Plaintiffs to attempt to resolve the issue. If such conference is unfruitful, Defendants shall promptly file a motion for exemption from disclosure.

ECF No. 100 at 2.

SSA produced an administrative record on May 29, 2026. *See* ECF No. 103. Plaintiffs subsequently moved "to complete" that record to include a variety of materials. *See* ECF No. 108. The Court granted that motion in part on August 24, 2026, and ordered Defendants to complete the record by September 14 "with any agency correspondence and/or materials relevant to (1) all inter- and intra-agency communication SSA considered, either directly or indirectly, in deciding to share noncitizen data with DHS in 2025, inclusive of materials relevant to SSA's decision to exclude employer and income information from the February 2025 transfer, despite its earlier

intention to do so; and (2) DOGE's participation in SSA's data sharing with DHS." ECF No. 113 at 10–11.

SSA filed the completed administrative record on September 14. *See* ECF No. 125-1. While compiling those materials, SSA identified a handful of communications and related documents that SSA believes are privileged under the attorney-client privilege and the deliberative process privilege and protected under the attorney work product doctrine. Pursuant to this Court's order for privilege determinations, *see* ECF No. 100 at 2, Defendants sent a privilege log to Plaintiffs and asked them to confirm whether they agree that these emails are privileged and should not be disclosed as part of the administrative record. *See* Ex. 1 ("Privilege Log"). On September 14, Plaintiffs' counsel responded via email indicating their disagreement that the documents listed in the privilege log should be exempt from disclosure. *See* Ex. 2, Email from C. Kamai to C. Dibblee. Defendants therefore file this motion to except those documents from disclosure as part of the administrative record.

## LEGAL STANDARD

The documents at issue are protected by the attorney-client privilege, the attorney work product doctrine, and the deliberative process privilege. The deliberative process privilege "protect[s] agencies from being forced to operate in a fishbowl." *Roe v. Mayorkas*, 2024 WL 5198705, at *3 (D. Mass. Oct. 2, 2024) (citation omitted). It covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (citations omitted). A document must be both predecisional and deliberative to qualify for protection under the deliberative process privilege. *See Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992).

"The attorney-client privilege is well-established and its rationale straightforward. By safeguarding communications between client and lawyer, the privilege encourages full and free discussion, better enabling the client to conform to the dictates of the law and to present legitimate claims and defenses if litigation ensues." *In re Keeper of Records (Grand Jury Subpoena Addresses to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003). The privilege protects "communications that are confidential and are made for the purpose of seeking or receiving legal advice." *Id.* "The objectives of the attorney-client privilege apply to governmental clients." *Neece v. City of Chicopee*, 106 F.4th 83, 99 (1st Cir. 2024).

The attorney work product doctrine "protects work done by an attorney in anticipation of, or during, litigation from disclosure to the opposing party." *ACLU of Mass., Inc. v. U.S. Immig. and Customs Enforcement*, 686 F. Supp. 3d 11, 19 (D. Mass. 2023). This doctrine "protect[s] the integrity of the adversary process by providing a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Id.* (citation omitted). As the doctrine pertains to government attorneys, a document is "deemed prepared for litigation" if it "can be fairly said to have been prepared or obtained *because of* the prospect of litigation." *State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 68 (1st Cir. 2002) (citation omitted).

## ARGUMENT

### I. The Privileged Documents Are Not "Part Of" The Administrative Record.

As an initial matter, Defendants respectfully reserve their objection to any privileged materials being included in the administrative record. Multiple courts have recognized that "privileged materials are ordinarily not part of the administrative record." *Roe*, 2024 WL 5198705, at *9; *see also Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1458 (1st Cir. 1992) (not including in administrative record materials protected by attorney-client privilege and

deliberative process privilege); *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (Documents covered by deliberative process privilege "are not part of the administrative record to begin with." (citation omitted)); *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 445 (9th Cir. 2024) (same). Based on these authorities, privileged documents like the ones identified in Defendants' privilege log are not "part of the AR" and thus should not be the subject of a motion for exemption from disclosure. ECF No. 100 at 2.

These authorities also place the burden on the party seeking to include privileged materials, as would normally occur under the Federal Civil Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 26(b)(5). Indeed, a Court in the District of Columbia last year initially ordered a procedure almost identical to the "motion for exemption for disclosure" procedure that this Court has ordered. *See All. for Retired Americans v. Bessent*, 2025 WL 2576530, at *1 (D.D.C. Mar. 4, 2025). After the Government's motion to clarify, the Court permitted the Government to withhold documents from the administrative record on the basis of privilege, without seeking allowance from the Court beforehand. *See id.* at *2. The Court should adopt a similar procedure here.

Defendants nevertheless understand this Court to be ordering them to first file a motion for exemption from disclosure for all privileged materials, and they file this motion in compliance with those procedures. As explained below, Defendants' withholdings are valid.

## II. All Documents Are Protected From Disclosure By The Deliberative Process Privilege.

The deliberative process privilege properly applies to all documents in question. These documents are predecisional because they precede the adoption of the August 27 letter from SSA to DHS regarding the provision of information on a monthly basis. *See* ECF No. 73-4 ("SSA Letter"). Each document is dated before that date, thus making these documents "antecedent to the adoption" of the SSA Letter. *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d

867, 884 (1st Cir. 1995); *see also In re Pharm. Indus. Average Wholesale Price Ltiig.*, 254 F.R.D. 35, 39 (D. Mass. 2008) (a document is predecisional if it is "prior to the adoption of the agency policy"). The descriptions in the privilege log also make clear that these emails arose before the SSA Letter. Multiple descriptions refer to a "draft" agreement that ultimately became the SSA Letter, *see* Docs. 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, and others describe how the draft agreement itself was attached to some of these emails, *see* Docs. 2-A, 5-A., 9-A, 10-B.[1] That these drafts and the emails relating to these drafts were sent before the final Letter indicates that they were "part of a clear process leading to" a final decision, which was the Letter. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980); *accord U.S. Fish and Wildlife Serv.*, 592 U.S. at 269 ("A draft is, by definition, a preliminary version of a piece of writing subject to feedback and change.").

Plaintiffs can hardly dispute the predecisional nature of the documents. Plaintiffs' Amended Complaint asks the Court to set aside the SSA Letter, *see* Am. Compl. ¶ 198, and alleges that "implementation of disclosing taxpayer information"—including through the SSA Letter—is itself a final agency action, *id.* ¶ 196. These documents predate that action.[2]

These documents are deliberative as well as pre-decisional because they are "related to the policy-making process." *Texaco*, 60 F.3d at 887. SSA personnel used these documents to, for

---

[1] Cites to a numbered document are cites to the entry for that document in the privilege log, attached as Exhibit 1.

[2] Defendants do not concede that the SSA Letter is a final agency action reviewable under the APA. *See* Hr'g Tr. at 15:9-16:20 (Government counsel arguing that the SSA letter is not a final agency action but also acknowledging that First Circuit precedent appears to require provision of an administrative record). Based on that argument, Defendants technically could have produced nothing regarding the SSA Letter in response to the Court's order to complete the administrative record. But out of an abundance of caution and to avoid further motions practice, Defendants have identified these materials, which are also arguably are the kind of "inter- and intra-agency communication[s] SSA considered, either directly or indirectly, in deciding to share noncitizen data with DHS in 2025." Mem. & Order, ECF No. 113 at 8.

example, "coordinat[e] input on the draft data exchange agreement," Doc. 1, "discuss[] legal advice on a provision within the draft data exchange agreement," Doc. 3, provide "comments and edits" on draft agreements, Doc. 5-A, "deliberat[e] on the draft agreement with DHS," Doc. 8, and provide "advice" on and "analysis" of the agreement, *e.g.*, Docs. 2-A, 4, 6, 10. Based on these descriptions, agency personnel used these documents to have "frank discussions of legal or policy matters," *EPA v. Mink*, 410 U.S. 73, 87 (1973), including by offering "statements of opinion regarding final policy," *United States v. Cicilline*, 2008 WL 427286, at *1 (D. Mass. Feb. 13, 2008). These documents thus contain deliberations the disclosure of which would stifle candid communication between agency personnel. *See Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (explaining basis for deliberative process privilege).

The deliberative process privilege can "be struck if the need for disclosure outweighs" the "interest in non-disclosure." *Roe*, 2024 WL 5198705, at *5. To make that determination, courts in this District engage in a balancing test that considers "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *In re Pharm.*, 254 F.R.D. at 40.

All of these factors favor protection of the documents at issue here. As to the first factor, these documents are relevant only to the SSA Letter, which has already been produced publicly. Unlike other cases where courts have deemed the privilege overcome, this case does not turn on whether a policy exists at all, *see Roe*, 2024 WL 5198705, at *5, or whether the Government has knowledge of particular facts, *see In re Pharm.*, 254 F.R.D. at 41. The documents are not relevant to whether SSA acted legally because they reflect a back and forth among staff, not the

decisionmaker's rationale. Although the Court found the original SSA administrative record to be deficient, the agency has now produced a supplemental administrative record spanning more than 200 pages, in addition to the previous administrative record. There is a wealth of non-privileged evidence that can be used to decide whether SSA acted unlawfully, and so the second factor favors disclosure.

The fifth factor also supports maintaining privilege. A purpose of the deliberative process privilege is to "enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8–9. For that reason, Defendants have "a strong institutional interest in maintaining the candid nature" of deliberations between agency counsel. *Roe*, 2024 WL 5198705, at *6. That interest is particularly strong here, where the documents in question contain intra- and inter-agency deliberations between agency personnel and even legal advice regarding agency policies. If such communications are made public, agency personnel will be very timid in future deliberations. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) ("[E]xperience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisonmaking process."). The public interest in protecting "frank discussion of legal or policy matters in writing" requires that these documents be protected from disclosure.[3] *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 141 (D. Mass. 2014).

[3] As to the third and fourth factors, Defendants acknowledge the seriousness of this litigation and the role of the Government in it. But Defendants do not understand those facts to automatically favor disclosure.

**III. All Documents Except Nos. 1, 1-A, 5, and 5-A Are Protected By The Attorney-Client Privilege.**

The attorney-client privilege also protects from disclosure all documents except Docs. 1, 1-A, 5, and 5-A. Documents "protected by the attorney-client privilege" as these are should not be "made part of the administrative record." *Town of Norfolk*, 968 F.2d at 1458.

The attorney-client privilege protects "those communications that are confidential and are made for the purpose of seeking or receiving legal advice." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011). SSA has identified a plethora of documents, catalogued in the privilege log, that contain or include "legal advice." Docs. 2-A, 3-A, 3-B, 4-A, 5-A, 6, 8-A, 10. These documents fall plainly under the privilege's protection. Other documents are emails between SSA lawyers and policy staff "deliberating aspects of the draft agreement" between SSA and DHS. Doc. 9, providing "analysis and opinions on the draft letter of agreement," Doc. 12, or responding to SSA lawyers' "request[s] for certain information for ongoing analysis and deliberations," Doc. 8. These communications are privileged because they clearly contain legal advice between clients and lawyers, as the attorney-client privilege protects "the giving of information to the lawyer" by a client "to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).

Other documents consist of communications within SSA's Office of General Counsel for the purpose of advising SSA, those lawyers' client. *See United States v. Sutton*, 2022 WL 3340046, at *2 (D.D.C. Aug. 12, 2022) ("In the governmental context, the agency is the client and the agency's lawyers are the attorneys for the purposes of attorney-client privilege." (citation omitted)). Docs. 3, 4, 7, 7-A through 7-I, and 10 are communications between lawyers containing "legal analysis" related to the SSA Letter. These communications are protected because they were made for the purpose of facilitating legal advice to a client. *See, e.g.*, *Sutton*, 2022 WL 3340046,

at *4 (holding that communications between government co-counsel are protected by the attorney-client privilege). Finally, multiple documents on the privilege log are drafts of the SSA Letter containing comments from SSA attorneys. *See* Docs. 8-A, 9-A, 10-B, 12-A, 12-B, 12-C. Such "draft memoranda containing legal advice, or requests for legal advice, [ ] fall squarely within the scope of privileged communications." *United States ex rel. Long v. Janssen Biotech, Inc.*, 788 F. Supp. 3d 167, 172 (D. Mass. 2025).

Based on their email response to Defendants' counsel, Plaintiffs do not believe that "documents exchanged between counsel of different agencies" should be privileged. Ex. 2. Even if true, this objection covers only a small number of documents. With one exception, the documents over which SSA has asserted the attorney-client privilege are internal to SSA. Some of those communications are between SSA counsel, while others include non-attorneys, but they are all internal to SSA, and therefore confidential to that agency and its relationship with its own lawyers.

The one exception is Doc. 11, which is an email between SSA's Deputy General Counsel and an Associate Counsel in the White House Counsel's Office "discussing the draft data exchange agreement with DHS." This disclosure does not waive the privilege because it occurred under the common interest doctrine. That doctrine prevents waiver of attorney-client privilege upon disclosure of privileged communications to a third person "who has a common legal interest with respect to these communications[.]" *Cavallaro v. United States*, 284 F.3d 236, 250 (1st Cir. 2002). When government agencies "have a substantial identity of legal interest in a particular matter, the attorneys for each agency can be treated as representing both agencies jointly." *Animal Welfare Inst. v. NOAA*, 370 F. Supp. 3d 116, 133 (D.D.C. 2019). Here, SSA and the White House "shared a common legal interest in the proper administration" of data security laws and procedures related

to the sharing of information between SSA and DHS. *Id.* In addition, even if the common interest doctrine does not apply, communications from one agency to another for the purpose of requesting legal advice are protected by the attorney-client privilege. *See Cause of Action Inst. v. U.S. Dep't of Just.*, 330 F. Supp. 3d 336, 349–51 (D.D.C. 2018). Doc. 11 includes SSA "requesting legal advice" from White House Counsel regarding SSA's legal obligations related to the data sharing agreement. Doc. 11 is therefore protected under the attorney-client privilege despite being a communication outside of SSA.

### IV. All Documents Except Nos. 5 and 5-A Are Protected By The Work Product Doctrine.

The work product doctrine protects from disclosure an attorney's work product, which "is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible ways." *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). The documents at issue here contain multiple forms of attorney work product, including "legal advice and analysis," Doc. 2-A; "legal analysis for consideration," Docs. 3, 4, 7, *see also* Doc. 12 ("analysis and opinions"); an "opinion" from the SSA General Counsel, Doc. 7-I, deliberations on various topics associated with the agreement, *see* Docs. 9, 10, 11, comments from SSA attorneys, *see* Docs. 8-A, 9-A, 10-B, 12-A, 12-B, 12-C, and "legal research prepared by an SSA attorney," Doc. 10-A. As these descriptions show, the communications at issue contain the mental impressions and opinions of attorneys that are traditionally considered work product.

These communications were also "prepared or obtained because of the *prospect of litigation*." *Miss. Pub. Emps. Retirement Sys. v. Boston Sci. Corp.*, 649 F.3d 5, 31 n.24 (1st Cir. 2011) (emphasis added); *see Maine*, 298 F.3d at 68 (same). Media reports as early as April 2025 generated much public attention and signaled large litigation risk for Defendants surrounding information sharing. *See, e.g.*, Will Weissert and Fatima Hussein, *Social Security lists thousands*

*of living immigrants as dead to prompt them to leave, AP sources say*, AP (Apr. 10, 2025), https://apnews.com/article/living-immigrants-dead-social-security-numbers-trump-c10737cbe36e3108fb244a555777d880#. Government attorneys would have known about that risk or that the Government had already been subject to multiple lawsuits about alleged information sharing and alleged violations of the Privacy Act. *See All. for Retired Americans v. Bessent*, No. 1:25-cv-313 (D.D.C. filed Feb. 3, 2025); *AFL-CIO v. Dep't of Labor*, No. 1:25-cv-339 (D.D.C. filed Feb. 5, 2025); *New York v. Trump*, No. 1:25-cv-1144 (S.D.N.Y. filed Feb. 8, 2025); *Nat'l Treasury Emps. Union v. Vought*, No. 1:25-cv-280 (D.D.C. filed Feb. 9, 2025); *Am. Fed'n of Teachers v. Bessent*, No. 8:23-cv-430 (D. Md. Filed Feb. 10, 2025); *Nemeth-Greenleaf v. OPM*, No. 1:25-cv-407 (D.D.C. filed Feb. 11, 2025); *California, et al. v. Dep't of Health and Human Servs.*, No. 3:25-5536 (N.D. Cal. filed July 1, 2025). They thus prepared these communications knowing that SSA would likely be sued, as indeed it was. Such materials prepared "for any litigation or trial" by "a party to the subsequent litigation" are protected by the work product doctrine. *United States v. Textron Inc. and Subsidiaries*, 577 F.3d 21, 29 (1st Cir. 2009) (quoting *FTC v. Grolier Inc.*, 462 U.S. 19, 25 (1983)).

## CONCLUSION

For all the reasons stated above, Defendants request an order exempting the documents set forth in SSA's privilege log from inclusion in the administrative record.

September 22, 2026

*Respectfully submitted,*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director

Federal Programs Branch

*/s/ Christian Dibblee*
CHRISTIAN DIBBLEE
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-5980
Email: Christian.r.dibblee@usdoj.gov

*Counsel for Defendants*

**LOCAL RULE 7.1(a)(2) CERTIFICATION**

I, Christian Dibblee, hereby certify that on September 12 and 14, 2026, I met and conferred in good faith with Plaintiffs' counsel about the subject matter of this motion in an effort to narrow or resolve the issues filing this motion.

*/s/ Christian Dibblee*
CHRISTIAN DIBBLEE

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I, Christian Dibblee, hereby certify that on September 22, 2026, I electronically filed the foregoing using the Court's CM/ECF system, which automatically serves this document upon all counsel of record, in keeping with Local Rules 5.2 and 5.4.

*/s/ Christian Dibblee*
CHRISTIAN DIBBLEE

*Counsel for Defendants*