UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| COMMUNITY ECONOMIC DEVELOPMENT CENTER OF SOUTHEASTERN MASSACHUSETTS; NATIONAL PARENTS UNION; NATIONAL KOREAN AMERICAN SERVICE AND EDUCATION CONSORTIUM; UNDOCUBLACK NETWORK, INC., | * | |
| Plaintiffs, | * | |
| v. | * | |
| SCOTT BESSENT, Former Acting Commissioner of the Internal Revenue Service and Secretary of the Treasury[1]; INTERNAL REVENUE SERVICE; DEPARTMENT OF TREASURY; FRANK BISIGNANO, Commissioner of the Social Security Administration; SOCIAL SECURITY ADMINISTRATION; DAVID J. VENTURELLA, Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement[2]; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MARKWAYNE MULLIN, Secretary of Homeland Security[3]; DEPARTMENT OF HOMELAND SECURITY, | * | Civil Action No. 1:25-cv-12822-IT |
| Defendants. | * | |

MEMORANDUM & ORDER

September 30, 2026

TALWANI, D.J.

---

[1] The Internal Revenue Service reports that Scott Bessent's service as Acting Commissioner under the Federal Vacancies Reform Act has expired, that he no longer serves in that capacity, and that the Secretary retains the authority and responsibility to perform the functions and duties of the vacant office. See Update on IRS Commissioner position, Internal Revenue Service (Mar. 13, 2026), https://www.irs.gov/newsroom/update-on-irs-commissioner-position.

[2] The court substitutes David J. Venturella, Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement for former Acting Director Todd M. Lyons pursuant to Federal Rule of Civil Procedure 25(d).

[3] The court substitutes Markwayne Mullin for former Secretary of Homeland Security Kristi L. Noem pursuant to Federal Rule of Civil Procedure 25(d).

Plaintiffs,[4] four community organizations with members based in Massachusetts and across the country, challenge federal agencies' entry into and implementation of data-sharing agreements, which Plaintiffs contend include taxpayer data, subject to the privacy protections of the Tax Reform Act of 1976. See 26 U.S.C. § 6103. Pending before the court is the Motion to Dismiss Amended Complaint ("Motion to Dismiss") [Doc. No. 81] filed by Defendants Internal Revenue Service ("IRS"), a bureau within the Department of the Treasury; Social Security Administration ("SSA"); and Immigration and Customs Enforcement ("ICE"), a component within the Department of Homeland Security ("DHS") (collectively, "Defendants").

## I. Background

Briefly,[5] Plaintiffs allege that, pursuant to President Trump's immigration policy agenda, in February 2025, ICE requested that IRS provide ICE with addresses for noncitizen taxpayers[6] with a final order of removal. Am. Compl. ¶¶ 7–8 [Doc. No. 73]. Following negotiation around the request, the parties entered into a Memorandum of Understanding on April 7, 2025, see Am.

---

[4] Plaintiffs are Community Economic Development Center of Southeastern Massachusetts ("CEDC"), a community-development organization based in New Bedford, Massachusetts, that works with residents and businesses to develop and improve the local economy and provides tax assistance and immigration services counseling to noncitizens, see Am. Compl. ¶¶ 22–23 [Doc. No. 73]; the National Parents Union ("NPU"), a nationwide organization advocating to "improve the lives of children, families, and communities," including advocating for expanding the Child Tax Credit to immigrant families, see id. ¶¶ 24–25; the National Korean American Service and Education Consortium ("NAKASEC"), a national organization that advocates for Korean and Asian Americans and immigrants, see id. ¶ 26; and the UndocuBlack Network ("UBN"), a nonprofit dedicated to advancing the rights and well-being of Black immigrant communities, see id. ¶ 27.

[5] For a fulsome accounting of the factual background and the parties to this action, see the court's prior Feb. 5, 2026 Memorandum and Order 1–22 [Doc. No. 75].

[6] IRS allows eligible noncitizens to file their taxes under an Individual Taxpayer Identification Number ("ITIN"). See Am. Compl. ¶ 51 [Doc. No. 73] (citing 26 C.F.R. § 301.6109-1(b)(2), (d)(3)). Noncitizens who are authorized to work but not eligible for a Social Security Number ("SSN"), are permitted to file under ITINs. See id. ITINs constitute confidential taxpayer information. See id. ¶ 52 (citing 60 Fed. Reg. 30211, 30213 (June 8, 1995)).

Compl., Ex. A 12 [Doc. No. 73-1] (the "IRS-ICE MOU"), which the parties worked to implement throughout the summer of 2025, culminating in a disclosure by IRS to ICE of 47,000 taxpayer addresses, see Am. Compl. ¶ 11 [Doc. No. 73].

Plaintiffs further allege that SSA disclosed the addresses of 98,000 noncitizen taxpayers to ICE in February 2025, and the personally identifying information, including addresses, of an additional 1,000 noncitizen taxpayers to DHS in March 2025. Id. ¶ 106. Finally, Plaintiffs allege that, on August 27, 2025, SSA and ICE entered into a further data-sharing arrangement, in which SSA agreed to provide information known to the agency for 50,000 noncitizens, on a monthly basis. Id. ¶ 13; see Am. Compl., Ex. D [Doc. No. 73-4] ("SSA-ICE Letter").

Shortly after filing their first Complaint [Doc. No. 1], Plaintiffs moved for a preliminary injunction, requesting that the court enjoin the data-sharing agreements between IRS and ICE and SSA and ICE. See Pls.' Mot. for Prelim. Inj. [Doc. No. 27]. Defendants opposed. See Opp'n to Mot. for Prelim. Relief [Doc. No. 39]. Following a hearing and after Defendants moved to dismiss, see Mot. to Dismiss [Doc. No. 69], the court denied Plaintiffs' motion for a preliminary injunction with respect to SSA's data-sharing with DHS, finding that, while Plaintiffs plausibly alleged that SSA had made a disclosure of noncitizen addresses to ICE, Plaintiffs failed to meet their evidentiary burden to show a likelihood of success on the merits of their claim that the shared information was derived from tax data, protected by 26 U.S.C. § 6103. See Jan. 27, 2026 Elec. Order [Doc. No. 72] (crediting the unrebutted declaration of an SSA employee, see Opp'n to Mot. for Prelim. Relief, Ex. B, at ¶ 4 [Doc. No. 39-2] ("Myers Decl.")).

Plaintiffs then filed an Amended Complaint [Doc. No. 73], incorporating IRS's administrative record filed in a parallel case before the D.C. District Court, see id. ¶ 10 n.3, as well as several declarations filed in this court in association with the preliminary injunction

motion. The court terminated Defendants' Motion to Dismiss [Doc. No. 69] as moot. Feb. 2, 2026 Elec. Order [Doc. No. 74].

Thereafter, the court granted Plaintiffs' motion for a preliminary injunction with respect to IRS's sharing of noncitizen addresses with DHS, finding it likely that IRS's implementation of the IRS-ICE MOU violated 26 U.S.C. § 6103. See Feb. 5, 2026 Mem. & Order [Doc. No. 75].[7] The court preliminarily enjoined ICE's use of the noncitizen data IRS disclosed in August 2025. Id. at 41–42.[8]

After the court's rulings on the preliminary injunction motion, Defendants moved to dismiss Plaintiff's Amended Complaint [Doc. No. 73], challenging Plaintiffs' standing and the merits of the various causes of action. See Defs.' Mot. to Dismiss [Doc. No. 81].

Plaintiffs then moved to compel expedited production of the agencies' administrative records. See Pls.' Mot. to Compel [Doc. No. 84]. Following a hearing on both Plaintiffs' Motion to Compel [Doc. No. 84] and Defendants' Motion to Dismiss [Doc. No. 81], the court granted Plaintiffs' motion in part and ordered the production of SSA's administrative record, finding production necessary to resolve Defendants' Motion to Dismiss [Doc. No. 81] as to the merits of Plaintiffs' claims under the Administrative Procedure Act ("APA"). See May 11, 2026 Order

---

[7] In the Feb. 5, 2026 Memorandum and Order [Doc. No. 75], this court interpreted 26 U.S.C. § 6103 largely in alignment with the court in Ctr. for Taxpayer Rts. v. IRS, No. 25-0457 (D.D.C. Nov. 21, 2025). That court reviewed IRS's August 2025 disclosure and preliminarily enjoined IRS's future implementation of the IRS-ICE MOU. See 815 F. Supp. 3d 1 (memorandum); 2025 WL 3257096 (order) (D.D.C. 2025). IRS appealed that court's injunction, which, upon a supplemented record, was affirmed by the United States Court of Appeals for the District of Columbia. See Ctr. for Taxpayer Rts. v. IRS, __ F.4th __, 2026 WL 2635380 (D.C. Cir. Sept. 8, 2026).

[8] Defendants have appealed the court's Feb. 5, 2026 Memorandum and Order [Doc. No. 75] and oral argument is scheduled for October 7, 2026. See Cmty. Econ. Dev. Ctr. of Se. Mass. v. Bessent, No. 26-1329 (1st Cir. 2026). Defendants have not requested a stay of the court's order, which remains in effect.

[Doc. No. 100].[9] The parties subsequently proposed and the court adopted a briefing schedule for dispositive motions as to Plaintiffs' APA claims against SSA. See Aug. 31, 2026 Elec. Order [Doc. No. 116].

For the reasons that follow, Defendants' Motion to Dismiss [Doc. No. 81] is DENIED pursuant to Federal Rule of Civil Procedure 12(b)(1), and DENIED in part and GRANTED in part pursuant to Rule 12(b)(6).

## I. Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction

### *A. Standard of Review*

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). To test the sufficiency of the pleading, a defendant can file a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and, to test the subject matter jurisdiction of the Court, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). "When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Katz v. Pershing, LLC, 806 F. Supp. 2d 452, 456 (D. Mass. 2011) (quoting Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995), aff'd, 672 F.3d 64 (1st Cir. 2012)).

When considering a motion to dismiss under Rule 12(b)(1), "the reviewing court must take all of plaintiff's allegations as true and must view them, along with all reasonable inferences

[9] After SSA produced a certified administrative record, see SSA Admin. R. [Doc. No. 103-1], the court granted in part Plaintiffs' Motion to Complete [Doc. No. 108] the record with all materials considered by SSA in its decision to share noncitizen data with DHS, see Aug. 24, 2026 Mem. & Order [Doc. No. 113]. SSA then filed a Supplemental Administrative Record [Doc. No. 125-1].

therefrom, in the light most favorable to plaintiff." Verlus v. Experian Info. Sols., Inc., No. 23-CV-11426-DJC, 2025 WL 836588, at *1 (D. Mass. Mar. 17, 2025) (quotation omitted).

*B. Discussion*

Defendants argue that Plaintiffs lack standing because their alleged injuries are neither sufficiently concrete nor tethered to agency action. Defs.' Mem. ISO Mot. to Dismiss 5–8 [Doc. No. 82].

"To [plead] Article III standing, a plaintiff must meet a familiar three-part test. '[A] plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" Wiener v. MIB Grp., Inc., 86 F.4th 76, 84 (1st Cir. 2023) (alteration in original) (quoting TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021)); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). "An injury is concrete if it 'actually exist[s]' and particularized if it 'affect[s] the plaintiff in a personal and individual way.'" Wiener, 86 F.4th at 84 (alteration in original) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 339–40 (2016)). Although "[t]he most obvious" concrete harms are tangible (e.g., physical or monetary), "[v]arious intangible harms can also be concrete." TransUnion LLC, 594 U.S. at 425. These include "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." Id. (citations omitted).

Here, Plaintiffs assert standing both in their own name, and on behalf of their members.

1. Organizational Standing

Organizational standing allows an organization to sue when, like an individual, it has "'alleged . . . a personal stake in the outcome of the controversy' as to warrant [its] invocation of

federal-court jurisdiction[.]" Louis v. Saferent Sols., LLC, 685 F. Supp. 3d 19, 32 (D. Mass. 2023) (quoting Havens Realty Corp. v. Coleman, 455 U.S. 363, 378–79 (1982)). An organization must "show that the defendant's actions cause a 'concrete and demonstrable injury to the organization's activities' that is 'more than simply a setback to the organization's abstract social interests.'" Id. (quoting Nat'l Ass'n of Consumer Advocs. v. Uejio, 521 F. Supp. 3d 130, 142 (D. Mass. 2021)). This is "'not a demanding standard,' as 'only a perceptible impairment of an organization's activities is necessary for there to be an injury in fact.'" Id. (quoting Nat'l Ass'n of Consumer Advocs., 521 F. Supp. 3d at 142).

Defendants contest Plaintiffs' assertion of organizational standing, arguing that "nothing about statutory inter-agency data-sharing remotely affects CEDC's credibility with its members[.]" Defs.' Mem. ISO Mot. to Dismiss 6 [Doc. No. 82]. However, CEDC has alleged that IRS's policy change affects CEDC's ability to appropriately counsel its members regarding their tax filing obligations. Am. Compl. ¶¶ 149–58 [Doc. No. 73]. Where CEDC previously assured its members that IRS was required by law and policy to protect the confidentiality of taxpayer filings, the inter-agency data-sharing and IRS's policy change has undermined CEDC's credibility and hampered CEDC's ability to provide accurate legal advice. See Webb v. Injured Workers Pharmacy, LLC, 72 F.4th 365, 372 (1st Cir. 2023) (explaining that "reputational harms" are sufficient injuries for standing purposes); see also Ctr. for Taxpayer Rts., 2026 WL 2635380, at *5 (explaining there was likely a cognizable injury for plaintiff pro bono tax clinic where "many taxpayers are no longer willing to engage with the [plaintiff] due to IRS's new [data-sharing] policy and that the policy has interfered with the [plaintiff's] ability to provide its pro bono or nominal fee representation services.") (quotation omitted). CEDC also has reported a decrease in membership and attendance based on the chilling effect caused by the inter-agency

data-sharing. Am. Compl. ¶¶ 157–60 [Doc. No. 73]. Finally, CEDC's decreased revenue, attributable to a 25% reduction in tax return filings via ITIN in 2025, comprises sufficient pecuniary injury, caused by agency action to share taxpayer identity information with ICE. Id. ¶¶ 157, 161; see Adams v. Watson, 10 F.3d 915, 924 (1st Cir. 1993) (recognizing that "a relatively small economic loss—even an identifiable trifle—is enough to confer standing[.]") (quotation omitted).

While Defendants assert that Plaintiffs have insufficiently alleged facts linking the inter-agency data-sharing to CEDC's decreased tax-filings and revenue, the court assesses standing consistent with the procedural juncture of the case. See Katz v. Pershing, LLC, 672 F.3d 64, 69 (1st Cir. 2012). At this stage, the court deems the connection between CEDC's injuries and the agency action sufficiently plausible to afford CEDC organizational standing. See id. at 72–73. And, given CEDC's plausible allegations, the court need not analyze the organizational standing of the three other Plaintiff organizations. Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 972 (1st Cir. 1993) ("Because we find that at least two of the plaintiffs . . . have standing to maintain each claim, we need not address the standing of all plaintiffs as to each claim.").

2. Associational Standing

An organization must meet the following three criteria to demonstrate associational standing: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977); see In re Fin. Oversight & Mgmt. Bd. for P.R., 110 F.4th 295, 308 (1st Cir. 2024). "The first two prongs of this test have constitutional dimensions; the third prong is prudential." Housatonic River Initiative v. EPA, 75

F.4th 248, 265 (1st Cir. 2023) (citing United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc., 517 U.S. 544, 554–58 (1996)); Back Beach Neighbors Comm. v. Town of Rockport, 63 F.4th 126, 129 n.2 (1st Cir. 2023)).

Defendants dispute that Plaintiffs' members have associational standing, arguing that "it is entirely speculative that the data of any of Plaintiffs' members has been, or will be, transferred," thereby failing to satisfy the "actual or imminent" component of an injury under Article III. Defs.' Mem. ISO Mot. to Dismiss 7–8 [Doc. No. 82] (citing Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)). Plaintiffs have alleged that several of its members both have final orders of removal[10] and also file tax returns, either through an SSN or ITIN. Am. Compl. ¶¶ 167, 176, 178 [Doc. No. 73]. Additionally, Plaintiffs have alleged that many of its members either file taxes through an SSN or share an address with a family member who has an SSN. Id. ¶¶ 167, 169, 178–80. Defendants characterize the likelihood that these members' data was shared in IRS's August 2025 disclosure as "sheer speculation[.]" Defs.' Mem. ISO Mot. to Dismiss 7 [Doc. No. 82]. The court disagrees that the alleged unlawful disclosure of Plaintiffs' members' data is speculative where substantial disclosure by SSA and IRS has already occurred and additional disclosure is contemplated. While the court is unable to determine the specific probability that the agency disclosures comprised Plaintiffs' members' information, such

[10] Defendants assert that Plaintiff NAKASEC lacks standing because it has failed to allege that any of its members have a final order of removal. Defs.' Mem. ISO Mot. to Dismiss 3–4 [Doc. No. 82]. However, NAKASEC has alleged that many of its members share the same surnames with other Korean immigrants, causing a heightened risk of misidentification in immigration enforcement. Am. Comp. ¶¶ 172–73 [Doc. No. 73]. It is plausible that, even if no NAKASEC member has a final order of removal, IRS, SSA, or ICE could confuse a NAKASEC member with a Korean immigrant who shares the same last name and either send or transfer identifying information. Additionally, where the remaining Plaintiff organizations have asserted that their members have final orders of removal, that no NAKASEC member may have a final order is not dispositive on the issue of Plaintiffs' injury-in-fact. See Wash. Legal Found., 993 F.2d at 972.

certainty is not required to plead an injury for standing purposes. See FEC v. Cruz, 596 U.S. 289, 298 (2022) ("For standing purposes, we accept as valid the merits of [plaintiff's] legal claims[.]"). Where Plaintiffs' allegation of an impermissible data disclosure by both IRS and SSA is consistent with the common law tort of intrusion upon seclusion, the court finds Plaintiffs' allegations sufficient for Article III injury-in-fact. Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. SSA, 172 F.4th 361, 368–69 (4th Cir. 2026) (citing TransUnion LLC, 594 U.S. at 425).

Therefore, the court denies Defendants' Motion to Dismiss [Doc. No. 81] pursuant to Federal Rule of Civil Procedure 12(b)(1), finding that Plaintiffs have both organizational and associational standing.

## II. Failure to State a Claim

### *A. Standard of Review*

In assessing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level[.]" Id. at 555 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

*B. Discussion*

1. APA Claims

Plaintiffs allege in Counts One and Two that DHS (through ICE), SSA, and IRS have violated the APA because the inter-agency data-sharing is both contrary to law and arbitrary and capricious. Am. Compl. ¶¶ 182–98 [Doc. No. 73].

Where the court will subsequently address Defendants' anticipated motion for summary judgment on Plaintiffs' APA claims against SSA with the benefit of the Administrative Record, see Aug. 31, 2026 Elec. Order [Doc. No. 116], Defendants' Motion to Dismiss [Doc. No. 81] those claims pursuant to Federal Rule of Civil Procedure 12(b)(6) is DENIED without prejudice.

As to Plaintiffs' APA claims regarding IRS's data-sharing with ICE, the Amended Complaint [Doc. No. 73] incorporates by reference the Administrative Record filed in the D.C. District Court in October 2025. Id. ¶ 10 n.3. As to IRS and ICE, the court finds that Plaintiffs have plausibly alleged that the August 2025 disclosure of noncitizen return information violated the APA.

**a. Reviewability**

Defendants argue that APA review is unavailable because IRS and ICE have not conducted final agency action. Defs.' Mem. ISO Mot. to Dismiss 8–9 [Doc. No. 82]. The APA limits judicial review to "final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704. An agency action is "final" if: (1) it marks the "'consummation' of the agency's decision-making process," and (2) the action has determined rights or obligations or will create legal consequences. Harper v. Werfel, 118 F.4th 100, 116 (1st Cir. 2024) (citing Bennett v. Spear, 520 U.S. 154, 177 (1997)). Here, Plaintiffs allege that, prior to February 2025, IRS refused requests for taxpayer return information pursuant to 26 U.S.C. § 6103(i)(2) if the

agency requested only taxpayer address information. Am. Compl. ¶ 125 [Doc. No. 73]. Plaintiffs further allege, and the Administrative Record reflects, that IRS and ICE entered into the MOU in which IRS agreed to provide ICE with taxpayers' self-reported addresses, citing 26 U.S.C. § 6103(i)(2) as legal authority. Am. Compl. ¶¶ 67–101 [Doc. No. 73]. Then, after formalizing additional procedures and processes, IRS shared over 47,000 taxpayer addresses with ICE. Id. ¶ 93. The agencies decided to engage in data-sharing of confidential taxpayer information with unprecedented scope and consummated that decision-making by transferring the data. See Ctr. for Taxpayer Rts., 2026 WL 2635380, at *6 ("Considerable evidence in the administrative record shows that the Data-Exchange Procedure marks the consummation and implementation of the IRS's decision-making process on how it discloses taxpayer information to ICE under the MOU."). And, the data transfer incurred the legal consequences of "bind[ing] IRS officials" and "reduc[ing] noncitizens' privacy rights in their tax returns." Id. at *10. Therefore, IRS's policy change and IRS's and ICE's implementation of the new policy constitute final agency action, reviewable in federal court under the APA. See Feb. 5, 2026 Mem. & Order 26–27 [Doc. No. 75].

Defendants also assert that the data-sharing is not reviewable under the APA because "Congress has created a different, comprehensive remedial scheme for violations of" the Internal Revenue Code. Defs.' Mem. ISO Mot. to Dismiss 10 [Doc. No. 82]. But the Internal Revenue Code only allows for retrospective relief, specifically damages and criminalizing unlawful disclosure by government employees. 26 U.S.C. §§ 7213(a)(1); 7431(a)(1), (c)(1)(B)(ii). APA review is available here because Plaintiffs have plausibly alleged that a prospective injunction is necessary to resolve their claimed injury, relief not otherwise provided by the Internal Revenue Code. See Ctr. for Taxpayer Rts., 2026 WL 2635380, at *10 ("[T]he Internal Revenue Code

offer[s] only 'doubtful and limited' relief, inadequate to remedy the harm plaintiffs here claim.") (quoting Bowen v. Massachusetts, 487 U.S. 879, 901 (1988)); Feb. 5, 2026 Mem. & Order 27–28 [Doc. No. 75].

**b. IRS**

Plaintiffs allege that IRS's policy change to respond to address-only requests and subsequent implementation of that policy violated the Internal Revenue Code and was arbitrary and capricious in violation of the APA. See Am. Compl. ¶¶ 133–48 [Doc. No. 73]. Defendants argue that Plaintiffs fail to state a claim under the APA because "the vast majority[11] of IRS's data-sharing complies with the exception codified at § 6103(i)(2)." Defs.' Mem. ISO Mot. to Dismiss 11 [Doc. No. 82].

However, as explained more fulsomely by this court previously, see Feb. 5, 2026 Mem. & Order 3–9, 30–32 [Doc. No. 75], IRS's provision of taxpayer addresses to ICE violates the Internal Revenue Code where the statute requires a requesting agency to identify an officer "personally and directly engaged" with a specific criminal investigation and proceeding. 26 U.S.C. § 6103(i)(1)(A). IRS "fail[ed] to implement th[is] statutory requirement," when IRS

[11] After the D.C. District Court preliminarily enjoined IRS's data-sharing with ICE, and this court preliminarily enjoined DHS's use of the taxpayer addresses, Defendants disclosed to the D.C. District Court, via an IRS official's declaration, that IRS had "determined that it provided last known addresses to ICE in instances in which" ICE's request contained address information for noncitizens that was "either incomplete or insufficient[ ]"—i.e. that the IRS had provided information in response to ICE's statutorily insufficient requests. Notice of Decl., Ex. A, ¶¶ 1, 11–14 [Doc. No. 79-1] ("Romo Decl."). The D.C. Circuit considered the supplementary declaration in affirming the District Court's injunction. Ctr. for Taxpayer Rts., 2026 WL 2635380, at *4. Defendants filed the same declaration with this court. See Romo Decl. [Doc. No. 79-1]. Accordingly, the court interprets Defendants' statement regarding the "vast majority" of IRS's compliance as an oblique reference to its subsequent admission that IRS expressly violated the Internal Revenue Code when it shared over 2,000 taxpayer addresses with ICE, despite ICE's failure to provide an address in its request for taxpayer data. Id. ¶ 16. However, given the current procedural posture, the court need not consider the additional assertions in the supplementary declaration.

transferred data in response to ICE's request for the addresses of 1.2 million taxpayers, despite ICE's inclusion of a single official purportedly so engaged. Ctr. for Taxpayer Rts., 2026 WL 2635380, at *11; see Am. Compl. ¶ 92 [Doc. No. 73]. Additionally, the alleged data-sharing violated the Internal Revenue Code where ICE's request excluded a "specific reason" for the taxpayer's confidential information, and only referred to the addresses as "potentially" relevant to ICE's "investigating or proving a violation under 8 U.S.C. § 1253(a)(1)." Ctr. for Taxpayer Rts., 2026 WL 2635380, at *12; see Ctr. for Taxpayer Rts., 815 F. Supp. 3d at 54 ("ICE's June 27 request is a generalized one. The 'reason' provided by ICE is more circular than specific[.]"); Am. Compl. ¶ 73 [Doc. No. 73]. In sum, Plaintiffs have plausibly alleged that IRS's provision of taxpayer addresses in response to ICE's deficient request violated the Internal Revenue Code in at least two distinct ways and is therefore contrary to law.

Plaintiffs have also plausibly alleged that IRS's decision to set aside its prior policy of rejecting address-only § 6103(i)(2) requests with no reasonable explanation and start sharing taxpayer addresses in violation of the Internal Revenue Code constitutes arbitrary and capricious agency action. See FCC v. Prometheus Radio Project, 592 U.S. 414, 423 (2021); FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009); Ctr. for Taxpayer Rts., 815 F. Supp. 3d at 55–58; Feb. 5, 2026 Mem. & Order 29–30 [Doc. No. 75].

**c. ICE**

With respect to ICE, Plaintiffs have plausibly alleged that the agency violated the Internal Revenue Code by allowing employees not "personally and directly engaged" with criminal investigations to possess and use confidential taxpayer data. Am. Compl. ¶ 101 [Doc. No. 73] (citing Notice of Suppl. Decls. Ex. B, ¶ 5 [Doc. No. 51-2] ("Fitzgerald Decl.")). As explained by this court previously, see Feb. 5, 2026 Mem. & Order 32–36 [Doc. No. 75], based on the record

before the court, ICE directed an internal technology office to receive and analyze the confidential data. See Fitzgerald Decl. ¶ 5 [Doc. No. 51-2]. That technology office cross-referenced the addresses provided by IRS with ICE's own data and "identified approximately 33,000 updated addresses." Id. Then, the technology office sent the data to another ICE component, the Enforcement Removal Operations group's Law Enforcement Systems and Analysis team. Id. Throughout this receipt and use, none of the ICE officials in possession of the confidential taxpayer data were "personally and directly engaged" with the criminal investigations of noncitizens' violations of 8 U.S.C. § 1253. See Am. Compl. ¶ 92 [Doc. No. 73] (citing Opp'n to Mot. for Prelim. Relief, Ex. C, ¶ 1 [Doc. No. 39-3] (McShane Decl.)); id. ¶ 101 (citing Fitzgerald Decl. ¶ 5 [Doc. No. 51-2]).

Further, Plaintiffs have plausibly alleged that ICE's implementation of the data-sharing arrangement was arbitrary and capricious where ICE failed to consider the reliance interests of noncitizen taxpayers who have long been assured by IRS that their tax data is confidential and will not be shared or used for immigration enforcement. Am. Compl. ¶ 197 [Doc. No. 73]; see Prometheus Radio Project, 592 U.S. at 423; Fox Television Stations, Inc., 556 U.S. at 515. Defendants argue that no arbitrary and capricious action can exist where agencies merely fulfill their statutory obligations. Defs.' Mem. ISO Mot. to Dismiss 15 [Doc. No. 82] (citing Centro de Trabajadores Unidos v. Bessent, 167 F.4th 1218 (D.C. Cir. 2026). But Defendants' reliance on the D.C. Circuit's decision in Centro is misplaced where the court in that case only facially analyzed the IRS-ICE MOU, and the D.C. Circuit later found the implementation of the MOU likely to violate the Internal Revenue Code. See Ctr. for Taxpayer Rts., 2026 WL 2635380, at **11–12.

Accordingly, Defendants' Motion to Dismiss [Doc. No. 81] is denied as to Counts One and Two because Plaintiffs have plausibly alleged APA claims against IRS and ICE.

2. First Amendment Claims

Plaintiffs allege that the inter-agency data-sharing inflicts a "chill on [the] petition, speech, and associational rights" of their members. Am. Compl. ¶ 205 [Doc. No. 73].

The First Amendment protects "the right of the people . . . to petition the Government for a redress of grievances." U.S. CONST. amend. I. "A petition conveys the special concerns of its author to the government and, in its usual form, requests action by the government to address those concerns." Borough of Duryea v. Guarnieri, 564 U.S. 379, 388–89 (2011) (citing Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 896–97 (1984)). "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives[.]" Borough of Duryea, 564 U.S. at 388; see Maggie McKinley, Lobbying and the Petition Clause, 68 Stan. L. Rev. 1131, 1152 (2016) (explaining that in drafting the First Amendment, the Founders believed that the Petition Clause "form[ed] the limiting principle on how the public could engage in the lawmaking process outside of the vote, in order to maintain republican principles and those mechanisms of representation carefully designed and detailed elsewhere in the Constitution.").

The right to petition is not limited to petitions lodged under formal procedures, see Brown v. Louisiana, 383 U.S. 131 (1966), and the right "extends to all departments of the Government," Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510–11 (1972). Historically, courts have interpreted the Petition Clause as protecting "the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." Borough of Duryea, 564 U.S. at 387.

Defendants do not dispute that Plaintiffs' noncitizen members are entitled to First Amendment protection. Defs.' Mem. ISO Mot. to Dismiss 16 [Doc. No. 82]; see Ozturk v. Trump, 779 F. Supp. 3d 462, 490 (D. Vt. 2025) ("First Amendment protections have long extended to noncitizens residing within the country." (citing Bridges v. Wixon, 326 U.S. 135 (1945))); Am. Ass'n of Univ. Professors v. Rubio, 802 F. Supp. 3d 120, 181–84) (D. Mass 2025) (outlining the scope of noncitizens' First Amendment rights). Instead, Defendants argue that filing a tax return is not protected petitioning activity. Defs.' Mem. ISO Mot. to Dismiss 16 [Doc. No. 82]. The court disagrees.

Defendants correctly note that "noncompliance with the federal tax laws is . . . afforded no protection under the First Amendment." Welch v. United States, 750 F.2d 1101, 1108 (1st Cir. 1985). The First Circuit has made clear that "penalizing an individual who seeks to claim frivolous tax deductions in no way hinders that individual from complaining to any government official about the way those taxes are spent." Id. at 1110 (citing Cupp v. Comm'r of Internal Revenue, 65 T.C. 68, 83–84 (1975), aff'd, 559 F.2d 1207 (3d Cir. 1977)). But the First Circuit's rejection of First Amendment claims against the IRS is limited to examples where taxpayers sought to avoid paying taxes or tax-related fines. Id. at 1108 (holding that the IRS's imposition of penalties for filing frivolous income tax returns did not violate taxpayers' First Amendment rights).

Plaintiffs' members, in contrast, "include immigrant taxpayers who have consistently filed tax returns and want to continue following the law, but fear doing so," due to Defendants' data-sharing. Am. Compl. ¶ 15 [Doc. No. 73]. For example, NPU has alleged that one of its members "is owed a substantial tax refund for the 2025 tax year, but fears that if he files taxes with his current address, the IRS will share that information with ICE." Id. at ¶ 176. The Internal

Revenue Code requires that a taxpayer file a tax return, and then timely file an administrative refund claim, before suing the IRS in federal court for a refund of a tax overpayment. 26 U.S.C. §§ 6511(a); 7422(a). Accordingly, Plaintiffs have plausibly alleged at least some members are fearful to resolve the legal dispute of an alleged tax overpayment with the IRS because of Defendants' conduct. See Borough of Duryea, 564 U.S. at 387. Defendants' data-sharing chills Plaintiffs' members from pursuing a necessary pathway to legal resolution to adjudicate overpayments. See id. Given the procedural posture, the court finds Plaintiffs' allegations sufficient to sketch out a Petition Clause claim and Defendants' Motion to Dismiss [Doc. No. 81] is denied as to Count Three of Plaintiffs' Amended Complaint [Doc. No. 73].[12]

3. Ultra Vires Claims

Plaintiffs allege that Defendants' data-sharing is *ultra vires*, in excess of IRS, SSA, and ICE's statutory authority. Am. Compl. ¶¶ 208–216 [Doc. No. 73].

"The basic premise behind nonstatutory review is that, even after the passage of the APA, some residuum of power remains with the district court to review agency action that is *ultra vires*." R.I. Dep't of Env't Mgmt. v. United States, 304 F.3d 31, 42 (1st Cir. 2002) (citing Dart v. United States, 848 F.2d 217, 223 (D.C. Cir. 1988)). "Before enactment of the APA, those challenging agency action often lacked a statutory cause of action," but "courts recognized a right to equitable relief where an agency's action was *ultra vires*—that is, 'unauthorized by any law and . . . in violation of the rights of the individual.'" Nuclear Regul. Comm'n v. Texas, 605 U.S. 665, 680 (2025) (quoting Am. Sch. of Magnetic Healing v. McAnnulty, 187 U.S. 94, 110 (1902)). "Since the APA was enacted, however, the Supreme Court has 'strictly limited

[12] The court need not reach the additional theories raised by Plaintiffs in support of their First Amendment claim—that the inter-agency data-sharing vitiates Plaintiffs' associational rights and chills the speech of Plaintiffs' members and of CEDC. Pls.' Opp'n 15–17 [Doc. No. 90].

nonstatutory *ultra vires* review' to avoid creating an 'easy end-run around the limitations of . . . judicial-review statutes.'" Am. Ctr. for Int'l Lab. Solidarity v. Chavez-DeRemer, 789 F. Supp. 3d 66, 104 (D.D.C. June 30, 2025) (emphasis added) (quoting Nuclear Regul. Comm'n, 605 U.S. at 681). "To act *ultra vires* a government official is either acting in a way that is impermissible under the Constitution or acting outside of the confines of his statutory authority." New York v. McMahon, 784 F. Supp. 3d 311, 352 (D. Mass. 2025), appeal dismissed, No. 25-1495, 2025 WL 3451815 (1st Cir. Sep. 15, 2025) (quoting Mesa Hills Specialty Hosp. v. Becerra, 730 F. Supp. 3d 342, 352 (W.D. Tex. 2024)).

Defendants argue that the Amended Complaint's *ultra vires* claim is essentially an APA claim argued in the alternative. Defs.' Mem. ISO Mot. to Dismiss 18–19 [Doc. No. 82]. Plaintiffs do not dispute the characterization but argue that dismissal is premature at this early stage of the litigation. Pls.' Opp'n 18–19 [Doc. No. 90]. Where the APA expressly grants review of Defendants' challenged data-sharing, and that agency action is the basis of Plaintiffs' *ultra vires* claim, the court finds that Plaintiffs have failed to plead a nonstatutory *ultra vires* claim against Defendants. See Nuclear Regul. Comm'n, 605 U.S. at 681; see also President & Fellows of Harvard Coll. V. HHS, 798 F. Supp. 3d 77, 133–34 (D. Mass. 2025) (granting defendants' summary judgment motion on *ultra vires* claims "essentially conflat[ed]" with plaintiffs' APA claims); Massachusetts v. Trump, 790 F. Supp. 3d 8, 30–32 (D. Mass. 2025) (dismissing *ultra vires* claims "collapse[d]" into APA claims). Therefore, Defendants' Motion to Dismiss [Doc. No. 81] is granted as to Count Four of Plaintiffs' Amended Complaint [Doc. No. 73].

4. Accardi Doctrine Claims

Plaintiffs have alleged that IRS and SSA's unlawful disclosure of confidential taxpayer information with ICE has violated the Accardi Doctrine. Am. Compl. ¶¶ 217–222 [Doc. No. 73].

The Accardi Doctrine holds that agencies have an obligation to "abide by [their] own regulations." Rotinsulu v. Mukasey, 515 F.3d 68, 72 (1st Cir. 2008) (citing Accardi v. Shaughnessy, 347 U.S. 260, 265–67 (1954)); see Campos v. Ammons, 828 F. Supp. 3d 139, 142 (D. Mass. 2026). Such a "failure to follow an applicable regulation may be a sufficient ground for vacation of an agency's decision[.]" Rotinsulu, 515 F.3d at 72. Generally, the courts have relied on the Accardi Doctrine to require agencies to follow their own rules, including internal procedural rules, that affect individual rights and obligations. See, e.g., Morton v. Ruiz, 415 U.S. 199, 235 (1974) (citations omitted) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required.").

Defendants argue that Plaintiffs' Accardi claim fails because Plaintiffs have not identified any specific regulations that IRS or SSA have violated. Defs.' Mem. ISO Mot. to Dismiss 19 [Doc. No. 82]. But Plaintiffs have alleged that both agencies have violated their respective regulatory authority by sharing taxpayer data with ICE. See Am. Compl. ¶ 117 [Doc. No. 73] (citing IRS regulation at 26 C.F.R. § 301.6103(i)-1(b)); id. ¶ 104 & n.30 (citing SSA regulation at 20 C.F.R. § 401.125). Plaintiffs have further alleged that the agencies' regulatory violations have affected their members' privacy and confidentiality rights. Id. ¶¶ 30, 218–220. Accordingly, Defendants' Motion to Dismiss [Doc. No. 81] is denied as to Count Five of Plaintiffs' Amended Complaint [Doc. No. 73], where Plaintiffs have plausibly alleged that IRS and SSA violated the Accardi Doctrine.

## III. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 81] the Amended Complaint [Doc. No. 73] pursuant to Federal Rule of Civil Procedure 12(b)(1) is DENIED; and

the Motion to Dismiss [Doc. No. 81] pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED as to Count Four (*Ultra Vires* action), DENIED without prejudice as to Counts One and Two (APA claims) related to SSA data-sharing, and DENIED with prejudice as to all other Counts of the Amended Complaint [Doc. No. 73].

IT IS SO ORDERED.

September 30, 2026

/s/ Indira Talwani
United States District Judge