**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| COMMUNITY ECONOMIC DEVELOPMENT CENTER OF SOUTHEASTERN MASSACHUSETTS, NATIONAL PARENTS UNION, NATIONAL KOREAN AMERICAN SERVICE AND EDUCATION CONSORTIUM, & UNDOCUBLACK NETWORK,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT BESSENT, ACTING COMMISSIONER OF THE INTERNAL REVENUE SERVICE AND SECRETARY OF THE TREASURY; DEPARTMENT OF THE TREASURY; INTERNAL REVENUE SERVICE; FRANK BISIGNANO, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION; SOCIAL SECURITY ADMINISTRATION; MARKWAYNE MULLIN, SECRETARY OF HOMELAND SECURITY; U.S. DEPARTMENT OF HOMELAND SECURITY; DAVID J. VENTURELLA, ACTING DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Defendants. | Civil Action No. 1:25-cv-12822-IT |

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION</u>**



6461995

## I. INTRODUCTION

At the October 16, 2026 hearing on Plaintiffs' Motion for Compliance Discovery, the Court learned that Defendants' counsel could not verify whether additional copies of the IRS data protected by the Court's February 5, 2026 injunction existed in other Immigration and Customs Enforcement ("ICE") repositories or in the possession of third-party contractors who had access to the IRS data. Accordingly, the Court directed Defendants to conduct a robust search for the existence of any datasets potentially downloaded or accessed by ICE contractors. Under the Court's directives, the government was required to submit an additional declaration with the results of its supplemental review and identify the employer of any contractors who had access to the IRS data.

Defendants now seek reconsideration on the basis of a new, problematic, and ambiguous declaration. Doc. No. 159 ("Mot."); Doc. No. 159-1 ("Dec."). For the reasons discussed below, that new declaration fails to meet this Court's directives and raises more questions than it resolves. Plaintiffs requested that Defendants engage in a meet-and-confer to address ambiguities in the new declaration. Defendants agreed and then cancelled once Plaintiffs provided written questions to inform the meet-and-confer.

The new declaration, coupled with Defendants' refusal to answer questions about it, triggers serious concerns that the government is neither making a good-faith effort to address concerns about the security of the data nor responding forthrightly to the Court's questions. Plaintiffs ask the Court to deny Defendants' Motion for Reconsideration and direct the government to supplement its declaration to resolve the gaps identified below. Alternatively, Plaintiffs ask that the Court permit targeted discovery to get to the bottom of whether other

datasets of immigrants' private tax information have been illegally downloaded, copied, or distributed.

## II. BACKGROUND

### A. The Court's Injunction

This Court's February 5, 2026 Order preliminarily vacated, stayed, and enjoined the ICE-IRS data-sharing arrangements. Doc. No. 75. The injunction provided:

> Defendants DHS, Secretary Noem, ICE, Acting Director Lyons, and their agents, are enjoined from inspecting, viewing, using, copying, distributing, relying on, or otherwise acting upon any return information that had been obtained from or disclosed by the IRS Defendants pursuant to the information sharing arrangements, including the information received August 7, 2025.
>
> The ICE Defendants shall provide a copy of this Order to the individual whose government-issued computer holds the information received from the IRS on August 7, 2026, and shall file confirmation that a copy of this Order has been provided to that individual, no later than February 10, 2026. That individual, as a DHS agent, is bound by this Order.

Doc. No. 75 at 42.

### B. The October 16 Hearing

At the October 16, 2026 hearing, in discussing the representations made in the government's First and Second Fitzgerald Declarations, Doc. Nos. 51-2 and 78-1, the government's counsel acknowledged that he did not know whether contractors or others had downloaded copies of the data between August 7, 2025, when ICE received the data from IRS, and February 10, 2026, when the government submitted the Second Fitzgerald Declaration, Doc. No. 78-1, representing it complied with the Court's preliminary injunction. See Doc. No. 153, Oct. 16, 2026 Hr'g Tr. ("Tr."). at 7:12-8:13. The government's counsel also stated that he did not know which, if any, contractors had access to the data. Id. at 22:18-22. The Court expressed concerns that it had issued the injunction "under the impression that there is a single set of data,

and that has been segregated. If that impression is incorrect and incomplete because, unbeknownst to those of us in this room, data was downloaded and . . . it was over here in shop B -- I think I need that information." Id. at 29:19-24. And when the Court sought assurance that the data was not in "a leaky container," counsel promised to undertake a further review. Id. at 25:4-11.

The Court's directive was clear. Because "we know for sure that the data was in the hands of somebody who wasn't a government employee," the Court also required Defendants to identify which entity the "contractors who had access to this data, were employed by." Id. at 18:13-16; id. at 20:11-21:19. In response to the Court's concerns, government counsel agreed, stating, "we can give you the name of the entity that employed the one lead architect. And if Your Honor is looking for the names of the entities . . . of other contractors that might have had access to the data at any point, you know, I think that we can work to get that for you as well." Id. at 24:9-17.

### C. The Deficiencies And Questions Raised By The Government's New Declaration

The government now seeks reconsideration of the Court's October 16 Order with the Second Declaration of Alberto V. Briseno. See Doc. No. 159-1. That declaration leaves open at least the following issues and questions related to the Court's concerns and directives as expressed at the October 16, 2026 hearing:

- The motion and declaration confirm that contractors had access to the data in 2025. Mot. ¶ 3; Dec. ¶ 7. But the declaration's no-activity averment covers only 2026. Mot. ¶ 3; Dec. ¶ 6.
- Neither the motion nor the declaration informs the Court about which contractor(s) had access to the data in 2025 and how they had access. The data could have been copied,

photographed, captured in screenshots, or otherwise transferred, even if it was not downloaded.

- The new declaration omits the fact that the "lead architect" within the "HSI Innovation Lab" is a contractor, as government counsel has previously represented. See Doc. No. 118-10 (government counsel stating that the HSI lead architect was an "IT contractor"). Yet the new declaration does not state the name of the entity that employed him, Dec. ¶ 7, which contravenes government counsel's promise to give the Court "the name of the entity that employed the one lead architect." Tr. at 24:12-13.
- The new declaration also evades the Court's broader directive to identify the entity that employed "any of the contractors who had access to this data." Id. at 20:13-16. And it contradicts Defendants' prior sworn accounts. How did contractors have access to the data in 2025, Mot. ¶ 3; Dec. ¶ 7, if the government stated in its February 2026 declaration that no one other than the HSI architect had access to the IRS data? See Doc. No. 78-1 ¶ 4; see also Doc. No. 51-2 ¶ 6.
- Defendants previously acknowledged that HSI "made the data available to the Enforcement Removal Operations, Law Enforcement Systems and Analysis team." See Doc. No. 51-2 ¶ 5. But the new declaration says nothing about who on that team had access, or whether anyone copied or reproduced the data without downloading it.
- The new declaration says that ICE looked for copies downloaded on ICE's network, "such as" Teams, OneDrive, SharePoint, and Box. Dec. ¶ 5. The declaration therefore does not provide a complete list of what was searched. Does this include copies that may have been shared via a file-sharing program (like the one mentioned in Dec. ¶ 8) or via email? Did ICE search individual desktops, repositories, and email accounts, at least for

those known to have access to the data in 2025 and 2026? Nor does the new declaration say whether ICE searched for renamed or modified files, given Mr. Briseno's own admission that searches "cannot capture the existence of all files where file names have changed, and even a single modification to the content of a file will impact ICE's ability to locate it." Fourth Decl. of Alberto V. Briseno ¶ 24, California v. Dep't of Health & Hum. Servs., No. 25-cv-05536-VC (N.D. Cal. July 8, 2026), Doc. No. 181-1.

- The new declaration says ICE's Office of Professional Responsibility automatically flags when data is forwarded to personal emails, but it does not say whether the Office ever detected such a transmission. Dec. ¶ 8.
- Government counsel represented at the hearing that contractors are often given ICE email addresses, so if data was shared with or among contractors via email, it would not be flagged by this automatic system. Neither the government's reconsideration motion nor the new declaration makes clear whether email was searched.
- The new declaration's statement that "no individual has downloaded, reviewed, previewed, or accessed the IRS data throughout 2026" according to "the system logs" is contradicted by Defendants' previous filings. Dec. ¶ 6. On January 23, 2026, "the HSI lead architect granted two individuals—an ERO Detention and Deportation Officer (DDO) and an HSI Supervisory Criminal Investigator—access, via ICE's Enterprise Box." Doc. No. 78-1 ¶¶ 5, 7; see also Doc. No. 78-2 ¶¶ 3, 5. Either the system logs missed this 2026 activity or the declaration misdescribes them. The new declaration also does not say whether the data can be accessed in ways that the system logs do not capture, or whether the logs can be altered or deleted. And the new declaration makes no comparable averment for 2025.

- Neither the motion nor the declaration states whether there is a system log for 2025. Nor do they state what review was made of ICE systems in 2025, if any.
- Neither the motion nor the declaration addresses possible access, downloading, copying, or other potential forms of transfer by DOGE, or other non-ICE/non-contracting entities within government.

### D. Plaintiffs' Attempt At Informal Resolution

On November 6, 2026, Plaintiffs requested a meet-and-confer to clarify the issues left open by the Briseno declaration and thereby resolve the government's reconsideration motion informally. The government agreed. Nevertheless, when Plaintiffs forwarded their questions about the declaration in advance of the meeting, government's counsel cancelled the scheduled meet-and-confer.

## III. ARGUMENT

The new Briseno declaration raises serious concerns as to the government's handling of protected tax information. Plaintiffs therefore request that the Court deny the government's motion for reconsideration and instruct the government to answer the questions raised in this opposition or provide an opportunity for Plaintiffs to seek reasonable discovery. At a minimum, Defendants should be required to supplement their declaration to address the identified gaps and answer the Court's questions directly.

### A. The new declaration raises more questions about whether other copies exist.

The gaps and evasions in the testimonial material provided suggest that ICE is trying to cover up basic information about access to the data at issue in this case. This is concerning because it is well known that Palantir is embedded at Homeland Security Investigations. Palantir itself announced in 2022 "that the Department of Homeland Security renewed its contract to

support Homeland Security Investigations (HSI) with Investigative Case Management (ICM) software. The contract is worth $95.9M over a five-year period."[1] That partnership has become integral to ICE's efforts to locate individuals for deportation.[2] If the "lead architect" was a Palantir employee contracted to ICE, they had ample opportunity to share data with their employer, long before it was turned over to Mr. Briseno. They also may well have quickly incorporated the illegally obtained material into the Palantir database, the ICM, which was used at HSI. The declaration does not identify the employer of the lead architect, despite government counsel's promise to the Court, and it does not identify the employers of the other contractors who had access to the data, despite the Court's directive that the government do so. Tr. at 24:14-22.

Defendants cannot justify withholding this information based on speculative concerns about public scrutiny of government contractors. Mot. ¶ 6. As the Court observed, when the government chooses to "do work through contractors" by "enter[ing] into contracts with entities," there is no reason the identity of those contractors should be "secret." Tr. at 21:14-17.[3] Moreover, Mr. Briseno's statement that "DHS policy also prohibits all users (including

---

[1] Palantir Media Press Release, "Homeland Security Investigations Renews Partnership with Palantir for Case Management Software" (September 26, 2022), https://www.palantir.com/newsroom/press-releases/homeland-security-investigations-renews-partnership-with-palantir/ (last viewed November 11, 2026).

[2] See Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Third Party and Compliance Discovery, Doc. No. 119 at 3-4. See generally 404 Media, "Leaked: Palantir's Plan to Help ICE Deport People" (April 17, 2025), https://www.404media.co/leaked-palantirs-plan-to-help-ice-deport-people/ (using leaked employee texts to describe Palantir's assistance with providing location information to ICE) (last viewed November 11, 2026).

[3] If Defendants have a particularized confidentiality concern, they could move to file under seal rather than move for relief from the Court's Order.

contractors) from . . . transferring DHS data outside DHS systems," Dec. ¶ 8, is cold comfort since DHS's main database consists of a Palantir system. A policy is not evidence of compliance. Defendants should be required to follow through on their commitment to identify the government contractors who had access to the data in 2025 and 2026, including the HSI lead architect.

The Second Briseno Declaration also focuses primarily on "downloads" of the dataset at issue as viewable in the "systems log." The declaration's reliance on these system logs leaves critical gaps and an unexplained inconsistency with Defendants' prior filings: it asserts that no individual accessed the data in 2026, Dec. ¶ 6, yet Defendants previously reported that the HSI lead architect granted two individuals access on January 23, 2026. See Doc. No. 78-1 ¶¶ 5, 7; Doc. No. 78-2 ¶¶ 3, 5. The declaration neither reconciles those statements nor establishes that the logs capture all access, copying, or transfers. The declaration gives no indication that Defendants investigated other means of data transfer, interviewed current or former employees or contractors, or conducted any meaningful inquiry beyond reviewing logs. Whether additional copies of the data exist remains unresolved. In sum, the declaration falls far short of satisfying the Court's concerns, warranting a supplemental declaration or discovery.

### B. Reconsideration should be denied or, alternatively, targeted discovery should be permitted.

Plaintiffs therefore request that the Court deny Defendants' motion for reconsideration and instruct the government to answer the questions raised in this opposition or, in the alternative, provide an opportunity for Plaintiffs to seek reasonable targeted discovery about the transmission of tax information. That targeted discovery would confirm whether additional copies of the data exist, preventing any irreparable harm that would manifest from disclosure of Plaintiffs' members' protected information. See Momenta Pharms., Inc. v. Teva Pharms. Indus.

Ltd., 765 F. Supp. 2d 87, 88-89 (D. Mass. 2011) (permitting discovery based on movant's showing of "good cause"). And because that limited discovery concerns Defendants' adherence to the Court's February 5 Order, the ordinary administrative record limitation in Administrative Procedure Act ("APA") cases does not apply. See Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989) (noting an exception to the administrative-record rule "in cases where relief is at issue, especially at the preliminary injunction stage"); Purpose Built Fams. Found., Inc. v. United States, 95 F.4th 1346, 1352 (11th Cir. 2024) (explaining that the APA "does not bar federal courts from considering developments outside the agency record when policing the exercise of judicial power"). Moreover, many courts have recognized that in this administration, ICE has lost the "presumption of regularity" based on lies and deceptions in various courts across the country. See, e.g., De Souza v. Wesling, No. 26-CV-13761-BEM, 2026 WL 2676623 (D. Mass. Sept. 11, 2026) (collecting cases and citing examples). As Judge Murphy noted in that case, "this Court is under the disheartening impression that, at best, ICE takes cursory steps to ensure that its statements are truthful, and, at worst, has a culture of outright lying to further its litigation positions." Id. at *6.

Compelling ICE to provide pertinent information is necessary to preserve the validity and effectiveness of the Court's injunction protecting confidential tax information.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Reconsideration and order Defendants to file a supplemental declaration answering the questions set out above, or, alternatively, grant Plaintiffs leave to seek targeted discovery.

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated: November 12, 2026

By: */s/ Leo L. Lam*

Leo L. Lam (*Admitted Pro Hac Vice*)
llam@keker.com
Laurie Carr Mims (*Admitted Pro Hac Vice*)
lmims@keker.com
Sarah Salomon (*Admitted Pro Hac Vice*)
ssalomon@keker.com
Charlotte Kamai (*Admitted Pro Hac Vice*)
ckamai@keker.com
Melissa P. Cordial (*Admitted Pro Hac Vice*)
MCordial@keker.com
Kelly M. Hernandez (*Admitted Pro Hac Vice*)
khernandez@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

ASIAN LAW CAUCUS
Joshua Rosenthal (*Admitted Pro Hac Vice*)
joshr@asianlawcaucus.org
Dorothy Chang (*Admitted Pro Hac Vice*)
dorothyc@asianlawcaucus.org
55 Columbus Avenue
San Francisco, CA 94111
Telephone: (415) 896-1701
Facsimile: (415) 896-1702

GREATER BOSTON LEGAL SERVICES
Luz Arevalo BBO 564011
larevalo@gbls.org
Angela Divaris (*Admitted Pro Hac Vice*)
adivaris@gbls.org
Gary Klein BBO 560769
gklein@gbls.org
197 Friend Street
Boston, MA 02114
Telephone: (617) 461-4944

*Attorneys for Plaintiffs*

**LOCAL RULE 7.1(a)(2) CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), I certify that, on November 6, 2026, counsel for Plaintiff Community Economic Development Center of Southeastern Massachusetts and counsel for Defendants Internal Revenue Service, and Social Security Administration met and conferred in good faith regarding the resolution of this motion. Counsel for Defendants stated that they do not oppose the relief requested in this motion.

*/s/ Leo L. Lam*
Leo L. Lam

**CERTIFICATE OF SERVICE**

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail.

*/s/ Leo L. Lam*
Leo L. Lam



6461995